William D. Temko, CA Bar #98858
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071-1560
(213) 683-9266
william.temko@mto.com

Katherine Demarest #1011074
DORSEY & WHITNEY LLP
1031 West Fourth Avenue, Suite 600
Anchorage, AK 99501-5907
(907) 276-4557
demarest.katherine@dorsey.com

Attorneys for Plaintiff Southcentral Foundation

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| Southcentral Foundation,<br><br>　　　　　　　　　Plaintiff,<br><br>vs.<br><br>Alaska Native Tribal Health Consortium,<br><br>　　　　　　　　　Defendant. | Case No. 3:17cv-<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

Plaintiff Southcentral Foundation ("SCF") states and alleges as follows:

## INTRODUCTION

1. Congress established by federal law a specific mechanism for tribal management and governance of all the programs and services provided by the Alaska Native Medical Center ("ANMC"). A dispute has arisen between Plaintiff SCF and Defendant Alaska Native Tribal Health Consortium ("ANTHC") regarding ANTHC's failure to comply with the governance principles established by Congress in that federal

Complaint　　　　　　　　　　　　　　　　　　　　　　　　　　　　*Southcentral Foundation. v. ANTHC*
Page 1 of 18　　　　　　　　　　　　　　　　　　　　　　　　　　　Case No. 3:17-cv-
Case 3:17-cv-00018-TMB　Document 2　Filed 01/20/17　Page 1 of 18

law. Plaintiff seeks in this declaratory relief action an Order requiring ANTHC to comply with those governance requirements mandated by federal law.

## THE PARTIES

2. Plaintiff SCF is a tribal organization under the Indian Self-Determination and Education Assistance Act (the "ISDEAA"), 25 U.S.C. § 450b(l), and an Alaska nonprofit corporation with a principal place of business at 4501 Diplomacy Drive, Anchorage, Alaska 99508. SCF is one of the Regional Health Entities that formed ANTHC as an inter-tribal consortium in accordance with federal law, and is a participant in ANTHC, along with other Regional Health Entities, Indian tribes, and tribal organizations specified by federal law. SCF is in all ways competent to bring this action.

3. Defendant ANTHC is an inter-tribal consortium created in accordance with federal law, Public Law 105-83, Section 325, enacted on November 14, 1997. ANTHC is a tribal organization under the ISDEAA and an Alaska nonprofit corporation with a principal place of business of 4000 Ambassador Drive, Anchorage, Alaska 99508.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction over this civil action under 28 U.S.C. § 1331 because it arises under the laws of the United States (Public Law 105-83, Section 325, enacted November 14, 1997). This Court is authorized to issue the declaratory relief sought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

5. The United States District Court for the District of Alaska has personal jurisdiction over the parties.

Complaint *Southcentral Foundation. v. ANTHC*
Page 2 of 18 Case No. 3:17-cv-
Case 3:17-cv-00018-TMB   Document 2   Filed 01/20/17   Page 2 of 18

6. Venue is proper in the District of Alaska because both Plaintiff SCF and Defendant ANTHC are Alaska nonprofit corporations with principal places of business located within Alaska.

## BACKGROUND FACTS

### A. Creation of ANTHC as Consortium

7. The ISDEAA grew out of and affirms the United States' trust relationship to Indian tribes. Although the federal government originally administered programs and provided services directly to Alaska Native and American Indian people, in the early 1970's federal policy shifted toward empowering tribes to take full responsibility for managing and operating the federal programs and services that were offered for the benefit of Alaska Natives and American Indians. *See* 25 U.S.C. § 450(a)(1) (1983).

8. The ISDEAA provides tribes with the authority, control, discretion, and federal funding to administer the programs, services, functions, and activities the federal government has a duty to provide, such as healthcare services. 25 U.S.C. § 450f(a)(1).

9. In order to accomplish the purposes of the ISDEAA, and in the interest of tribal self-determination and self-governance, the ISDEAA allows tribes to form a "tribal organization" that is "controlled, sanctioned, or chartered" by a tribal governing body for the purpose of administering the health services and programs provided to tribes by the U.S. Indian Health Service, in a manner that best fits their local regions and communities. 25 U.S.C. §§ 450b(l) and 450f(a).

10. Indian tribes and tribal organizations may also form an "inter-tribal consortium," which is defined in the ISDEAA as "a coalition of two [sic] more separate

Complaint *Southcentral Foundation. v. ANTHC*
Page 3 of 18 Case No. 3:17-cv-
Case 3:17-cv-00018-TMB   Document 2   Filed 01/20/17   Page 3 of 18

Indian tribes that join together for the purpose of participating in self-governance, including tribal organizations." 25 U.S.C. §458aaa(a)(5).

11. Under Title V of the ISDEAA, a tribe, tribal organization, or inter-tribal consortium may enter into a legally binding and enforceable Self-Determination Compact with the U.S. Department of Health and Human Services ("DHHS") that sets forth the terms and conditions of the self-governance relationship between tribes and DHHS. 25 U.S.C. §450f. Alaska is the only state in the U.S. where tribes and tribal organizations jointly entered into one statewide multi-party Compact, called the Alaska Tribal Health Compact, in order to preserve and strengthen the unique Alaska tribal health system and to avoid competition amongst Alaska tribes and tribal organizations for the scarce federal funds available to administer tribal health programs and services across the State of Alaska.

12. In addition to the Self-Determination Compact, each tribe, tribal organization, or inter-tribal consortium also enters into an individual legally binding and enforceable Funding Agreement with DHHS, which identifies the programs, services, functions, and activities they will carry out and the congressionally appropriated funds that will be transferred to them in support of such programs, services, functions, and activities.

13. Congress passed Section 325 of Public Law 105-83 ("Section 325") to address its concern about the ability of more than 200 separate Alaska tribes and tribal organizations to come to an agreement on a plan for the structure of the tribal management and governance of all the programs and services of ANMC, the facility that

provides statewide health services to Alaska Natives and American Indians in Alaska pursuant to the ISDEAA. That law, which was enacted on November 14, 1997, is the law at issue in this case.

14. Section 325 created ANTHC, a consortium of tribal entities, to enter into a Compact and Funding Agreement with DHHS to provide certain statewide health services at ANMC, pursuant to the ISDEAA. Because of their common interest in ensuring that ANTHC fairly and sufficiently allocates scarce financial resources to ANMC services, and that such ANMC services are equitably delivered statewide, Section 325 requires ANTHC's tribal entity participants to govern ANTHC collectively and directly. Section 325 states that ANTHC "shall be governed by a 15-member Board of Directors" composed of one "representative" from each of the 13 specified Regional Health Entities that formed ANTHC pursuant to Section 325(a) (so long as the Regional Health Entity operates a regional health program under the ISDEAA) plus two additional persons who shall "represent" various Indian tribes and tribal organizations that either operate health programs that are not affiliated with a Regional Health Entity or do not receive health services from any tribal, regional, or sub-regional health provider.

15. Pursuant to designation by the SCF Board of Directors, Katherine Gottlieb ("Gottlieb") serves as SCF's representative on Defendant ANTHC's Board of Directors ("Designated Director"). Gottlieb is also the President and Chief Executive Officer of SCF. Alex Cleghorn ("Cleghorn") serves as SCF's alternate Designated Director on the ANTHC Board of Directors. Before Cleghorn was so designated, SCF Vice President

Ileen Sylvester ("Sylvester") served in that role. Cleghorn is also SCF's General Counsel for Business and Intergovernmental Affairs.

16. In Section 325, Congress clearly contemplated that ANTHC's governance would be collaborative and inclusive. Section 325 states that "[e]ach member of the Board of Directors shall be entitled to cast one vote. Decisions of the Board of Directors shall be made by consensus whenever possible, and by majority vote in the event that no consensus can be reached."

17. Section 325 recognizes that each ANTHC Director is a representative of the Regional Health Entity, Indian tribes, and sub-regional tribal organizations that designated him or her to serve on the ANTHC Board of Directors ("Designating Entity"). Accordingly, each ANTHC Director is expected to present the views and concerns of his or her Designating Entity in advocating for what the Director believes, in his or her good faith business judgment, serves the best interests of ANTHC.

18. The Alaska Tribal Health Compact with the DHHS, as amended and restated, confirms that ANTHC "was organized and *is controlled by* the Alaska Native tribes and tribal organizations which are represented on its Board of Directors." Alaska Tribal Health Compact, as Amended and Restated, page 4 (emphasis added). In press releases, ANTHC represents to the public that it is a "not-for-profit Tribal health organization managed by Alaska Native Tribal governments and their regional health organizations." **See Exhibit A**.

## B. Contract Support Cost Settlement Funds

19. In 2014, after more than a decade of litigation with the U.S. Indian Health Service, ANTHC and other tribal entities settled their legal claims resulting from the federal government's failure to pay its contractual obligations under the ISDEAA. ANTHC received "a one-time $153 million payment" as a result of the settlement in the summer of 2014.  **See Exhibit A**.

## C. Creation of Illegal Executive Committee and Subsequent Compensation Decisions

20. In November 2014, the ANTHC Board Chair and President sent an email notice to the Board of Directors that the Board would consider certain amendments to the ANTHC Bylaws at the Board of Directors' meeting on December 2-3, 2014, but did not attach or provide the text of the proposed Bylaw amendments in advance of the meeting.

21. At the December 2014 Board meeting, the ANTHC Board of Directors adopted the Bylaw amendments proposed by the Chair and President, creating a five-member Executive Committee of the Board comprised of the four officers of the ANTHC Board and one more ANTHC Director appointed by the Chair. The Chair refused to entertain almost all questions from Sylvester, SCF's alternate Designated Director present at the meeting.

22. The authority delegated to the newly-created Executive Committee was extremely broad and included serving as the ANTHC Board of Directors' Compensation Committee. The authority was not limited to acting between Board meetings or in an emergency situation. Instead, the Executive Committee had the power to do almost all

acts usually reserved to the full Board of Directors. There was no requirement that the Committee obtain ratification of its decisions from the full ANTHC Board of Directors, or even notify that Board of its actions.

23. Although the ANTHC Bylaws require all Directors to receive notice of all Board Committee meetings, the December 2014 Bylaw amendments also purported to do away with this requirement with respect to the newly-created Executive Committee so that no ANTHC Directors received notice of any Executive Committee meetings unless they were members of the Executive Committee.

24. The Bylaw amendments effectively delegated the decision-making authority of the 15-member ANTHC Board to the five ANTHC Directors on the Executive Committee, who could then govern ANTHC without the knowledge or input of the other 10 members of the Board of Directors. This put the entire ANTHC Board at great risk. Under applicable law, all ANTHC Directors are legally responsible for any acts by the Executive Committee, despite lack of meeting notice or lack of knowledge about any acts taken by that committee.

25. The December 2014 Bylaw amendments also greatly increased the power and authority of the ANTHC President and split the Chair and President positions into two distinct roles, so that each position is now separately compensated.

26. At the December 2014 ANTHC Board Meeting, the Chair and President also proposed an evaluation of the compensation paid to ANTHC Directors for the previous 15 years and the development of a plan to increase the compensation of Directors, *retroactive to incorporation*, despite the fact that from 1999-2011 ANTHC's

Articles of Incorporation did not permit ANTHC Directors to receive compensation for their board service. The implicit message to ANTHC Directors was that if they adopted the Bylaw amendments proposed by the Chair and President, they would be rewarded later with retroactive compensation.

27. At the first Executive Committee meeting in mid-December 2014, two weeks after its formation, the Executive Committee approved lucrative employment agreements for certain senior ANTHC executives. This greatly increased the total compensation paid to the ANTHC President—without notice to or input from the 10 other ANTHC Directors on the Board.

### D. SCF's Designated Directors Are Told They Cannot Share ANTHC Information with their Designating Entity, SCF.

28. After the December 2014 Bylaw amendments were adopted with little or no discussion or deliberation by the ANTHC Board of Directors, the SCF Designated Directors, Gottlieb and Sylvester, began asking for information from ANTHC, as is their absolute legal right as directors of ANTHC. Having learned two months after the fact that the Executive Committee had approved a new employment contract for the ANTHC President, SCF Designated Directors Gottlieb and Sylvester asked for the information considered by the Executive Committee in approving the contract.

29. ANTHC refused to provide this information directly to Directors Gottlieb and Sylvester, and instead showed certain materials to all ANTHC Directors in an Executive Session at a Special ANTHC Board meeting in April 2015, informing the Directors that they could neither keep copies of the materials provided in Executive Session nor share the information with their Designating Entities. Upon written inquiry

Complaint *Southcentral Foundation. v. ANTHC*
Page 9 of 18 Case No. 3:17-cv-
Case 3:17-cv-00018-TMB   Document 2   Filed 01/20/17   Page 9 of 18

from SCF Designated Directors Gottlieb and Sylvester, the ANTHC General Counsel later told Directors Gottlieb and Sylvester that any information shared in an Executive Session of the ANTHC Board, including information about the ANTHC President's employment contract, must be treated as confidential and could not be shared with their Designating Entity, SCF. ANTHC, through its General Counsel, took the position that SCF has no legal right to information about ANTHC.

30. The ANTHC General Counsel's position that SCF Designated Directors cannot share with their Designating Entity, SCF, confidential information relating to ANTHC, such as the amount of the ANTHC President's compensation, is inconsistent with Section 325 and Alaska law.

31. The ANTHC Board of Directors subsequently approved the proposal to retroactively increase the compensation for the ANTHC Directors (apparently without being told that the proposal included a period of time when ANTHC's Articles of Incorporation did not permit ANTHC Directors to receive compensation for their Board service). The details of the retroactive compensation were discussed by the ANTHC Board of Directors only in Executive Session. Accordingly, SCF Designated Directors Gottlieb and Sylvester were again told not to share with their Designating Entity, SCF, the terms of the retroactive Director compensation approved by the ANTHC Board. This instruction is inconsistent with Section 325 and Alaska law.

32. Throughout 2015 and 2016, Directors Gottlieb and Sylvester (and later Cleghorn) sought to address their concerns with ANTHC, the ANTHC Chair and President, and the ANTHC General Counsel by proposing various amendments to the

ANTHC Bylaws and the ANTHC Board of Directors Code of Conduct ("Code of Conduct") intended to address the following governance issues: (1) the existence of an illegal Executive Committee that could act for the entire Board of Directors on most issues, and (2) the legal rights of Designating Entities like SCF to receive information about ANTHC pursuant to the governing federal law, Section 325. All efforts to correct these governance issues failed.

33. Prior to filing this lawsuit, Directors Gottlieb and Sylvester repeatedly asked the ANTHC General Counsel to provide any legal opinions ANTHC had obtained regarding the corporate governance issues raised by Gottlieb and Sylvester. Although ANTHC represented that it had obtained the requested legal advice, ANTHC refused to share it with Directors Gottlieb and Sylvester unless they signed a confidentiality agreement forbidding them from consulting about the legal opinions with anyone, including their own personal attorney, and imposing financial penalties and other consequences if they did so. The agreement significantly amended the ANTHC Board of Directors Code of Conduct. Directors Gottlieb and Sylvester declined to execute the confidentiality agreement, and ANTHC thus refused to share with them information they were absolutely legally entitled to receive as ANTHC directors.

34. ANTHC Directors Gottlieb, Sylvester, and Cleghorn have received no notice of any Executive Committee meetings throughout 2015 and 2016, despite their requests to be provided such notice.

35. Throughout 2016, Designated Directors Gottlieb and Sylvester (and later Cleghorn) sought to address with ANTHC (including with the Chair and President and

the ANTHC General Counsel) their concerns regarding the Code of Conduct. Gottlieb, Sylvester, and Cleghorn recognized that, as ANTHC Directors, they have fiduciary duties to ANTHC. At the same time, as SCF Designated Directors, pursuant to Section 325, they also have fiduciary duties to their Designating Entity, SCF, to share with the SCF Board of Directors ANTHC information and documents provided to them as ANTHC Directors, as necessary in order to receive advice, input, and direction from the SCF Board of Directors about the governance of ANTHC.

36. ANTHC's Code of Conduct fails to recognize that Gottlieb, Sylvester, and Cleghorn have dual fiduciary obligations, to ANTHC and also to SCF, the Designating Entity they represent on the ANTHC Board of Directors. Rather, contrary to Section 325, ANTHC takes the position that Directors have an undivided duty of loyalty to ANTHC, without regard to the legal rights or interests of the Designating Entities they represent on the ANTHC Board of Directors.

37. The Code of Conduct purports to restrict the Designated Directors' ability to share confidential ANTHC information or documents with their Designating Entities, suggesting that the Designated Directors may do so only to the extent authorized by the ANTHC Board of Directors.

38. Throughout 2016, SCF made repeated requests to ANTHC to revise the Code of Conduct to clarify that the Designated Directors have the legal right to access confidential information and documents relating to ANTHC's business and operations and that they do not breach any fiduciary duties to ANTHC by sharing such ANTHC information and documents with the governing bodies of the Designating Entities they

represent, provided the Designating Entities agree to maintain the confidentiality of any such ANTHC information and documents.

39. ANTHC refused to adopt SCF's recommended changes to the Code of Conduct. Instead, at the ANTHC Board meeting on September 28-29, 2016, the ANTHC Board of Directors adopted other changes to the Code of Conduct proposed by the Chair and the ANTHC General Counsel.

40. Also at the Board meeting in late September 2016, ANTHC imposed even more onerous restrictions on the Designated Directors' ability to share information or documents regarding ANTHC with their Designating Entities when it adopted a new Disclosure of Records and Information Policy (the "Disclosure Policy").

41. The Disclosure Policy reconfirmed ANTHC's position that the Designating Entities are not legally entitled to information and materials that are presented to the ANTHC Board of Directors and its committees in executive session. Indeed, the Disclosure Policy purports to restrict the ANTHC Directors' ability to access "confidential, sensitive, proprietary or privileged information" regarding ANTHC. If, in violation of Alaska law, the SCF Designated Directors are not even provided access to such information, they are obviously precluded from sharing that information with the governing body of the Designating Entity they represent, the SCF Board of Directors. The Disclosure Policy violates Alaska law and Section 325.

42. At SCF's urging, the ANTHC Board of Directors approved at its late September 2016 meeting amendments to the ANTHC Bylaws that ensure that all ANTHC Directors receive notice of Executive Committee meetings and that clarify that

Complaint  *Southcentral Foundation. v. ANTHC*
Page 13 of 18  Case No. 3:17-cv-
Case 3:17-cv-00018-TMB   Document 2   Filed 01/20/17   Page 13 of 18

the Executive Committee can exercise the authority of the full ANTHC Board of Directors only "between meetings if the Board of Directors is unable to meet." Although it made those concessions to SCF, the ANTHC Board of Directors failed to amend the ANTHC Bylaws to require that the actions of the Executive Committee be ratified by the full ANTHC Board of Directors in order to be effective. To that extent, the Bylaws continue to violate Section 325, which specifies that all 15 ANTHC Directors shall have the opportunity to "cast one vote" and that the decisions of the ANTHC Board are to be "made by consensus" or "by majority vote." Also at the September 2016 meeting, the ANTHC Board of Directors transferred the compensation review responsibilities from the Executive Committee to some other, unspecified ANTHC Board committee.

## REQUEST FOR DECLARATORY JUDGMENT

43. This dispute is ripe for adjudication because a present, actual controversy exists between SCF and ANTHC with respect to the governance of ANTHC. No subsequent event or the passage of time will vary the meaning of the relevant statutes or in any way affect the validity of the requested declaratory judgment.

44. Section 325 specifically provides that ANTHC "shall be governed by a 15-member Board of Directors" composed of one "representative" from each of the specified 13 Regional Health Entities that formed ANTHC pursuant to Section 325(a) (so long as the Regional Health Entity operates a regional health program under the ISDEAA), plus two additional persons "who shall represent" various Indian tribes and tribal organizations that either operate health programs that are not affiliated with a Regional Health Entity or do not receive health services from any tribal, regional, or sub-regional

health provider. Section 325 further provides that "[e]ach member of the Board of Directors shall be entitled to cast one vote. Decisions of the Board of Directors shall be made by consensus whenever possible, and by majority vote in the event that no consensus can be reached."

45. SCF contends that Congress, through Section 325, requires ANTHC's tribal entity participants to govern ANTHC collectively and directly in order to ensure that the more than 200 separate Alaska Tribes have a voice in the governance of ANTHC, due to their common interests in ensuring that ANTHC fairly and sufficiently allocates scarce financial resources to ANMC services, and that such ANMC services are equitably delivered statewide.

46. Given the governance requirements in Section 325, SCF contends that the five-member Executive Committee created under ANTHC's revised Bylaws to govern ANTHC violates federal law, and is illegal and void. ANTHC disagrees. SCF is entitled to an order so declaring.

47. Given the governance requirements in Section 325, SCF contends that the Regional Health Entities, Indian tribes, and tribal organizations represented on the ANTHC Board of Directors are participants in the ANTHC consortium under federal law, and thus are entitled to all information provided to the ANTHC Directors who are designated by these entities to represent them on the ANTHC Board. ANTHC disagrees. SCF is entitled to an order so declaring.

48. ANTHC's Directors Code of Conduct as currently drafted (which is incorporated by reference in the Bylaws) does not allow Designated Directors to broadly

share information with their Designating Entities unless specific permission is sought from and provided by ANTHC and does not recognize the role of the Designating Entities in the governance of ANTHC. SCF contends that the Code of Conduct, as currently drafted, conflicts with federal law Section 325, and is illegal and void as drafted. ANTHC disagrees. SCF is entitled to an order so declaring.

49. The Disclosure Policy as currently drafted restricts the Designating Entities' ability to access information and materials that are presented to the ANTHC Board of Directors and its committees in executive session and also restricts the Designated Directors' ability to access confidential and privileged ANTHC information. SCF contends that the Disclosure Policy conflicts with both federal law Section 325 and Alaska law, and is illegal and void as drafted. ANTHC disagrees. SCF is entitled to an order so declaring.

50. The ANTHC Directors have an absolute legal right to documents and information regarding ANTHC, and such documents and information cannot be withheld. SCF contends that ANTHC has violated the rights of its representatives on the ANTHC board, Directors Gottlieb and Sylvester (and later Cleghorn), in withholding requested documents and information from them. SCF is entitled to an order so declaring.

51. A judicial declaration is necessary and appropriate at this time so that SCF and its present and future Designated Directors on the ANTHC Board of Directors may ascertain their rights, duties, and obligations under Section 325 as to the governance of ANTHC.

Complaint *Southcentral Foundation. v. ANTHC*
Page 16 of 18 Case No. 3:17-cv-
Case 3:17-cv-00018-TMB   Document 2   Filed 01/20/17   Page 16 of 18

# PRAYER FOR RELIEF

For the above-stated reasons, SCF respectfully requests that the Court provide the following relief:

1. An order declaring the ANTHC Executive Committee as currently constituted to be contrary to federal law, void and without effect, to the extent any action of the Executive Committee is deemed valid before it is ratified by the full 15-member ANTHC Board, as required by Section 325;

2. An order declaring SCF and the other Designating Entities specified in Section 325 to be participants in the ANTHC consortium under the federal law creating it, entitled to all documents and information necessary to participate in the governance of the consortium, including confidential and/or privileged documents and information, provided SCF and the other Designating Entities agree to maintain the confidentiality of such documents and information;

3. An order declaring that SCF's Designated Directors have an absolute right to documents and information as directors of ANTHC, without limitation or reservation, and a right and duty to convey such documents and information to their Designating Entity, SCF, provided that SCF agrees to maintain the confidentiality of such documents and information;

4. An order declaring that certain Bylaws of ANTHC conflict with federal law and must be amended;

5. An order declaring that the ANTHC Board of Directors Code of Conduct as currently drafted conflicts with federal law and must be amended;

6. An order declaring that the ANTHC Disclosure Policy as currently drafted conflicts with federal law and must be rescinded;

7. An award for the costs of this suit, including attorneys' fees;

8. Any other relief which this Court deems just and proper.

DATED this 20th day of January 2017, at Anchorage, Alaska.

> DORSEY & WHITNEY LLP
> Attorneys for Plaintiff Southcentral Foundation
>
> By: /S/ KATHERINE DEMAREST
> Katherine Demarest, ABA #1011074
> demarest.katherine@dorsey.com
> Dorsey & Whitney LLP
> 1031 West Fourth Avenue, Suite 600
> Anchorage, AK 99501-5907
> (907) 276-4557
>
> William D. Temko, CA Bar #98858
> william.temko@mto.com
> Munger, Tolles & Olson LLP
> 355 South Grand Avenue, 35th Floor
> Los Angeles, CA 90071-1560
> (213) 683-9266