William D. Temko, CA Bar #98858
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-1560
(213) 683-9266
william.temko@mto.com

Louisiana Cutler, ABA #9106028
Shane Kanady, ABA #1411096
DORSEY & WHITNEY LLP
1031 West Fourth Avenue, Suite 600
Anchorage, AK 99501-5907
(907) 276-4557
cutler.louisiana@dorsey.com
kanady.shane@dorsey.com

Attorneys for Plaintiff Southcentral Foundation

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| Southcentral Foundation,<br><br>                        Plaintiff,<br><br>vs.<br><br>Alaska Native Tribal Health Consortium,<br><br>                        Defendant. | Case No. 3:17-cv-00018-TMB<br><br><br>**PLAINTIFF SOUTHCENTRAL FOUNDATION'S MOTION TO COMPEL** |

## I.    INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 37 and Local Civil Rule 37, Plaintiff Southcentral Foundation ("SCF"), by and through undersigned counsel, respectfully moves for an order compelling Defendant Alaska Native Tribal Health Consortium ("ANTHC") to: (1) produce the documents responsive to SCF's document production requests that have been improperly withheld or redacted under the guise of the attorney-client privilege, and (2) re-designate the documents labeled "Attorneys' Eyes Only" ("AEO") as "Confidential" because they do not contain competitively sensitive business information. The parties have conferred

over these issues and have been unable to reach agreement. ANTHC's actions with respect to these documents constitute yet another example of ANTHC's continued pattern of hiding critical information from SCF, a claim at the heart of this case. ANTHC's lack of transparency and repeated attempts to avoid disclosing pertinent information during discovery has forced SCF to seek the Court's intervention.

## II. FACTUAL BACKGROUND

### A. ANTHC Violates Federal Law By Withholding Important Information From Its Member Entities And Improperly Concentrating The Powers of The Board.[1]

SCF is one of the tribal health organizations that formed ANTHC pursuant to Section 325 of Public Law 105-83 ("Section 325") to facilitate the equitable allocation of scarce financial resources to health services for Alaska Native people. Section 325 requires that ANTHC be "governed by a 15-member Board of Directors" composed of one "representative" from each of the tribal entities that formed ANTHC as well as two additional persons representing tribes and tribal organizations that are not affiliated with the tribal entities that formed ANTHC and tribes who do not receive health services from any tribal, regional, or sub-regional health provider. According to Section 325, the governance of ANTHC must be collaborative and inclusive: each representative (or "Designated Director") on the Board is entitled to one vote and "[d]ecisions of the Board of Directors shall be made by consensus whenever possible, and by majority vote in the event that no consensus can be reached." This governance structure was mandated by Congress so that the tribal organizations represented on the Board have a voice in determining how to best utilize the federal funds provided to ANTHC for the benefit of Alaska Native people.

In November 2014, however, Andy Teuber, ANTHC's President and Chairman of the Board, systematically instituted a series of mechanisms with which he could redirect ANTHC's federally-received funds—funds meant to be used for the provision of medical services to Alaska Native people—into his own pockets. One such mechanism was an amendment to ANTHC's Bylaws that created a 5-member "Executive Committee" of the Board. This Executive Committee served as the Board's Compensation Committee and had the power to engage in

---

[1] A more detailed explanation of ANTHC's and Teuber's pre-litigation actions can be found in Plaintiff Southcentral Foundation's Motion and Memorandum in Support of Motion for Summary Judgment, Dkt. 31 (Redacted); Dkt. 38 (Sealed).

much of the decision-making that was supposed to be delegated to the full 15-person Board. Another mechanism created by Teuber was a new "Disclosure Policy" stating that ANTHC's member tribal entities are not entitled to access "confidential" materials presented to the Board and committees in executive session.

Teuber used these mechanisms to greatly increase his own compensation and develop a plan to retroactively increase the Board members' compensation without notice to or input from the full Board. These mechanisms further empowered Teuber and the Executive Committee to withhold certain materials from the full Board related to information the Executive Committee considered related to the compensation decisions. When ANTHC finally agreed to provide the other Designated Directors with this information, it did so in an Executive Session at a Special ANTHC Board meeting in April 2015, informing the Designated Directors that they could not have copies of the documents nor share the information with the entities each Designated Director represents. This information, however, is essential to the member entities' full and efficient participation in ANTHC's governance and management of financial resources—a right provided to the entities by Congress and mandated by federal law.

Based on the aforementioned conduct, on January 20, 2017, SCF filed a complaint against ANTHC seeking declaratory judgment that ANTHC's concentration of the Board of Directors' power in a five-person Executive Committee and withholding of significant information from its constituent organizations violate federal law.[2] SCF avers that not only do the Designated Directors have an absolute right to the documents and information necessary to participate in the governance of ANTHC, they are also entitled to (and in fact, have a duty to) share such information with the tribal entities they represent. ANTHC has denied SCF's claims and countersued, defending the legality of the Executive Committee's authority and alleging that each Designated Director has an "undivided duty of loyalty to ANTHC" and therefore the Designated Directors have no right to share "confidential" information with the tribal entities they represent.[3]

---

[2] Dkt. 2.
[3] Dkt. 21.

**B. The Parties Agree to Informal Discovery Without Resolving The Dispute Over Whether Certain Documents May Be Designated As "Attorneys' Eyes Only."**

The parties mutually agreed in a telephonic meet and confer on March 7, 2017 to the scope of the discovery in this case and to an informal discovery process to eliminate unnecessary time and expense.[4]  On February 15, 2017, the Court ordered the parties to prepare an initial case status report outlining discovery deadlines and procedures.[5]  In the Joint Scheduling and Planning Conference Report to the Court (the "26(f) Report") submitted on March 15, the parties agreed that fact discovery and discovery-related motion practice would close on July 8, 2017.[6] The parties subsequently agreed to move these deadlines to July 17, 2017.[7]

The parties' counsel conferred over the categories of documents of which SCF sought production through informal means.[8]  At the request of counsel for ANTHC, on April 11, 2017, SCF's counsel emailed ANTHC setting forth in writing six distinct categories of documents sought in production, including: (1) "executive compensation for [ANTHC's President] Teuber, [ANTHC's CEO] Helgesen, and their predecessors," and (2) "board compensation for current and former board members."[9]  Within these categories, SCF requested documents "including historical, retroactive, and current actual or proposed compensation of any type (e.g., salary, bonus, stipends, fees, benefits, expense accounts, etc.). . . including all documentation/reports/studies relating to such compensation and all communications to and from any outside consultants or anyone else relating to such compensation."[10]

At the same time that the parties were in discussions regarding SCF's discovery requests, the parties also discussed a protective order for certain documents.  ANTHC sought to designate certain documents as "Attorneys' Eyes Only" ("AEO") but the parties could not agree on a definition of what kinds of documents would qualify as AEO.  SCF expressed its concern with ANTHC's overly-broad definition of "AEO" materials, which ANTHC described as any "non-

---

[4] William Temko, counsel for SCF ("Temko") Decl. ¶ 2.
[5] Dkt. 12.
[6] Dkt. 16 at 3-4.
[7] Exhibit 1 at page 8, (July 9, 2017 email from James Torgerson, ANTHC counsel ("Torgerson") to Temko).
[8] Temko Decl. ¶2.
[9] Exhibit 2 (April 11, 2017 email from Temko to Torgersen).
[10] Id.

public information."[11]  SCF's position is that only documents that are "truly competitively sensitive between ANTHC and SCF, such that SCF 'business people' should not have access to the information," should be eligible for an "Attorneys' Eyes Only" designation.[12]  Nevertheless, in order to avoid continued delay in the discovery process and to facilitate the production of documents necessary for the litigation of this matter, SCF and ANTHC agreed to enter into a stipulated protective order defining "Confidential" material as "any information which is in the possession of a Designating Party that contains personal private information, trade secrets, confidential business information, or information protected from disclosure by state or federal law," and without defining AEO documents or other information.[13]  In order to obtain all documents as quickly as possible, SCF also agreed to allow ANTHC to designate certain documents AEO "pending a resolution of [the] disagreement as to the treatment of those documents."[14]

## C.  ANTHC Withholds Relevant, Non-Privileged Documents Under The Guise Of The Attorney-Client Privilege.

ANTHC produced documents in response to SCF's April 11, 2017 request on May 26, June 2, June 6, June 23, and July 17, many of which it designated "Confidential."[15]  The July 17, 2017 production was accompanied by two privilege logs purporting to explain why certain documents were withheld or redacted by ANTHC.[16]  SCF carefully reviewed the two privilege logs and associated documents and determined that certain documents were improperly redacted or withheld, primarily under the designation "Attorney-Client Communications."[17]  The improperly withheld documents fall into the following general categories: (1) withheld documents and communications related to third party compensation studies and reports;[18] (2)

---

[11] Exhibit 3 (May 21& 22, 2017 email exchange between SCF and ANTHC counsel).
[12] *Id.*
[13] Dkt. 22 at ¶ 1(b).  The protective order was signed and issued by the Court on June 15, 2017.  Dkt. 23.
[14] See Exhibit 1 at 1-8(July 13-18, 2017 email exchange between Torgerson and Temko).
[15] Exhibit 4 (production cover letters from Melissa Ferreira, Litigation Paralegal for ANTHC counsel).
[16] Exhibit 5 (Privilege logs).
[17] *Id.*
[18] *See id.* (REV0000003270, REV0000003581, REV0000003772.0001, REV0000003773.0001, REV0000003776.0001, REV0000003776.0002).

*Southcentral Foundation. v. ANTHC*
Page 5 of 19                                                                      Case No. 3:17-cv-00018-TMB
4866-7883-3817 v.1 cv-00018-TMB   Document 93   Filed 10/10/17   Page 5 of 19
4848-3424-0337\1

redacted emails in which no attorney is involved;[19] (3) withheld emails that were merely forwarded to attorneys at a later date than the original correspondence;[20] and (4) withheld emails and email attachments not involving the provision of legal advice.[21] None of these documents is protected by the attorney-client privilege, and all of them should have been produced in their entirety.

SCF sent ANTHC a letter on August 14, 2017, giving ANTHC the opportunity to rectify its bare assertions of privilege and explain the nature of the documents so SCF could better assess the viability of ANTHC's privilege claims. The letter details the above categories of documents that were improperly redacted or withheld and explains why such documents should be produced.[22] Counsel for the parties met and conferred on August 17, 2017 about SCF's letter and the issues raised therein. ANTHC refused to produce the requested documents or explain why they are privileged, and it became apparent during this conversation that the parties would not reach an agreement on the discovery issues without the Court's intervention.[23]

**D. ANTHC Over-designates Documents As "Attorneys' Eyes Only."**

On July 19, 2017, after the agreed-upon close of fact discovery, ANTHC produced the documents it had classified as "Attorneys' Eyes Only."[24] Upon review of the AEO documents, it was immediately apparent that ANTHC had improperly designated them as AEO, perhaps in order to prevent SCF's counsel from consulting with their clients regarding critical documents and issues in the litigation. As detailed below, the AEO documents are almost entirely related to executive and board compensation and related employment contracts. Multiple attempts to

---

[19] Exhibits 6 and 7 (ANTHC_007355, ANTHC_006965).
[20] See Exhibit 5 (REV0000003797, REV0000003797.0001, REV0000003797.0002, REV0000003797.0003).
[21] *See id.* (REV0000003778.0001, REV0000003778.0002, REV0000003778.0003, REV0000003778.0004, REV0000003778.0005, REV0000003778.0006, REV0000003778.0007, REV0000003778.0008, REV0000003783.0001.0001, REV0000003783.0001.0002, REV0000003783.0002, REV0000003797.0001, REV0000003797.0002, REV0000003797.0003. REV0000003270, REV0000003581, REV0000003585, REV0000003776.0003, REV0000003795.0001, REV0000003307, REV0000003308).
[22] Exhibit 8 (August 14, 2017 letter).
[23] Louisiana W. Cutler, counsel for SCF ("Cutler") Decl. ¶3.
[24] Exhibit 9 (July 19, 2017 production cover letter from Ferreira).

*Southcentral Foundation. v. ANTHC*
Page 6 of 19
Case No. 3:17-cv-00018-TMB
4866-7883-5817
4848-3424-0337\1

Case 3:17-cv-00018-TMB   Document 93   Filed 10/10/17   Page 6 of 19

confer with ANTHC and resolve this issue have been futile,[25] and SCF has been forced to seek the Court's intervention.

## III. ARGUMENT

The broad scope of discovery described in Rule 26 "allow[s] ultimate resolution of disputed issues to be based on full and accurate understanding of true facts."[26] A close review of the materials and privilege logs produced in this matter makes clear that relevant, unprivileged materials are being improperly withheld, and others have been improperly designated "Attorneys' Eyes Only." ANTHC's reasons for doing so are boilerplate and do not withstand scrutiny.

### A. ANTHC Improperly Withheld Relevant, Non-Privileged Documents Under The Guise Of The Attorney-Client Privilege.

Federal law governs claims of privilege over evidence related to federal claims.[27] To ascertain whether the attorney-client privilege applies, courts weigh the following factors:

(1) When legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived.[28]

The party asserting the privilege bears the burden of establishing each of the eight elements, and "even if established, the privilege is strictly construed"[29] so as to avoid "imped[ing] full and free discovery of the truth."[30] ANTHC's improper assertions of privilege fall into two overarching categories: (1) improper assertions of privilege over non-privileged executive compensation studies, and (2) improper assertions of privilege on account of over-designation. This motion addresses these two issues in turn.

---

[25] See Exhibit 3 (May 22, 2017 email from Temko to Torgerson).
[26] 6-26 Moore's Federal Practice – Civil § 26.02 (2017).
[27] *See* Fed. R. Evid. 501.
[28] *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002).
[29] *Visa U.S.A., Inc. v. First Data Corp.*, 2004 U.S. Dist. LEXIS 17117, at *12 (N.D. Cal., Aug. 23, 2004) (citing *Martin*, 278 F.3d at 999-1000)).
[30] *Weil v. Investment/Indicators, Research & Management*, 647 F.2d 18, 24 (9th Cir. 1981).

*Southcentral Foundation. v. ANTHC*
Page 7 of 19
Case No. 3:17-cv-00018-TMB
4826-7883-9817
4848-3424-0337\1
Case 3:17-cv-00018-TMB   Document 93   Filed 10/10/17   Page 7 of 19

### 1. The Executive Compensation Studies Are Not Privileged and Should Be Produced.

ANTHC has withheld numerous documents under the guise of the attorney-client privilege relating to compensation studies from the three different executive compensation firms (Milliman Inc. ("Milliman"), Sullivan Cotter and Associates, Inc. ("Sullivan Cotter"), and Integrated Healthcare Strategies ("IHS")) it hired to justify raising Teuber's salary, apparently just because it elected to copy its general counsel, Nacole Heslep, on such communications. This is flagrantly improper and, in line with precedent from two other federal courts, ANTHC should be compelled to produce all such documents and communications immediately. Attorney-client privilege does not extend to documents and reports written or created by others that are sent or forwarded to an attorney for purposes other than obtaining legal advice,[31] and there is no indication that Ms. Heslep offered any legal advice in conjunction with ANTHC's various executive compensation studies. Apparently acknowledging this, ANTHC did produce ███ ████████████████████████████████████████████████████████████ ████.[32] But it has inexplicably withheld some of the emails and reports from the two other executive compensation consultants.

The communications that ANTHC did produce between it and the compensation consultants are instructive, as they show that nobody at ANTHC was providing or seeking legal advice. For example, ██████████████████████████████████████████ ███████████████████████████████████████████████ ██████████████████████████████████████."[33] ████████████████████ ██████████████████████████████████████████████████████.[34] ██████████████████████████████████████████████████████ ███████████████████████████████.[35] Additionally, ANTHC produced two

---

[31] *Adams v. Teck Cominco Alaska, Inc.*, 232 F.R.D. 341, 344-45 (D. Alaska, Nov. 3, 2005).
[32] *See, e.g.*, Exhibit 10 ███████████████████.
[33] Exhibit 11 ████████████████.
[34] *Id.*
[35] *See, e.g.*, Exhibit 12 ████████████████████████ ████████████████████████.

███████████████████████████████████; none sets forth legal advice or provides any indication that the study was conducted for legal purposes.[36]

As to the second executive compensation consultant, Milliman, ANTHC produced certain reports while inexplicably withholding others. It is not tenable that some of these reports are relevant and unprivileged while versions of what appear to be the same reports are somehow privileged from production. Regardless, the produced reports again show that the work provided by Milliman did not involve the provision of legal advice. ███████████████

████████████████████████████████████████

███████████████████████████████████

███████████[37]██████████████████████████

█████████████████████[38]██████████████

████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████

██████████████████████████████[39]

The same is true of the Sullivan Cotter compensation study reports, some of which have been produced and some inexplicably withheld: the produced reports again show that the work product provided by Sullivan Cotter did not include the provision of legal advice. ██████████

████████████████████████[40]███[41]█████████[42]█████████████

█████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

---

[36] Exhibit 13 ██████████████. We have not included the other two produced copies of ██████ ██ in Ex. 13 because of their length, but will provide them to the court if requested to do so.
[37] Exhibit 14 ██████████████████████████████
[38] *Id.* ██████████████████.
[39] Exhibit 15 ████████████.
[40] Exhibit 16 ██████████.
[41] Exhibit 17 ██████████.
[42] Exhibit 18 ██████████.

[redacted].[43] There is nothing in the language of any of the produced reports to indicate that any of the third party consultants' services were "intended to be relied upon by counsel to render legal advice."[44] As such, the documents related to third party consultant reports are not protected by the attorney-client privilege and must be produced.

Two federal courts have addressed the exact argument apparently advanced by ANTHC in relation to whether the attorney-client privilege protects compensation research studies and reports conducted by a third party and used by legal counsel in assessing the reasonableness of compensation or benefits. Both courts found that the privilege did not extend to these documents.

In *Heartland Surgical Hospital, LLC v. Midwest Div., Inc.*,[45] a hospital claimed attorney-client privilege over documents related to a salary and compensation study of the hospital's physician board members performed by an accounting firm retained by the hospital's legal counsel. The court found that the services performed by the accounting firm were not done for the purpose of rendering legal advice:

> [The accounting firm] acted simply as a fact gatherer concerning job descriptions. [It] then compared those facts to established compensation data sets collected from other companies before turning this information over to the attorneys. . . [T]he engagement letters show that [the accounting firm] intended to provide no analysis of the fair value of past, current, or future compensation or compliance with laws and regulations relating to the compensation. . . [The services] were merely compilations of factual materials.[46]

Based on this assessment, the court mandated that the documents be produced because they were not protected by the attorney-client privilege.

Likewise, in *Wychocki v. Franciscan Sisters*,[47] the court determined that a compensation

---

[43] See Exhibit 16 [redacted] and Exhibit 17 [redacted].
[44] *MediaTek*, 2013 U.S. Dist. LEXIS 147032 at *16; *see* Exhibit 15 [redacted] and Exhibit 14 [redacted].
[45] 2007 U.S. Dist. LEXIS 53213 (D. Kan., July 20, 2007).
[46] *Id*. at *18-19.
[47] 2011 U.S. Dist. LEXIS 63223 (N.D. Ill., June 15, 2011).

study conducted by Sullivan Cotter – ██████████████████████████████

█████████████████ – was not completed for the purpose of rendering legal advice and thus

not protected by the attorney-client privilege. The court relied on two primary determinations:

(1) defendant's legal counsel did not hire Sullivan Cotter and there was no evidence that Sullivan

Cotter was acting as an "agent" of the attorneys; and (2) Sullivan Cotter's services are to provide

business and not legal advice.[48]

Both determinations are applicable to our case. First, ██████████████████

██████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

██████████████████.[49] ███████████████████████████████████████

████████████████████████████████████████████.[50] So too with

Sullivan Cotter. ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████.[51] Moreover, the services provided by Sullivan Cotter in *Wychocki* are the exact

services ██████████████████████████████.[52] Yet again, ANTHC has

inexplicably withheld other emails and reports related to the Milliman and Sullivan Cotter

compensation consulting work,[53] while producing other emails and reports.

---

[48] *Id.* at *18-21.
[49] Exhibit 19 ███████████████████████████████████████████████████
██████████████████████████████████ Even if ANTHC's legal counsel retained any
of the third-party consultants, the reports are still not privileged under the *Heartland* analysis. 2007
U.S. Dist. LEXIS 53213 at *8 (recognizing the factual dispute as to whether the hospital's legal counsel
or its board of directors enlisted the services of the accounting firm, the court found that "the resolution
of this factual dispute is not necessary for the Court's ruling" that the attorney-client privilege does not
protect the third-party reports).
[50] *See, e.g.,* Exhibit 20 ████████████████████████.
[51] *See, e.g.,* Exhibit 21 ████████████████████████████████████████████
███████████████████████████████████████████████████
████████
[52] Sullivan Cotter was hired "to provide the market analysis of CEO compensation and benefits" and did
so by "examin[ing] market comparability data, . . . compar[ing] all forms of compensation and benefits
provided to [the CEO] to market data, and. . . conclud[ing] that the total compensation and benefits
provided to [the CEO] are in the range of 80th to 90th percentiles of market data." *Wychocki*, 2011
U.S. Dist. LEXIS 63223, *20-21.
[53] Exhibit 5 at REV0000003772.0001, REV0000003773.0001, REV0000003776.0001,

*Southcentral Foundation. v. ANTHC*
Page 11 of 19                                    Case No. 3:17-cv-00018-TMB
Case 3:17-cv-00018-TMB   Document 93   Filed 10/10/17   Page 11 of 19
4848-5424-0337(1

Accordingly, the reports and related documents produced by the third party consultant companies are not protected by the attorney-client privilege and should be produced to SCF, especially in light of the fact that certain compensation reports have been produced. Moreover, under *Heartland*, these documents would not be privileged even if ANTHC attempts to argue that legal counsel was involved in the hire since the consultants were not hired to provide legal advice. ANTHC's deliberate withholding of these relevant, non-privileged documents only further reinforces the claims in this litigation that ANTHC management has failed to share critical information with the Board.[54]

### 2. ANTHC Has Over-Designated as Privileged a Wide Swath of Other Documents.

In addition to documents and communications concerning the executive compensation consultants, ANTHC has asserted privilege over a number of other documents and communications in unsupportable ways. *First*, ANTHC has withheld several emails under the guise of the attorney-client privilege simply because they were forwarded to attorneys at a later date than the original correspondence.[55] This is improper, as the underlying communications were not to or from attorneys and do not appear to be for the purpose of obtaining legal advice.[56]

*Second*, a number of other communications have been withheld or redacted by ANTHC simply because ANTHC general counsel Nacole Heslep is a recipient or otherwise copied on the emails, even though they do not appear to have been sent for the purpose of obtaining legal advice.[57] Courts consistently hold that the attorney-client privilege is not "so broad that it would permit the withholding of otherwise relevant discovery whenever an attorney performed an otherwise non-legal function or whenever an attorney was simply one of many copied on a string of inter-office emails."[58] For example, an email from Ed Sullivan to Ms. Heslep titled, "RE:

---

REV0000003776.0002, REV0000003796.0001, REV0000003799.0001, REV0000003799.0002, REV0000003801.0001, REV0000003801.0002.

[54] *See* Plaintiff Southcentral Foundation's Motion and Memorandum in Support of Motion for Summary Judgment.

[55] Exhibit 5 at REV0000003797, REV0000003797.0001, REV0000003797.0002, REV0000003797.0003.

[56] *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002).

[57] Exhibit 5 at REV0000003270, REV0000003581, REV0000003585.

[58] *Johnson v. RLI Ins. Co.*, 2015 U.S. Dist. LEXIS 115308, *8 (D. Alaska, Aug. 31, 2015).

compensation analysis" has been withheld, even though the subject line indicates no legal advice is being sought.[59]  Likewise, an email from Ms. Heslep to Gregory McNutt at Milliman with the subject "time to talk?" has also been withheld as attorney-client privileged.[60]  Since Mr. McNutt is not her client, it is implausible that Ms. Heslep was contacting Mr. McNutt to provide legal advice.  These emails must be produced.

*Third*, ANTHC has also withheld a number of documents under the designation of "Attorney-Client Communications" where the documents are attached to an email sent by or to ANTHC's legal counsel.[61]  It is axiomatic that email attachments—even when attached to emails falling under the attorney-client privilege—must independently qualify for the privilege in order to be protected.[62]  Based on the privilege log, the names of the attached documents do not indicate that they include confidential communications either providing or soliciting legal advice.  On the contrary, the document descriptions (including file names such as "Information Requested By KG.pdf" and "ASHNHA Survey 2014. Part 1.pdf") appear to be relevant documents that do not involve attorney-client communications.  These documents should be produced.  ANTHC's alleged reasons for nondisclosure are boilerplate, inconsistent, and unfounded.

**B.  The Documents and Other Information ANTHC Claims Are For "Attorneys' Eyes Only" Do Not Constitute Sensitive Competitive Information.**

Rule 26(c) authorizes the court to protect a party from "undue burden or expense" in discovery by directing that "a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way."  An AEO designation is appropriate when the risk of disclosing competitive or commercially-sensitive information such as pricing information, sales or marketing strategy, or product development

---

[59] Exhibit 5 at REV0000003585.
[60] *Id*. at REV0000003581.
[61] *Id*. at REV3773.0001; 3795.0001; REV0000003797.0001, REV0000003797.0002, REV0000003797.0003.
[62] *AT&T Corp. v. Microsoft Corp.*, 2003 U.S. Dist. LEXIS 8710, *11 (N.D. Cal., Apr. 18, 2003) (citing *O'Connor v. Boeing N. Am., Inc.*, 185 F.R.D. 272, 280 (C.D. Cal., Apr. 2, 1999) ("Attachments which do not, by their content, fall within the realm of the [attorney-client] privilege cannot become privileged by merely attaching them to a communication with the attorney.")).

*Southcentral Foundation. v. ANTHC*
Page 13 of 19                                                    Case No. 3:17-cv-00018-TMB
Case 3:17-cv-00018-TMB   Document 93   Filed 10/10/17   Page 13 of 19
4848-5424-0337\1

information could place one party at a competitive disadvantage.[63]  The only materials that would be eligible for the AEO designation in this case are documents that are competitively sensitive between ANTHC and SCF, such that disclosure of the information to SCF's employees could be detrimental to or otherwise prejudice ANTHC's business.

SCF has yet to find a single document produced by ANTHC with the AEO designation that meets this standard.  The AEO documents produced include: ███████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████ ██████████████ █████████████████████████████████████████████████. ANTHC's position that these documents include competitively sensitive information that cannot be shown to SCF is untenable.

Nothing found within the documents designated AEO places ANTHC at risk if shown to SCF for the purpose of litigating this case.  For example, █████████████████████████ ████████████████████████████████████ was marked as AEO.[64] However Mr. Teuber's salary can be found in multiple publicly available documents: a form filed with the Alaska Public Offices Commission and IRS Form 990 accessible online.[65] ANTHC's attempt to hide information from SCF that is in fact publicly available highlights ANTHC's over-designation of compensation-related documents as AEO.

████████████████████████████████████ designated AEO that ███████████████

---

[63] *See Wanke Cascade Distrib. v. Forbo Flooring, Inc.*, 2014 U.S. Dist. LEXIS 51187, * 24 (D. Or., Apr. 11, 2014) (permitting AEO designation where there was a risk of inadvertent disclosure of "competitively sensitive information"); *DeFreitas v. Tillinghast*, 2013 U.S. Dist. LEXIS 7429, at *4 (W.D. Wash. Jan. 17, 2013) (granting request for AEO designation for sensitive business information about finances, strategy, confidential agreements, and competitive market research when given to a direct competitor); *Tinn v. EMM Labs, Inc.*, 556 F. Supp. 2d 1191, 1196 (D. Or. 2008) (upholding AEO designation in breach of contract and misrepresentation action between competitors); *Nutratech, Inc. v. Syntech Int'l, Inc.*, 242 F.R.D. 552, 555-56 (C.D. Cal. 2007) (holding that customer and supplier lists, as well as revenue and sales information specific to those customers and suppliers, when disclosed to competitor must be limited to AEO).
[64] Exhibit 22 ████████████████████
[65] Exhibits 23 (APOC form and 990s).

████████████████ is another illustration of overuse of the AEO label. ANTHC first produced a redacted version of this draft as "Confidential."[66] The AEO designated version ██████████ produced on July 19, 2017 shows that the redacted sections do not pertain to competitively-sensitive information in any respect.[67] One section identified as AEO ████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████."[68] Nothing about this section could be construed as containing sensitive information that should be kept from SCF. Moreover, the document is from nearly three years ago. It is unreasonable and improper to conclude that the ████████████████████████████████████████████████████████████████ ██████████████ constitute sensitive competitive information in October 2017. Even if at one time the information was competitively sensitive – which it was not – an AEO designation is not justified almost three years later.

To be clear, SCF is not asking in this motion that all of these documents be available to the public. SCF has recognized the need for reasonable restrictions on the sharing of information between ANTHC and SCF, and to that end negotiated and entered into a stipulated protective order. The protective order protects the interests of both parties by ensuring that the public does not have access to legitimately confidential information. Nevertheless, denying the ability of SCF's counsel to share the information with its client prejudices SCF's ability to fairly and fully evaluate its claims against ANTHC and litigate this case. Therefore, SCF requests the Court order all documents designated "Attorneys' Eyes Only" to be produced with the "Confidential" designation.

### C. This Motion Is Procedurally Proper.

If ANTHC's opposition is anything like the arguments it raised at recent meet and confer sessions, ANTHC may attempt to argue (1) that this discovery motion is untimely, or (2) that the Court does not have the authority to enforce the broad discovery language provided in the parties' 26(f) Report. Neither argument has merit.

---

[66] Exhibit 24 ████████████████████████████████
[67] Exhibit 25 ████████████████████████████████████
[68] *Id.* at ████████████████

1.	**There Is Good Cause to Hear the Motion Now.**

Although the deadline in the scheduling order for filing discovery motions has passed, there is good cause for the Court to hear this motion now.  Federal Rule of Civil Procedure 16(b)(4) provides that a party seeking to modify a deadline set forth in a scheduling order must establish "good cause."  The Advisory Committee notes to Rule 16 indicate good cause exists when the deadline in the scheduling order cannot reasonably be met despite the diligence of the party seeking the extension.[69]  The decision to permit a motion to compel after the deadline in a discovery plan is in the broad discretion of this Court.[70]  When deciding the timeliness of a motion to compel, the court "must inquire into the 'entire complex of circumstances that gave rise to the motion, and what is untimely in one case may not be in another.'"[71]

SCF brings this motion now because it was impossible for SCF to bring it by July 17, 2017 on account of ANTHC's delays in production.  ANTHC produced documents up to (and even after) the discovery deadline.  It only produced its privilege logs on the discovery deadline after months of delay, affording SCF no time to review and assess them before the deadline passed.  SCF diligently reviewed the produced documents and privilege logs as soon as they were received, quickly informed opposing counsel of the deficiencies in production in an effort to resolve them without motion practice, and has now filed this motion because it is apparent that a resolution without the Court's intervention would not be reached.  Such delays in the litigation process have been found to justify discovery motion practice after court-created deadlines—in some cases up to a year after such deadlines.[72]

Further, pursuant to this Court's procedures for resolving discovery disputes, the parties conferred several times in an effort to resolve ANTHC's improper designations prior to SCF filing this motion.  This meet and confer process took time, and also prevented SCF from bringing its motion prior to July 17.  Courts consistently hold that engaging in such efforts are

---

[69] Advisory Committee Notes to Rule 16 (1983 amendments).
[70] *See Cornwell v. Electra Central Credit Union*, 439 F.3d 1018, 1026-27 (9th Cir. 2006).
[71] *See Dziadek v. Charter Oak Fire Ins. Co.*, 2014 U.S. Dist. LEXIS 26703 * 9-10 (D. S.D., March 3, 2014) (quoting *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 333 (N.D. Ill. 2005); *see also Haviland v. Catholic Health Initiatives-Iowa, Corp.*, 692 F. Supp. 2d 1040, 1044 (S.D. Iowa 2010) ("Because no single rule or deadline can encompass the myriad of variations in discovery, . . . judges are given broad discretion to manage the overall process in the interests of dispatch and fairness.").
[72] *See Roberts v. Cal. Dep't of Corr. & Rehab.*, 2014 U.S. Dist. LEXIS 3335, * 2 (E.D. Cal., Jan. 8, 2014).

*Southcentral Foundation. v. ANTHC*
Page 16 of 19                                                           Case No. 3:17-cv-00018-TMB
Case 3:17-cv-00018-TMB   Document 93   Filed 10/10/17   Page 16 of 19
4848-5424-0337\1

considered sufficient good cause for permitting a motion to compel filed after a court-created deadline.[73]

1.    **The Fact that the Court Never "So Ordered" the Rule 26(f) Report Does Not Prevent SCF From Enforcing ANTHC's Commitments to SCF in the Report.**

Another baseless argument that ANTHC may raise is that relief from the court is unavailable because the Court never so ordered the Rule 26(f) report.    ANTHC cannot have it both ways: while it seeks to enforce the 26(f) Report's deadline for discovery motions (subsequently extended by agreement) against SCF to prevent it from filing this motion, at the same time it cannot argue that the 26(f) Report's language permitting informal discovery is unenforceable because it was not incorporated into an order by the Court.

Here, the parties mutually agreed to the scope of discovery and to informal discovery, the Court ordered the parties to create the 26(f) Report setting forth discovery deadlines and procedures, and the parties mutually agreed to the dates and statements in the 26(f) Report filed pursuant to the Court's order.[74]  ANTHC apparently – and incorrectly – takes the position that Rule 26(f) reports are unenforceable, as in this case where the parties did not request a Rule 16 conference.[75]  "If the parties do not request a Rule 16 conference and if the joint report is satisfactory to the Court, it may be 'so ordered' by the Court," and thus subject to the court's authority.[76]  The Ninth Circuit has affirmed the district court's authority to impose Rule 37(b) sanctions when a party "fails to obey an order to provide or permit discovery, including an order under Rule 26(f)" and has held that the term "order" should be read broadly.[77]  In *Dreith*, the Ninth Circuit held: "Though the [] order was not noticed, opposed, or heard in a formal manner, it still constituted an order to provide or permit discovery with which compliance was mandatory."[78]

---

[73] *See Allianz Ins. Co. v. Surface Specialties, Inc.*, 2005 U.S. Dist. LEXIS 301, *3 (D. Kan., Jan. 7, 2005).
[74] Temko Decl. ¶2; Dkt. 12 (Court's 26(f) Order); Dkt. 16 (the parties' Scheduling and Planning Conference Report).
[75] Temko Decl. ¶2.
[76] *Lombardo v. Greyhound Lines, Inc.*, 179 F.R.D. 83, 84 (D. Conn., April 15, 1998).
[77] *Dreith v. Nu Image, Inc.*, 648 F. 3d 779, 787 (9th Cir. 2011) (citing *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992)).
[78] *Id.* (internal quotation marks omitted).

*Southcentral Foundation. v. ANTHC*
Page 17 of 19                                    Case No. 3:17-cv-00018-TMB
4848-5424-0337\1
Case 3:17-cv-00018-TMB    Document 93    Filed 10/10/17    Page 17 of 19

The 26(f) Report was apparently satisfactory to the Court and thus should be considered "as ordered," mandating ANTHC's compliance with the report and subjecting the parties to this Court's authority over violations thereof. The parties mutually agreed to informal document production in order to avoid unnecessary time and expense associated with formal discovery requests. ANTHC should not be permitted to abuse the discovery process and avoid producing documents it explicitly informed opposing counsel it would produce based on this unsupported technicality.

## IV.    CONCLUSION

For the foregoing reasons, SCF respectfully requests that the Court order ANTHC to produce all non-privileged materials responsive to SCF's requests for document production and to designate all "Attorneys Eyes Only" documents as "Confidential" within five (5) days after entry of the Order on this Motion.

DATED this _10th__ day of October, 2017, at Anchorage, Alaska.

MUNGER, TOLLES & OLSON LLP
Attorneys for Plaintiff Southcentral
Foundation


By: _____/s/_____
      William D. Temko, CA Bar #98858
      william.temko@mto.com
      Munger, Tolles & Olson LLP
      350 South Grand Avenue, 50th Floor
      Los Angeles, CA  90071-1560
      (213) 683-9266

*Southcentral Foundation. v. ANTHC*
Page 18 of 19                                                    Case No. 3:17-cv-00018-TMB
4848-5424-0337(1
Case 3:17-cv-00018-TMB   Document 93   Filed 10/10/17   Page 18 of 19

DATED this _10th__ day of October, 2017, at Anchorage, Alaska.

DORSEY & WHITNEY LLP
Attorneys for Plaintiff Southcentral
Foundation

By: _____/s/_____
      Louisiana Cutler, ABA #9106028
      Shane Kanady, ABA #1411096
      cutler.louisiana@dorsey.com
      kanady.shane@dorsey.com
      Dorsey & Whitney LLP
      1031 West Fourth Avenue, Suite 600
      Anchorage, AK 99501-5907
      (907) 276-4557

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the __10th_ day
of October, 2017, a true and correct copy
of the foregoing was served on:

James Torgerson     jim.torgerson@stoel.com
Sarah Langberg     sarah.langberg@stoel.com

by electronic means through the ECF
system or if not confirmed by ECF, by
first class mail.

/s/ Louisiana Cutler_____

Southcentral Foundation. v. ANTHC

Page 19 of 19                           Case No. 3:17-cv-00018-TMB
4848-5424-0357 (
Case 3:17-cv-00018-TMB   Document 93   Filed 10/10/17   Page 19 of 19