William D. Temko, CA Bar #98858
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-1560
(213) 683-9266
william.temko@mto.com

Louisiana W. Cutler #9106028
Shane Kanady #1411096
DORSEY & WHITNEY LLP
1031 West Fourth Avenue, Suite 600
Anchorage, AK 99501-5907
(907) 276-4557
cutler.louisiana@dorsey.com
kanady.shane@dorsey.com

Attorneys for Plaintiff Southcentral Foundation

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| Southcentral Foundation, | Case No. 3:17cv-00018-TMB |
| Plaintiff, | |
| vs. | |
| Alaska Native Tribal Health Consortium, | |
| Defendant. | |

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ...................................................................1

II.   SCF'S INTERPRETATION OF SECTION 325 IS CORRECT AND ENTITLES
      IT TO THE DECLARATION IT SEEKS ...................................................2

      A.    SCF's Interpretation of Section 325 Is Supported by the Plain Language of
            the Law and Its Legislative History .......................................................2

      B.    ANTHC's Interpretation of Section 325 Is Wrong .................................4

            1.    SCF Is Not an Uninvolved "Third Party" ...................................4

            2.    ANTHC's Semantics Manufacture a Distinction Without a
                  Difference ...................................................................................5

            3.    SCF's Position Advances Alaska Native Governance of ANTHC;
                  ANTHC's Position Does Not..........................................................6

            4.    SCF's Lawsuit Is Not About Mere "Details" of ANTHC's
                  Governance ...................................................................................7

            5.    SCF Is Not Attempting to Diminish the Duties Its Designated
                  Directors Owe to ANTHC .............................................................8

            6.    ANTHC's Preemption Analysis Is Flawed....................................9

      C.    The Declaration that SCF Seeks Is Both Required by Section 325 and
            Reasonable ........................................................................................10

III.  THE WAY THAT ANDY TEUBER INCREASED HIS COMPENSATION
      DEMONSTRATES WHY ANTHC'S INTERPRETATION OF SECTION 325
      CANNOT STAND.......................................................................................13

      A.    ANTHC Mischaracterizes How the Executive Committee Was Created in
            2014.....................................................................................................14

      B.    ANTHC's Post-Hoc Excuses ███████████████████████████
            ██████████Are Plainly Contrived ...................................................16

            1.    ████████████ ..............................................................16

            2.    ████████ ...........................................................................18

            3.    █████████████████ ...............................................19

      C.    ANTHC and SCF Cooperate in Far More Ways than They Compete...................23

      D.    SCF Is Not Trying to Take Over ANTHC.............................................24

-i-

DORSEY & WHITNEY LLP
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

IV.    THE CASE IS NOT MOOT ................................................................................................24

V.     CONCLUSION.........................................................................................................................25

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

-ii-

*Southcentral Foundation v. ANTHC*
Case No. 3:17-cv-00018-TMB

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Bell v. City of Boise*,
   709 F.3d 890 (9th Cir. 2013) ................................................................25

*Broad v. Sealaska Corp.*,
   85 F.3d 422 (9th Cir. 1996) ..................................................................10

*Chem. Producers & Distributors Ass'n v. Helliker*,
   463 F.3d 871 (9th Cir. 2006) ................................................................25

*Cohen v. Ayers*,
   449 F. Supp. 298 (N.D. Ill. 1978), *aff'd*, 596 F.2d 733 (7th Cir. 1979) ...............................15

*Cook Inlet Treaty Tribes v. Shalala*,
   166 F.3d 986 (9th Cir. 1999) ................................................................25

*Freedman v. Redstone*,
   753 F.3d 416 (3d Cir. 2014)..................................................................10

*John Swann Holding Corp. v. Simmons*,
   62 F. Supp. 3d 304 (S.D.N.Y. 2014).......................................................9

*Knox v. Serv. Employees Int'l Union, Local 1000*,
   567 U.S. 298 (2012).............................................................................25

*Marsh v. Rosenbloom*,
   499 F.3d 165 (2d Cir. 2007)..................................................................10

*Oneida Cty. v. Oneida Indian Nation of New York State*,
   470 U.S. 226 (1985).............................................................................10

*Rosebrock v. Mathis*,
   745 F.3d 963 (9th Cir. 2014) ................................................................24

*Rosenbloom v. Pyott*,
   765 F.3d 1137 (9th Cir. 2014) ..............................................................11

*Silvas v. E*Trade Mortg. Corp.*,
   514 F.3d 1001 (9th Cir. 2008) ..............................................................10

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

-iii-

*Smith v. Univ. of Washington, Law Sch.*,
    233 F.3d 1188 (9th Cir. 2000) ..........................................................................24

*State of Nevada Employees' Ass'n, Inc. v. Bryan*,
    916 F.2d 1384 (9th Cir. 1990) ...........................................................................5

*Stengel v. Medtronic Inc.*,
    704 F.3d 1224 (9th Cir. 2013) .........................................................................10

**STATE CASES**

*Am. Int'l Grp., Inc. v. Greenberg*,
    877 N.Y.S.2d 614 (N.Y. Sup. Ct. 2008), *aff'd*, 875 N.Y.S.2d 39 (App. Div. 2009) ...................................................................................................................8

*Amalgamated Bank v. Yahoo! Inc.*,
    132 A.3d 742 (Del. Ch. 2016) ............................................................................9

*Askinuk Corp. v. Lower Yukon Sch. Dist.*,
    214 P.3d 259 (Alaska 2009) ..............................................................................16

*Int'l Boiler Works Co. v. Gen. Waterworks Corp.*,
    372 A.2d 176 (Del. 1977) ..................................................................................16

*In re Massey Energy Co.*,
    2011 WL 2176479 (Del. Ch. May 31, 2011) ....................................................11

*Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*,
    854 A.2d 121 (Del. Ch. 2004) ..........................................................................11

*Schreiber v. Bryan*,
    396 A.2d 512 (Del. Ch. 1978) ..........................................................................15

*Stone ex rel. AmSouth Bancorporation v. Ritter*,
    911 A.2d 362 (Del. 2006) ....................................................................................9

*In re Trados Inc. S'holder Litig.*,
    73 A.3d 17 (Del. Ch. 2013) .................................................................................8

*Weinberger v. UOP, Inc.*,
    457 A.2d 701 (Del. 1983) ....................................................................................8

**FEDERAL STATUTES**

Section 325 of Public Law No. 105-83.................................................... *passim*

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

*Southcentral Foundation v. ANTHC*
Case No. 3:17-cv-00018-TMB

**STATE STATUTES**

Alaska Stat. Ann. § 10.06.020 ....................................................................................16

**FEDERAL REGULATIONS**

16 C.F.R. § 53.4958-6(a) .............................................................................................20

**LEGISLATIVE MATERIALS**

S. Rep. No. 105-56 (July 22, 1997) ...................................................... *passim*

**OTHER AUTHORITIES**

Black's Law Dictionary (10th ed. 2014)........................................................................5

Internal Revenue Service, Instructions for Form 990 (2016), available at
    https://www.irs.gov/pub/irs-pdf/i990.pdf ..............................................................22

IRS Form 8868, Application for Automatic Extension of Time To File an Exempt
    Organization Return, available at https://www.irs.gov/pub/irs-pdf/f8868.pdf ......................22

Laurel Andrews, *Alaska Dispatch News*, "Alaska Native Tribal Health
    Consortium to receive $153 million in overdue federal payments," (June 30,
    2014), available at https://www.adn.com/alaska-news/article/alaska-native-
    tribal-health-consortium-receive-153-million-overdue-payments/2014/07/01/
    (last accessed October 11, 2017). .............................................................................23

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

-v-

## I.    PRELIMINARY STATEMENT

Defendant Alaska Native Tribal Health Consortium ("ANTHC") wants this Court to believe that this is a standard corporate governance dispute about legitimate decisions that it and its Board made.  It devotes large amounts of its opposition to Plaintiff Southcentral Foundation's ("SCF") motion for summary judgment to discussing irrelevant and inapposite Alaska corporate law, and asks this Court to look at every issue in the way that is "usually the case with boards of directors."[1]  It denigrates SCF and Congress by repeatedly referring to SCF as a "third party."  The insurmountable problem for ANTHC is that this is not a typical corporate governance dispute for one simple reason: Section 325 of Public Law No. 105-83 ("Section 325").

ANTHC is a unique entity.  It is a "consortium made up of representatives of each of Alaska's regional Native health entities" created by Congress through Section 325 to manage certain statewide health services for Alaska Native people and funded largely by the federal government.[2]  ANTHC's Bylaws state that ANTHC's mission is "to carry out the purposes of Section 325," and its Articles of Incorporation provide that its "[Articles of Incorporation] and Bylaws may not be inconsistent with the provisions of . . . Section 325."[3]  Section 325 is, thus, integral to ANTHC's founding and governance.

Section 325 also prescribes the relationship between ANTHC and the Regional Health Entities represented on its Board, and dictates the outcome of this dispute.  It mandates certain basic protections for SCF and the other Regional Health Entities, including the ability to vote on matters that come before the Board.  Congress intentionally designated thirteen Regional Health Entities to nominate "representative[s]" to ANTHC's Board so as to "draw on [their] existing expertise" and to "ensure efficient, experienced" management of ANTHC and the health services it provides through the Alaska Native Medical Center ("ANMC").[4]  In order for the Regional Health Entities to fulfill Congressional intent and make informed decisions about the governance of ANTHC, they must have access to critical information about the Consortium.  The text, structure and legislative history require this result.  For the reasons that follow, as well as those

---

[1] Alaska Native Tribal Health Consortium's Opposition to Southcentral Foundation's Motion for Summary Judgment ("ANTHC Opp."), ECF Nos. 60 (redacted), 61 (sealed) at 4.
[2] S. Rep. No. 105-56 (July 22, 1997) ("Senate Report") (emphasis added).  The rights of the two Unaffiliated Directors, who represent Tribes and Tribal organizations unaffiliated with any Regional Health Entity, are exactly the same as SCF's designated directors.
[3] Declaration of Sarah Langberg dated Aug. 16, 2017, ECF No. 42, Ex E at 1; *id.* Ex. D at 3.
[4] Section 325(a); Senate Report.

1

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

set out in SCF's motion for summary judgment,[5] the Court should grant SCF's motion for summary judgment.

## II.  SCF'S INTERPRETATION OF SECTION 325 IS CORRECT AND ENTITLES IT TO THE DECLARATION IT SEEKS

ANTHC offers an inconsistent interpretation of Section 325, at times acknowledging that its Board is "composed of one representative of each regional health entity" specifically listed in Section 325(a),[6] while at other times arguing that SCF and the other Congressionally-designated Regional Health Entities have no role to play whatsoever in governing ANTHC.[7]  Perhaps because it cannot find a consistent and workable interpretation of Section 325 that leads to the conclusion that it wants the Court to reach, ANTHC consistently falls back on principles of Alaska corporate law that are irrelevant to the question at hand.  The plain language, structure, and legislative history of Section 325 all support SCF's interpretation.  As explained below, the other legal arguments that ANTHC advances are all incorrect or irrelevant.

### A.  SCF's Interpretation of Section 325 Is Supported by the Plain Language of the Law and Its Legislative History

Section 325 is not complicated.  In Section 325(a), Congress specifically named thirteen Regional Health Entities that it authorized to form a consortium.[8]  SCF is one of those Congressionally-designated entities.[9]  When creating the new Consortium, Congress could have decided to form a stand-alone entity, or completely divorce the new entity from the existing Regional Health Entities, but consciously chose instead to "draw on the existing expertise of the Alaska Native regional health entities now managing extensive regional health networks in Alaska."[10]

Because Congress wanted to ensure that the Regional Health Entities that it identified by

---

[5] ECF Nos. 31 (redacted), 38 (sealed) ("SCF MSJ").
[6] Section 325(b); *see, e.g.,* ANTHC Opp. at 5 ("ANTHC is to be governed by 15 persons who are representatives of various entities"), 12 ("the Committee sought to draw on the regional health entities' expertise by ensuring that representatives of those entities would govern the ANTHC Board"), 16 ("Each ANTHC Director is, by definition, a representative of the entity that selected him or her, and thus is expected to represent that entity").
[7] *See, e.g.,* ANTHC Opp. at 1 ("This case is about whether ANTHC will continue to be governed by a board of independent directors as directed by Congress, or whether it will be governed by SCF and entities like it").
[8] Section 325(a).
[9] *Id.*
[10] Senate Report.

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

2

name would be able to govern and participate in the Consortium effectively, it did not simply authorize the creation of a consortium in Section 325(a), but also set out the Consortium's governance structure in Section 325(b). As explained in SCF's motion for summary judgment, Congress mandated that the Consortium "shall be governed by a 15-member Board of Directors," that this Board "shall be composed of one representative" from each of the thirteen Regional Health Entities, as well as two from Unaffiliated Tribes and Tribal organizations, that "[e]ach member of the Board of Directors shall be entitled to cast one vote," and that "decisions of the Board of Directors shall be made by consensus whenever possible."[11] The Senate Report makes clear that Section 325(b) was intended to "lay out a framework for Alaska Native governance," which is exactly what it did.[12]

In passing Section 325, Congress was not drawing on a blank slate. Rather, it legislated within the context of a longstanding tradition of Alaska Native Tribes and Tribal organizations working together to ensure that scarce federal dollars are used to provide the best healthcare possible. The Alaska Tribal Health Compact ("ATHC"), a legal agreement setting out the terms and conditions of the government-to-government relationship between Alaska Native Tribes and Tribal organizations and the United States government, was built on a foundation of transparency, access to information, and consensus.[13] ANTHC completely ignores this backdrop, which provides critical context for the world into which Congress created Section 325.

The plain language, structure, and legislative history thus lead to the common-sense conclusion that SCF's "representative" on ANTHC's Board is entitled to one vote on all matters considered by the Board. In order to be an effective director, SCF's designated director must have access to the full range of information necessary to make informed decisions about ANTHC's governance. Furthermore, so that SCF's "representative" can "draw on the existing expertise" of her designating entity, SCF's designated director must also be able to share that information with SCF. ANTHC violated Section 325 by delegating nearly the full range of Board power to the Executive Committee and then preventing SCF from receiving information critical to ANTHC's governance. SCF is entitled to a declaration stating that ANTHC's actions

DORSEY & WHITNEY LLP
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

---

[11] Section 325(b); SCF MSJ at 5-7; 31-36.
[12] Senate Report.
[13] Declaration of Katherine Gottlieb in Support of Southcentral Foundation's Motion for Summary Judgment dated Aug. 16, 2017 ("Gottlieb Decl."), ECF No. 31-1, ¶¶ 10-11.

3

*Southcentral Foundation v. ANTHC*
Case No. 3:17-cv-00018-TMB

violated Section 325.

  **B.**    <u>ANTHC's Interpretation of Section 325 Is Wrong</u>

    **1.**    **SCF Is Not an Uninvolved "Third Party"**

  Ignoring the plain language, structure, and legislative history of Section 325, ANTHC repeatedly characterizes SCF as though it is a stranger to the Consortium. It labels SCF a "third party" over a dozen times in its opposition brief, also calling it a "competitor," "independent entit[y]," and "assorted entit[y]"[14] in an attempt to portray SCF as nothing more than some unrelated entity that is trying to insert itself somewhere it does not belong. This interpretation ignores the many ways in which Congress mandated that SCF and the other participating entities have a role in ANTHC's governance that far exceeds that of unconnected "third parties." Congress specifically named SCF—along with twelve other Regional Health Entities—as participants in the Consortium who designate "representative[s]" to serve on ANTHC's Board.[15] Congress also wanted to guarantee that ANTHC could "draw on the existing expertise" of SCF. Treating SCF as an unconnected "third party"—some sort of officious intermeddler—is inconsistent with Congress specifically identifying SCF in Section 325 and specifically explaining that it wanted SCF to lend its expertise to bear in ANTHC's governance.

  Although ANTHC concedes that it was created to draw on the expertise of the existing Regional Health Entities,[16] it argues that Congress sought to draw on this expertise solely through the specific individuals that each entity appoints to the ANTHC Board.[17] The individuals on ANTHC's Board are essential and valuable resources, and their Congressionally-designated appointing entities can act only through them. But the expertise and experience that Congress sought to draw upon is resident primarily in the Regional Health Entities that Congress named, not the individuals they nominate to represent them. Both the text of Section 325 and its

---

[14] *See, e.g.* ANTHC Opp. at 6, 7, 8, 10, 12, 14, 15, 16, 17, 30.

[15] Further reinforcing that Congress wanted the Regional Health entities to lend their expertise, Section 325 (a) provides that a Regional Health Entity would lose its ability to "participate[e] in the Consortium" if it failed to maintain its status as a Regional Health Entity. Section 325(a).

[16] *See* ANTHC Opp. at 11 ("The Senate Report also notes that the ANTHC Board would provide experienced Alaska Native control and would draw on the existing expertise of assorted regional health networks in Alaska"); 12 ("As clearly set forth by Congress, the Committee sought to draw on the regional health entities' expertise"). ANTHC also acknowledges that SCF's status "does not mean that Regional Health Entities are not entitled to any information." *Id.* at 8.

[17] *Id.* at 8 (ANTHC Board members "are required to exercise their independent judgment"); 16 ("It is neither necessary nor appropriate for ANTHC Board members to disclose confidential information to third parties in order to provide their experience and expertise to ANTHC.").

4

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

*Southcentral Foundation v. ANTHC*
Case No. 3:17-cv-00018-TMB

legislative history make this clear.

The text of Section 325 makes this clear by using the term "representative" in describing the capacity in which the members of the ANTHC Board sit.  While ANTHC appears to recognize this—stating that "[e]ach ANTHC director is, by definition, a representative of the entity that selected him or her, and thus is expected to represent that entity"[18]—it ignores the legal significance of the term.  A "representative" is "[s]omeone who stands for or acts on behalf of another."[19]  The Board of ANTHC, thus, is composed of persons who "stand for or act on behalf of" "each regional health entity listed" in Section 325(a).  The promise that designated directors would be able to act in a representative capacity is illusory if they are unable to share information critical to ANTHC's governance with their designating Tribal organizations.

The legislative history confirms that Congress wanted ANTHC to "draw on the existing expertise of the Alaska Native regional health entities," rather than just the persons those entities name to sit on the ANTHC Board.[20]  The Senate Report further states that "the Committee bill calls for formation of a *new consortium made up of representatives of each of Alaska's regional Native health entities*."[21]  This language is noteworthy because it states that it is the "consortium" itself, not just its Board, that is "made up of representatives" of the Regional Health Entities.  This is consistent with the text of Section 325, as well as the structure that Congress envisioned.

### 2. ANTHC's Semantics Manufacture a Distinction Without a Difference

ANTHC makes a semantic argument that attempts to exploit a distinction where there is none.  ANTHC states that it is "critical to SCF's argument" that SCF "establish that it is a 'member' of ANTHC," but then argues that ANTHC has no "members" under Alaska law and that the Regional Health Entities "are just participants."[22]  ANTHC does not define "just participants," so the distinction at which ANTHC is driving is not clear.  SCF agrees that it is a participant, and it is not critical to SCF's argument that it is a "member" of ANTHC under

---

[18] *Id.* at 16.
[19] Black's Law Dictionary (10th ed. 2014).
[20] Senate Report; *see also State of Nevada Employees' Ass'n, Inc. v. Bryan*, 916 F.2d 1384, 1388 (9th Cir. 1990) (where "the statute is silent as to the definition of 'representative,' this court must examine the Committee Reports [i.e. pertinent legislative history] to determine the legislative intent of the bill.").
[21] Senate Report (emphasis added).
[22] ANTHC Opp. at 3.

DORSEY & WHITNEY LLP
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

5

Alaska law. What is critical is the functional role that Congress mandated that SCF would have in ANTHC's governance given the framework of Section 325, including its language that SCF is entitled to "participat[e] in the consortium."[23] ANTHC's interpretation as separating its Board members from the Congressionally-designated appointing organizations that they represent ignores both the letter and intent of Section 325.

ANTHC's approach is also impractical. Under its interpretation, a Board member cannot seek her Congressionally-appointed designating organization's view on something that the ANTHC Board proposes doing. Instead, she has to figure out on her own what course would be in the best interest of ANTHC, without the benefit of any of the resources, insight, institutional knowledge, or expertise of her designating entity. That is not what Congress meant when it stated that it was seeking to "draw on the existing expertise of the Alaska Native regional health entities now managing extensive regional health networks in Alaska."[24] It is the *entities* from which Congress sought to "draw" "existing expertise." Congress used the term "entities" instead of "persons" perhaps because the actual people who represent the participants in ANTHC change over time. While the members of the Board are knowledgeable and talented individuals, it defies common sense to interpret Section 325 in a manner that would preclude them from seeking any help or guidance from their designating organizations. This is plainly inconsistent with Congress's goal that ANTHC be "professionally and prudently managed" by the existing Regional Health Entities.[25]

### 3. SCF's Position Advances Alaska Native Governance of ANTHC; ANTHC's Position Does Not

ANTHC argues that the only way to permit "Alaska Native governance" of ANTHC is through individual Board members, without any input whatsoever from their designating organizations.[26] In truth, the Regional Health Entities named in Section 325(a) (as well as the Unaffiliated Tribes and Tribal Organizations) ensure that Alaska Native people govern ANTHC because they are all Alaska Native entities that provide health services to Alaska Native people. By contrast, ANTHC's interpretation undermines Alaska Native governance because, in its view, only a small number of Alaska Native individuals can and should have input on ANTHC's

---

[23] Section 325(a).
[24] Senate Report.
[25] *Id.*
[26] ANTHC Opp. at 11.

6

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

governance (even more so if critical decisions can be made by a smaller Executive Committee). SCF's interpretation of Section 325 reinforces Alaska Native governance by ensuring a broader set of Alaska Native perspectives and experiences are brought to bear in the governance of ANTHC, consistent with the longstanding tradition of cooperative, inclusive healthcare for Alaska Native people.[27]

Further, there is nothing "paternalistic"[28] about asking this Court to enforce a federal law that furthers self-determination and Alaska Native control of health services. As ANTHC acknowledges, Section 325 "must be read in light of the self-determination and self-governance purpose" of the Indian Self Determination and Education Assistance Act.[29] Enforcing the provisions of Section 325 that "ensure efficient, experienced Alaska Native management and control"[30] is not an exercise in "federal domination,"[31] as ANTHC hyperbolically claims, but rather is critical to ensuring that the variety of Alaska Native perspectives that Congress wanted to participate in ANTHC's governance actually can govern it.

       **4.**      **SCF's Lawsuit Is Not About Mere "Details" of ANTHC's Governance**

Finally, ANTHC claims that Section 325 is "merely a framework" and not "a detailed recitation of governance details."[32] This suit is not about certain details that Section 325 left out. The declaration that SCF seeks goes to the core structure that Congress created, and whether SCF and the other Tribes and Tribal organizations represented on its Board can have access to information critical to how ANTHC is governed and how it compensates its top executives. These are not the kinds of mere "details" that ANTHC describes, such as how often the Board meets.[33] Nor is SCF telling the Board how to do its job. SCF is simply attempting to restore the governance rights that Congress conferred upon it and all of the other Tribal organizations named in Section 325.[34]

---

[27] Gottlieb Decl. ¶¶ 10-11.
[28] *Id.* at 9-10.
[29] *Id.* at 9.
[30] Senate Report.
[31] ANTHC Opp. at 9.
[32] *Id.* at 10.
[33] *Id.*
[34] ANTHC's passing comment that SCF is attempting to conflate comments in the Senate Report regarding the governance of ANMC with those regarding ANTHC (and its characterization of SCF's position as "insidious") is puzzling. ANTHC Opp. at 4-5, n.14. The Senate Report explicitly states that Section 325's language "relat[es] to a consortium for the provision of health

7

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

*Southcentral Foundation v. ANTHC*
Case No. 3:17-cv-00018-TMB

### 5. SCF Is Not Attempting to Diminish the Duties Its Designated Directors Owe to ANTHC

ANTHC argues that the dual fiduciary duty that SCF explained in its opening brief[35] is "tantamount to a refusal to recognize that all ANTHC directors . . . are fiduciaries to ANTHC."[36] This is not the case. As SCF has explained, courts are clear that where a director holds "dual or multiple fiduciary obligations," there is "no dilution of the duty of loyalty" to *either* entity.[37] ANTHC has not presented the Court with any law to the contrary, and in its motion for summary judgment cited the very same cases that SCF did—cases that squarely explain SCF's correct legal position.[38]

ANTHC's position makes sense only if one assumes that everything that comes before the Board presents a conflict of interest. If every issue presents a conflict, then, as a practical matter, a Director would have to recuse herself from every decision and would not be an effective representative. But that is not the case here: ANTHC's opposition to SCF's motion does not identify any Board decision that presented a *bona fide* conflict of interest with SCF. Therefore, nothing prevented SCF's designated directors from properly exercising their fiduciary duties to both ANTHC and their designating entities.

Even when an actual conflict of interest arises, ANTHC has not presented a single instance where its own conflict of interest rules failed to resolve the situation adequately. Despite this, ANTHC criticizes its own conflict of interest rules, arguing that addressing conflicts of interest on a "piecemeal basis" might somehow be insufficient.[39] This is surprising, given that its *own declarant*, Chris Merculief, explains to the Court that these are the very same rules that he and the other designated directors are supposed to use when actual conflicts arise,

---

services through [ANMC] and the IHS Alaska area office." That Consortium is ANTHC. There is not some other, secret organization that Section 325 and its legislative history addresses.

[35] *See* SCF MSJ at 38-40.

[36] ANTHC Opp. at 8.

[37] *In re Trados Inc. S'holder Litig.*, 73 A.3d 17, 46 (Del. Ch. 2013) (quotation marks omitted); *see also Weinberger v. UOP, Inc.*, 457 A.2d 701, 710 (Del. 1983) ("individuals who act in a dual capacity as directors of two corporations . . . owe the same duty of good management to both corporations"); *Am. Int'l Grp., Inc. v. Greenberg*, 877 N.Y.S.2d 614, 623 (N.Y. Sup. Ct. 2008), *aff'd*, 875 N.Y.S.2d 39 (App. Div. 2009) (duty of loyalty "not diluted simply because a director acts in a dual capacity as director of another corporation at the same time").

[38] Alaska Native Tribal Health Consortium's Motion for Summary Judgment, ECF Nos. 35 (redacted), 36 (sealed) at 32, 33 (citing *Weinberger* and *Trados*).

[39] ANTHC Opp. at 14.

8

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

*Southcentral Foundation v. ANTHC*
Case No. 3:17-cv-00018-TMB

and that they function fairly well.[40]  SCF is not challenging ANTHC's conflict of interest rules, nor is it arguing that it gets to decide what a *bona fide* conflict is.  ANTHC has not set out any reason that these conflict of interest rules are inadequate to handle true conflicts as they arise.

ANTHC's arguments appear to be built on a fundamentally faulty premise that seeks to equate confidentiality with conflicts of interest.  That premise is wrong, as aptly illustrated by the facts of this case.  There was no conflict of interest that led ANTHC to designate as confidential all of the information relating to Teuber's creation of the Executive Committee and his lucrative new employment agreement.  Teuber may have wanted to keep that information secret to avoid scrutiny from two-thirds of ANTHC's Board, but not because ANTHC's interest diverged from that of SCF.[41]

### 6.    ANTHC's Preemption Analysis Is Flawed

ANTHC also incorrectly argues that Section 325 does not preempt Alaska corporate law because prohibiting SCF from accessing information critical to performing its function under Section 325 somehow "does not impede Congress's objectives in establishing ANTHC."[42]  As an initial matter, ANTHC did more than impede SCF's access to information.  This lawsuit is also about ANTHC's creation of the Executive Committee and delegation of virtually the full power of the Board to it.  This not only violated Congress's "objectives" in Section 325, but it conflicts with the letter of the law, as it deprived SCF of the actual input to which it was entitled

---

[40] *See* Declaration of Chris Merculief in Support of ANTHC's Opposition to SCF's Motion for Summary Judgment, ECF No. 64 ¶ 4 ("From time to time, someone will have a conflict of interest, but we can manage that by having that person recuse him or herself from specific decisions").

[41] ANTHC also misunderstands the nature of the duty of loyalty.  Directors owe a duty of loyalty to the organization itself.  *See Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 370 (Del. 2006).  Directors' duties are not owed to individual officers, and directors may face liability for failing to adequately supervise an officer who engages in misconduct that damages the corporation.  *See, e.g., John Swann Holding Corp. v. Simmons*, 62 F. Supp. 3d 304, 311 (S.D.N.Y. 2014).  Further, as explained in SCF's opposition to ANTHC's motion for summary judgment, it is ANTHC that has created a hierarchy of duties by subverting the duty of care (and duty to be informed) to its misconception of the duty of loyalty.  *See* SCF's Opposition to Defendant's Motion for Summary Judgment ("SCF MSJ Opp."), ECF Nos. 74 (redacted), 83 (sealed) at 28-29.

[42] ANTHC Opp. at 12.  Although not relevant to SCF's present lawsuit, ANTHC repeatedly argues that it has followed Alaska corporate law.  This is not entirely clear.  Courts have held that withholding pertinent information from a board of directors constitutes a breach of fiduciary duty.  *See Amalgamated Bank v. Yahoo! Inc.*, 132 A.3d 742, 781 (Del. Ch. 2016) ("Officers also have a duty to provide the board of directors with the information that the directors need to perform their statutory and fiduciary roles.").

*Southcentral Foundation v. ANTHC*
Case No. 3:17-cv-00018-TMB

DORSEY & WHITNEY LLP
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

through its designated directors. Moreover, the acts that ANTHC has taken to impede SCF's access to information do conflict with Congress's objective to "ensure efficient, experienced Alaska Native management and control" of ANTHC through existing Regional Health Entities.[43]

ANTHC cites several cases for the unremarkable proposition that there is a presumption that Congress does not intend to preempt state law.[44] But none of these cases involved a federal law similar to Section 325 that specified the organizational structure of a particular entity.[45] Moreover, none of the cases that ANTHC cites concerned the intersection of Native American/Alaska Native law and state law. Native American/Alaska Native law is different from corporate law in that it is typically "the exclusive province of federal law."[46] Courts, including the Ninth Circuit, routinely hold that federal laws specifically directed at Native American/Alaska Native issues preempt state law, including state corporate law. ANTHC does not address *Broad v. Sealaska Corp.*, 85 F.3d 422 (9th Cir. 1996), which held that the Alaska Native Claims Settlement Act, a law specific to Alaska Native corporations, preempted Alaska corporate law, or any of the other binding authority SCF cited.[47]

### C. The Declaration that SCF Seeks Is Both Required by Section 325 and Reasonable

SCF is not asking the Court to "second-guess" any action that the ANTHC Board has taken that is within its power to take.[48] This is not, as ANTHC would have the Court believe, a situation where the Board simply selected one from a range of reasonable outcomes. Rather, by creating the Executive Committee and keeping information critical to ANTHC's governance

---

[43] Senate Report.
[44] ANTHC Opp. at 13, n.47.
[45] *See id.*, *citing Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1228 (9th Cir. 2013) (Medical Device Amendments to the Food, Drug, and Cosmetic Act did not preempt state law tort claims); *Freedman v. Redstone*, 753 F.3d 416, 429 (3d Cir. 2014) (federal tax law provision of general applicability did not preempt state law governing shareholder voting); *Marsh v. Rosenbloom*, 499 F.3d 165, 176 (2d Cir. 2007) (federal environmental law did not preempt state statute of limitations).
[46] *Oneida Cty. v. Oneida Indian Nation of New York State*, 470 U.S. 226, 234 (1985); *see also* American Indian Law Deskbook, Ch. 1 Introduction (2017).
[47] *See* SCF MSJ at 37. SCF is also not asking the Court to "invalidate" (ANTHC Opp. at 13) any portion of the Alaska Nonprofit Corporations Act. It is merely asking the Court to recognize that the provisions of Section 325 prevail over provisions of Alaska state law that conflict in these particular circumstances. Courts routinely hold that a federal law can preempt state law without invalidating the state law entirely. *See, e.g. Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1006 (9th Cir. 2008) (holding that "the [state law] UCL § 17200 claim, as applied, . . . is preempted" without invalidating California's unfair competition law entirely).
[48] ANTHC Opp. at 17.

10

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

from its Congressionally-designated constituent organizations, ANTHC has violated Section 325, meaning it took actions the law does not permit it to take. ANTHC has also violated its own Articles of Incorporation, which cite to Section 325 as containing foundational principles that the Consortium must follow. ANTHC's Articles of Incorporation specifically state that its "Bylaws may not be inconsistent with the provisions of [the Articles of Incorporation] or with Section 325 of Public Law 105-83."[49] The Court owes no deference to decisions that are made in a situation "in which a board decides to undertake illegal activity."[50] ANTHC's Board cannot violate Section 325 or its Articles of Incorporation, or otherwise "choose to manage [the] entity in an illegal fashion."[51]

ANTHC attempts to portray this case as one in which there is no middle ground: its Board must have absolute power to enact any policy it so chooses, else it be overrun by its participating organizations, "making ANTHC effectively a subsidiary of SCF" and the other Regional Health Entities.[52] This is a false dichotomy. The text, structure, and legislative history of Section 325 make clear that the Regional Health Entities are supposed to have input in ANTHC's governance. They exercise this Congressionally-mandated role through the representatives that each appoints to the Board. To be clear, the people that represent the Regional Health Entities on the ANTHC Board owe fiduciary duties to ANTHC, which they typically can fulfill without issue. If an actual conflict of interest arises, there are adequate procedures in place to address it.

Under the system that Section 325 set up, designated directors must be able to share information with their designating entities so that those entities can provide input to that director on ANTHC governance issues. Consistent with this structure, SCF seeks a declaration that ANTHC is required to share information critical to its governance with the Board, and any information shared with the ANTHC Board should be able to be shared with all of ANTHC's Congressionally-designated constituent organizations, including SCF, to the extent that the

---

[49] Declaration of Sarah Langberg dated Aug. 16, 2017, ECF No. 42, Ex. D at 3.
[50] *Rosenbloom v. Pyott*, 765 F.3d 1137, 1149 (9th Cir. 2014); *see also In re Massey Energy Co.*, No. CIV.A. 5430-VCS, 2011 WL 2176479, at *20 (Del. Ch. May 31, 2011) ("Delaware law does not charter law breakers. Delaware [corporate] law allows corporations to pursue . . . 'lawful business' by 'lawful acts.'").
[51] *Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 131 (Del. Ch. 2004).
[52] ANTHC Opp. at 1.

11

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

director needs to share it in order to receive, and, in turn, provide informed input to ANTHC (a) subject to reasonable confidentiality restrictions within the designating entity and (b) provided no actual conflict of interest exists. SCF also requests a declaration providing that delegating the power of Board members to vote on all issues that require Board consideration violates Section 325. This is the minimum that Section 325 requires, and it is all for the benefit of ANTHC.

This declaration will not invite the parade of horribles that ANTHC posits will come to pass.[53] It will not compromise patient confidentiality, as identifiable patient information is never shared in ANTHC Board meetings.[54] It will not result in inside information being used by a "competitor," primarily because ANTHC and SCF do not compete, but also because in the rare instance where there is an actual conflict of interest, the representative of the Regional Health Entity with the conflict will have to follow the ANTHC conflict of interest rules. And it will not undermine self-determination, as the Congressionally-appointed designating entities are themselves organizations run by Alaska Native people for Alaska Native people.

Despite this eminently sensible interpretation, there is a reason that ANTHC continues to resist it: because had ANTHC been transparent with the entities represented on ANTHC's Board, as Section 325 requires, then Andy Teuber might not have gotten his outrageous compensation package. And Teuber knew this, which is why he created the Executive Committee a mere *two weeks* before asking it to do the only thing he ever asked of it: pay him more. Getting four of his allies—including one handpicked by him—to increase his compensation, particularly when he withheld critical information from them, was easier for him than going through a more inclusive and transparent process. But that is precisely why Congress designed ANTHC the way it did: given the hundreds of millions of dollars that the federal government sends to ANTHC annually, it wanted to ensure that the organization would be "professionally and prudently managed" by the "existing expertise of the *Alaska Native regional health entities* now managing extensive

---

[53] *See Id.* at 7, positing that because "[c]onflicts of interest abound," if SCF prevails, ANTHC will "suffer" "due to unfair competition from misuse of confidential information." This ignores the fact that, despite the vast amounts of confidential information to which SCF is already privy on account of the large number of operations-level agreements that SCF and ANTHC have to run ANMC, there is no danger of "unfair competition" between the two partner nonprofit organizations. *See* Declaration of Dr. Doug Eby in Support of Southcentral Foundation's Opposition to ANTHC's Motion for Summary Judgment, ECF No. 75 ¶¶ 4-16.
[54] Supplemental Declaration of Ileen Sylvester in Support of SCF's Reply in Support of SCF's Motion for Summary Judgment dated October 16, 2017 ("Sylvester Reply Decl."), ¶ 4.

12

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

*Southcentral Foundation v. ANTHC*
Case No. 3:17-cv-00018-TMB

regional health networks in Alaska."[55]  That balance is what SCF is asking this Court to restore.

## III.  THE WAY THAT ANDY TEUBER INCREASED HIS COMPENSATION DEMONSTRATES WHY ANTHC'S INTERPRETATION OF SECTION 325 CANNOT STAND

Although ANTHC claims that SCF's motion paints a "distorted picture of disputed facts,"[56] the critical facts are not in dispute: Andy Teuber pushed to create the Executive Committee, which then increased his compensation;[57] ███████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████[58]█████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████,[59]████████████

████████████████████████████████████████████████

██████████;[60] ANTHC refused to share information that SCF requested and to which it is entitled as a Congressionally-designated participant in ANTHC, ██████████████████████

████████████████;[61] and ███████████████████████████████

█████████████████████████████.[62]  ANTHC's response is not that none of this happened, but that these actions were permissible and complied with Section 325.  Thus, the facts material to deciding this motion are not in dispute and, contrary to ANTHC's claim, for all the reasons stated above, these facts demonstrate that ANTHC violated Section 325.[63]

---

[55] Senate Report (emphasis added).
[56] ANTHC Opp. at 30.
[57] *See* Defendant's Amended Answer to Complaint for Declaratory Judgment, ECF No. 21, ¶ 21 (admitting that ANTHC adopted a Bylaw amendment in December 2014 permitting it to create the Executive Committee); ¶ 27 (admitting that the Executive Committee met in mid-December regarding executive compensation).
[58] *See* ANTHC Opp. at 31-34 (admitting that three different consultants were hired); Declaration of Sarah Langberg in Support of ANTHC's Opposition to Southcentral Foundation's Motion for Summary Judgment dated September 25, 2017, ECF Nos. 67 (redacted), 68 (sealed) ("Langberg Opp. Decl."), Ex. 21 at 44.
[59] ANTHC Opp. at 34 (noting that after December 2014, executive compensation was not discussed by the ANTHC Board until April 2015).
[60] *Id.* at 25 (noting that the April 2015 meeting was called at the request of SCF).
[61] *See generally* ANTHC Opp.
[62] *See* SCF MSJ Opp. at 30-31.
[63] Although SCF agrees that there are no disputed material facts that would prevent the Court from granting its motion for summary judgment, given the many ways in which ANTHC is attempting to mislead the Court, SCF feels obliged to correct the record in several critical respects.  This is not a full recitation of the facts in ANTHC's account that SCF disputes, and

13

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

*Southcentral Foundation v. ANTHC*
Case No. 3:17-cv-00018-TMB

## A.   ANTHC Mischaracterizes How the Executive Committee Was Created in 2014

ANTHC argues that the original resolution creating the Executive Committee did not delegate virtually the full power of the Board.[64]  This is demonstrably false.  The resolution provided that the Board █████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████[65]  The resolution could not have been clearer: ███████████████████████████████████████ ███████████   No provision of the resolution provided that this authority was limited to times when it was impossible for the full Board to act, or that Executive Committee decisions required ratification prior to becoming effective.[66]

In further support of its argument that no delegation took place, ANTHC argues that this "delegation [did] not relieve the board of directors from its responsibilities imposed by law."[67] This confuses the obligations of Board members with their *rights*.  While it may be true that all Board members retained their responsibilities and obligations as Directors, ANTHC clearly delegated their *right* and power to vote on all matters that might come before the Board.  It is the

---

SCF does not waive any challenge to any fact that ANTHC has advanced by focusing only on the critical ones here.  In addition to the facts disputed below, SCF also disputes ANTHC's account of ███████████████████████████████████████████████████.  *See* ANTHC Opp. at 25, n.96. █████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████  Sylvester Reply. Decl. ¶ 6.

[64] ANTHC Opp. at 21 ("SCF's baseless allegation that the creation of the Executive Committee somehow 'stripped' the ANTHC Board of its authority is premised on a misstatement of the facts and law."); ████████████████████████████████████████████████████████ ███████████████████████████████.  Declaration of Ileen Sylvester in Support of Southcentral Foundation's Motion for Summary Judgment dated August 16, 2017, ECF Nos. 31-5 (redacted), 51-3 (sealed) ("Sylvester Decl.") ¶ 9 & Ex. 3 at 7.

[65] *Id.* (emphasis added).

[66] SCF's argument is that Board decisions must be made by the Board under Section 325 and cannot be delegated to a sub-committee of the Board.  ANTHC takes a passage from SCF's motion out of context in an attempt to argue that under SCF's interpretation, the Consortium would "grind to a halt."  ANTHC Opp. at 22.  SCF's position is not that Section 325 requires all decisions made by any person in the Consortium to be made by the Board.  Rather, SCF's position is that all decisions that are required to be made by the Board *should be made by the Board*, not by a sub-committee that had been delegated virtually the full power of the Board unlawfully.  It is telling that ANTHC would resort to such an obviously misleading tactic.

[67] *Id.* at 21.

14

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

*Southcentral Foundation v. ANTHC*
Case No. 3:17-cv-00018-TMB

right to vote on all matters that come before the Board that Section 325 guarantees.

Unable to defend the actions of the Executive Committee in raising Teuber's compensation from ██████ to over $1,000,000, ANTHC falls back on the fact that ████████ █████████████████████████████████████████████████ to which the Executive Committee had already given final approval in December 2014.[68] This happened, as ANTHC acknowledges,[69] ████████████████████████████. But ANTHC glosses over the fact that the Executive Committee had not just issued a "recommendation"[70] to approve Teuber's contract, but had actually exercised the authority of the Board in giving the contract final approval without notice to the rest of the Board.[71] This makes ANTHC's argument that the fact that the Board later "ratified the Executive Committee's actions" misleading and meaningless.[72] The Board's choices were to give its tacit approval, or subject the organization to a breach of contract action by Teuber.

The cases that ANTHC cites in this regard do not stand for the notion that the Board could have rejected Teuber's contract without exposing ANTHC to an action for breach of contract. They involve decisions where subsequent ratification *approves* an earlier decision[73]— they do not stand for the proposition that a subsequent vote can render a prior binding action legally ineffective. Indeed, the law is clear that when an organ of an organization acts with apparent authority, those actions are binding on the organization even if the actor that bound it

---

[68] The members of the Executive Committee were Andy Teuber, Lincoln Bean, Charlene Nollner, Evelyn Beeter, and Robert Henrichs. Sylvester Reply Decl. ¶ 5. All except Nollner were paid over $249,500 in Board compensation (including retroactive compensation) in 2015. *See* Supplemental Declaration of William D. Temko in Support of SCF's Reply in Support of SCF's Motion for Summary Judgment ("Temko Reply Decl.") Ex. 1 at 9.
[69] *See* ANTHC Opp. at 25 ("███████████████████████████████████████████████ █████").
[70] ANTHC Opp. at 26
[71] Sylvester Decl. ¶ 16.
[72] ANTHC Opp. at 25; *see also id.* at 18-19.
[73] *See* ANTHC Opp. at 18, n.70. Further, most of the cases are based on the notion that a subsequent *shareholder* vote can absolve a Board of liability for a prior action, a situation that is not similar to that present here where there are no shareholders. *See Schreiber v. Bryan*, 396 A.2d 512, 518 (Del. Ch. 1978) (although "*stockholder* ratification cures a voidable wrong . . . only unanimous stockholder ratification is sufficient where it is alleged that there has been a waste or gift of corporate assets" (emphasis added); *Cohen v. Ayers*, 449 F. Supp. 298, 308 (N.D. Ill. 1978), *aff'd*, 596 F.2d 733 (7th Cir. 1979) ("shareholders may ratify acts done by the board of directors").

15

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

lacked actual authority to do so.[74]  Here, because the action of the Executive Committee was done with the apparent authority of the full Board, it was binding, and, any attempt by the Board to undo such prior binding action would have subjected ANTHC to an action for breach of contract.

In sum, ANTHC's creation of the Executive Committee violated Section 325.

**B.    ANTHC's Post-Hoc Excuses** █████████████████████
█████████████**Are Plainly Contrived**

It is undisputed that ANTHC ████████████████████████████
████████████████████████████████████████.[75]  ANTHC attempts to justify this decision on the grounds that it was innocently ███████████████████
███████████████████████.[76]  ANTHC's attempts to explain these actions as anything other than an abuse of the type that greater transparency might have prevented are post-hoc rationalizations that fail to survive any degree of scrutiny.

**1.**   ████████████



---

(footnotes)

[74] *See Askinuk Corp. v. Lower Yukon Sch. Dist.*, 214 P.3d 259, 265 (Alaska 2009) (upholding lease signed by member of Alaska Native corporation who had apparent authority but lacked actual authority); *accord Int'l Boiler Works Co. v. Gen. Waterworks Corp.*, 372 A.2d 176, 177 (Del. 1977) (upholding contract where agent of corporation had apparent authority).  Alaska corporate law also expressly provides that a corporation cannot absolve itself of a contract by pointing to the fact that the board lacked authority to enter into it.  *See* Alaska Stat. Ann. § 10.06.020 ("A limitation upon the powers of the shareholders, officers, or directors, or the manner or exercise of their powers, contained in or implied by the articles of incorporation, bylaws, or action of the board . . . may not be asserted as between the corporation or a shareholder and a third person").
[75] SCF MSJ at 8-17.
[76] ANTHC Opp. at 32.
[77] Langberg Opp. Decl., Ex. 12.  ANTHC attaches ███████████████████████████████████
████████████████████████████.  *See* Temko Reply Decl. Ex. 2.
Langberg Opp. Decl., Ex. 12 at 10.
[79] Temko Reply Decl. Ex. 3.

16

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557



[80]

[81]

[82]

[83]

[84]

Evidently, was not acceptable to Teuber.

[85]

[86]

. At ANTHC's request,

[87]

[88]

---

[80] Langberg Opp. Decl., Ex. 12 at 9.
. *Id.* at 6.
[82] *Id.* at 11.
[83] *Id.* at 10.
[84] *Id.* at 11.
[85] *Id.* Ex. 13 at 2.
[86] Temko Reply Decl. Ex. 4.
[87] ANTHC Opp. at 34.
[88] Langberg Opp. Decl. Ex. 14 at 9.
Declaration of William D. Temko in Support of Southcentral Foundation's Motion for Summary Judgment dated Aug. 16, 2017 ("Temko Decl."), Ex. 17; Sylvester Decl. Ex. 3.

17

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557



.[89] There is no evidence that ██████████████████████████████████

██████████████████.  In its brief, ANTHC merely notes that ████████████

████████████████████████████████████████████████████████████████████ to SCF three years later "as part of this litigation."[90]

      **2.**   ███████████

      Barely three months later, ANTHC, apparently ████████████████████

█████████████████████████████████.[91]  ANTHC does not argue that ████████████████████████████████████.  It also appears not to have ████████████████████████████████████████

███████████████████.[92]

███████████████████████████████████████████████.[93]

██████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

---

[89] Langberg Opp. Decl Ex. 14 at 9. ███████████████████████████████
█████████████████████████████████████████████ ANTHC Opp. at 33. ████
█████████████████████████████████████████████████████████████
██████████████████████ ANTHC Opp. at 32.
[91] ANTHC Opp. at 32.  ANTHC argues that it did not ██████████████████ as though that fact is better.  It is not.  The fact that ████████████████████████
████████████████████████████████████████████████
█ ████████████████████████████████████████████████
█████████████████████████████████████████████ *See* Langberg Opp. Decl. Ex. 16. ██████████████████████████████████████████████
████████████████████████████████████████████████ Temko Reply Decl. Ex. 5.
Langberg Opp. Decl. Ex. 17 at 9.

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

*Southcentral Foundation v. ANTHC*
Case No. 3:17-cv-00018-TMB



■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■.,[94] ■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■.[95]

■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■[96] which ANTHC stated was ■■■■■■■■■■■■

■■■■■■■■■■■,,[97] ANTHC's own internal documents ■■■■

■■■■■■■■,,[98] Again, there is no evidence that ■■■■■■

■■■■■.

**3.** ■■■■■■■■■■■

Although only a few weeks had passed, ANTHC evidently decided that ■■■

■■■■■■■■■■■■[99] in early

November, when ANTHC ■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■

■■■■[100]

ANTHC's brief does not mention ■■■■■■■■■■■, and instead

resorts to shifting rationales.  ANTHC proffers ■■■■■■■

■■■■■■■■,,[101] Somehow, ANTHC fails to mention

■■■■■■■■■■■■■■■■■

■■■■■■■■■■■.[102] ANTHC then

---

[94] Temko Decl. Ex. 7.  Of course, Teuber never allowed the Board to play a role in that decision.
[95] Langberg Opp. Decl. Ex. 17 at 3.
[96] *Id.* at 12.
[97] Langberg Opp. Decl. Ex. 19 at 1 (emphasis added).
[98] *Id.*
[99] ANTHC Opp. at 32.
[100] Langberg Opp. Decl. Ex. 20. ■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■ *See* Temko Reply Decl. Ex.

6.
[101] ANTHC Opp. at 33.
[102] *See, e.g.* Langberg Opp. Decl. Ex. 12 at 10 ■■■■■■■■■■■■■■■

■■■■■■■■■■); *id.* Ex. 16 ■■■■■■■■■■■■■■

19

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

*Southcentral Foundation v. ANTHC*
Case No. 3:17-cv-00018-TMB

states ██████████████████████ .,"[103]  But this excuse fails because ████████

██████████████████████ ,"[104]  The clear inference is that Teuber

████████████████████████  Perhaps that is why ████████

█████████████████████████████████████

████████████████████████████████████

█████████ , [105] ████████████████████████████

█████████████████████████████████ . [106]

Teuber also required ████████████████████████████

███████ ██ . [107]  But Teuber apparently wanted ████████████████

███████████████████████████ . [108]

████████████████████████████████

██████████████████ . [109]  In other words, ████████████

---

█████████████████████████████████████

████████████████████████ " *See* Temko

[103] Reply Decl. Ex. 7 at 2.

ANTHC Opp. at 33.

[104] Langberg Opp. Decl. Ex. 19 at 1.  In another ironic twist, ████████████████████

████████████████████████████████████████████████ . Langberg Opp. Decl. Ex. 21 at 47.

████████ Temko Decl. Ex. 12 at 6; *id.* Ex. 13 at 42.  ANTHC also overtly ███████████████████

███████████████████████████████████████ . *See* SCF MSJ at 13-15.

█████████████████████████████████████ although it clearly did. ████

████████████████████████ *See* Langberg Opp. Decl. Ex. 25

Langberg Opp. Decl. Ex. 19 at 1. ████████████████████████████████████████

████████████████████████ Temko Reply Decl. Ex. 8.

████████████ Temko Reply Decl. Ex. 6 at 6.

[108] *Id.* ████████████████████████████████████████████

████████ *See* 16 C.F.R. § 53.4958-6(a); *accord* Langberg Opp. Decl. Ex. 14 at 3

████████████████████████████████████████████

Langberg Opp. Decl. Ex. 21 at 12 (limiting Integrated's assignment to evaluating compensation for the CEO and President), 20 (stating that the only interviews done were with "the President and the General Counsel to ensure our understanding of the scope and responsibilities of the positions.").

20

DORSEY & WHITNEY LLP
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

*Southcentral Foundation v. ANTHC*
Case No. 3:17-cv-00018-TMB



ANTHC also

[110]

. [111] As support,

. [112] ANTHC has

presented no evidence whatsoever

.

Teuber's plan fell neatly into place,

. [113]

. [114]

, [115] there is no evidence

. [116]

.

---

[110] Temko Reply Decl. Ex. 9 at 7.
[111] ANTHC Opp. at 39.
[112] *Compare* Temko Decl. Ex. 15 *with* Langberg Opp. Decl. Ex. 27; *see also* Temko Reply Decl. Ex. 9 at 7.
[113] Langberg Opp. Decl. Ex. 21 at 44 ███████████████████████████████████
████████████████████████ .
[114] *See* SCF MSJ at 16.
[115] ANTHC Opp. at 33.
[116] Langberg Opp. Decl. Ex. 23.

21

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

* * *

The result of the sequence of events illustrated above are troubling. Teuber was able to take his compensation from $110,000 per year in 2013 to over $1,000,000 in 2015 by ████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████ 65 hours per week on paper, as described in ANTHC's 2014 Form 990 filed with the IRS:[117]

| (A) Name and Title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Position (do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D) Reportable compensation from the organization (W-2/1099-MISC) | (E) Reportable compensation from related organizations (W-2/1099-MISC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| (1) Andrew Teuber Chairman/President | 65 0 0 0 | | | x | | x | | 626,104 | 0 | 38,855 |

This would have made Teuber a very busy man, as KANA, where he was making almost $600,000, reported to the IRS that he was also working 37.5 hours per week for it in 2014:[118]

| (11) Andrew Teuber President/CEO | 37 5 0 0 | | | | x | | | | 538,597 | 0 | 59,005 |

Given this outrageous sequence of events, one is left to wonder if any of this would have happened had Andy Teuber complied with Section 325 and ████████████████████ ██████████████████████████████████████ and increase his compensation. Information about how ANTHC planned on compensating its top executives is precisely the kind of information that all Directors should have received and about which they should have been able

---

[117] *See* Temko Reply Decl Ex. 10 at 13. Ironically, ANTHC reported that Teuber only worked 45 hours per week in 2015, the year that his total compensation again rose to exceed $1,000,000. There is delay of up to a year in making Form 990s available to the public. Form 990s are due on the fifteenth day of the fifth month after an organization's accounting period ends. *See* Internal Revenue Service, Instructions for Form 990 at 5 (2016), available at https://www.irs.gov/pub/irs-pdf/i990.pdf. An organization required to file a Form 990 can apply for and automatically receive a six-month extension. *See* IRS Form 8868, Application for Automatic Extension of Time To File an Exempt Organization Return, available at https://www.irs.gov/pub/irs-pdf/f8868.pdf.

[118] *See* Temko Reply Decl Ex. 9 at 7.

22

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

*Southcentral Foundation v. ANTHC*
Case No. 3:17-cv-00018-TMB

to consult with their designating entities.[119]

    **C.**    <u>**ANTHC and SCF Cooperate in Far More Ways than They Compete**</u>

ANTHC once again argues that it should be able to shield "highly sensitive and confidential and privileged information" from SCF because it and SCF are competitors.[120] As a threshold matter, Teuber's compensation is not confidential: it is disclosed in ANTHC's IRS Form 990s, and Teuber is also required by Alaska law to disclose it on an Alaska Public Offices Commission disclosure form, because he is a Regent of the University of Alaska, a public institution.[121] Although immaterial to the legal question presented, SCF disputes ANTHC's competition narrative and refers the Court to the extensive explanation of the many ways in which it and ANTHC cooperate as set out in its opposition to ANTHC's motion for summary judgment.[122] For brevity, it will not repeat that narrative here.

It is worth emphasizing that ANTHC acknowledges the massive amount of cooperation between it and SCF, fatally undermining its concocted competition narrative. It concedes, as it must, that "ANTHC and SCF have entered into a number of agreements to allow and encourage relatively unfettered information sharing to facilitate their co-management of ANMC."[123] It

---

[119] ANTHC obliquely argues that the June 2014 settlement with IHS somehow justifies Teuber's massively increased compensation. *See* ANTHC Opp. at 40 ("In June 2014, Mr. Teuber successfully negotiated a settlement with the [IHS] for the payment of 14 years of overdue contract support costs"). This narrative ignores that ANTHC acknowledged the "immeasurably valuable work" of "Southcentral Foundation and its Vice President of Finance, Lee Olson, for their skill and expertise" in achieving the settlement. Temko Reply Decl. Ex.11. More fundamentally, Teuber touted the settlement to the press as "a significant step [that] will help us fulfill our commitment to provide essential health care and services to our people" and "will enable us to continue improving critically needed health care and access for one of the nation's most underserved populations." Laurel Andrews, *Alaska Dispatch News*, "Alaska Native Tribal Health Consortium to receive $153 million in overdue federal payments," (June 30, 2014), available at https://www.adn.com/alaska-news/article/alaska-native-tribal-health-consortium-receive-153-million-overdue-payments/2014/07/01/ (last accessed October 11, 2017). Given Teuber's public statements, it is disingenuous to now suggest that the money was intended "to correct prior underpayments to Directors" and "for administrative and executive employee compensation." ANTHC Opp. at 40.

[120] *See, e.g.,* ANTHC Opp. at 12. Although ANTHC never explains what it means by "highly sensitive and confidential" information, the principal information at issue in this lawsuit is Teuber's compensation information. Given that Teuber's compensation must eventually become public in an IRS Form 990, it is hard to understand any reason why this information had to be kept secret at the time, apart from Teuber's desire not to draw attention to it.

[121] Temko Reply Decl. Exs. 1, 9-10 (Form 990s for ANTHC and KANA), 12-14 (Andy Teuber's Public Official Financial Disclosure forms for 2014-2016).

[122] SCF MSJ Opp. at 4-22.

[123] ANTHC Opp. at 5 n.14.

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

*Southcentral Foundation v. ANTHC*
Case No. 3:17-cv-00018-TMB

concedes that it and SCF have already negotiated "confidentiality agreements, data-sharing agreements, common interest/joint defense agreements, and common policies."[124]  That is a lot of cooperation for two entities that ANTHC would have the Court view as dogged competitors.

### D. SCF Is Not Trying to Take Over ANTHC

The underlying storyline that ANTHC erroneously tenders in its effort to escape SCF's arguments about Section 325 is that this dispute is not about Section 325 at all, but about SCF's attempt to "have more control" or take over ANTHC.[125]  It is not "SCF's contention that Section 325 entitles it to control ANTHC."[126]  SCF is one of thirteen Regional Health Entities designated by Congress to govern ANTHC, and its representative is one of fifteen members of the Board. The outcome of the lawsuit will not change any of that, and will not result in SCF having a "direct hand in running ANTHC."[127]  SCF will still have only one of the fifteen votes on the ANTHC Board.  SCF is not interested in taking over ANTHC or telling the ANTHC Board how to do its job.  SCF's interests in this lawsuit are exclusively in requiring ANTHC to comply with Section 325 and *restoring* the voice in ANTHC's affairs that Congress specifically granted to it.

### IV. THE CASE IS NOT MOOT

Because ANTHC addresses mootness in its motion to dismiss on that basis,[128] SCF will only briefly explain why nothing about the declaration that SCF seeks is moot.  SCF agrees that the case "might become moot if subsequent events made it *absolutely clear* that the allegedly wrongful behavior could not be reasonably expected to recur."[129]  ANTHC, however, turns this legal standard on its head by arguing that the case is moot because SCF has presented no evidence that the offending conduct might be expected to recur.  As the cases that ANTHC cites make clear, it is not SCF but ANTHC, "[t]he party asserting mootness," that "bears a 'heavy burden' in meeting this standard."[130]  ANTHC has proffered no evidence whatsoever that it will never attempt again to delegate nearly the full power of the Board to a committee, and as explained in SCF's brief in opposition to ANTHC's motion to dismiss, ANTHC continues to

---

[124] *Id.*
[125] *Id.* at 1.
[126] *Id.* at 2.
[127] *Id.* at 7.
[128] *See* ECF Nos. 33 (redacted), 34 (sealed).
[129] *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) (emphasis added).
[130] *Id.*; *accord Smith v. Univ. of Washington, Law Sch.*, 233 F.3d 1188, 1194 (9th Cir. 2000);

24

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

argue that delegating nearly all of the Board's power to the Executive Committee was lawful.[131] That it continues to make this argument is fatal to ANTHC's mootness argument, as it provides exactly the opposite of the type of assurances necessary to make "absolutely clear" that the challenged conduct will not repeat.[132]

ANTHC also argues that the Board's decision to change the contours of the power delegated to the Executive Committee is a "statutory change" that renders the case moot.[133] This is a special exception to "the voluntary cessation exception for state legislative enactments."[134] There is no authority for extending it to private parties. As the Ninth Circuit explained in *Helliker*, it does not even extend to actions by state agencies or local governments: the cases that stand "for a near categorical rule of mootness are cases of statutory amendment. The examples we [have] cited of continuing federal adjudicatory power are of local government or administrative agency repeal or amendment."[135] Because ANTHC is clearly not Congress or a state legislature, it cannot avail itself of this narrow exception to voluntary cessation. [136]

## V.    CONCLUSION

Andy Teuber has manipulated ANTHC's corporate governance structure for his own gain and in violation of Section 325. Neither he nor anybody else should be permitted to do so again. For the foregoing reasons, the Court should grant SCF's motion for summary judgment and award its attorneys' fees and costs.

---

[131] ECF Nos. 70 (redacted), 72 (sealed) at 13-14; *see also* ANTHC Opp. at 20 ("SCF's arguments regarding ANTHC's delegation of authority to the Executive Committee are meritless"); *id.* at 20-21 ("The fact that the ANTHC Board governs the entity does not mean that the ANTHC Board is prohibited from delegating tasks or responsibilities as it deems appropriate.").

[132] *See Knox v. Serv. Employees Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012) (where the defendant "continues to defend the legality" of the challenged conduct, "it is not clear why the [defendant] would necessarily refrain from" engaging in the challenged conduct in the future).

[133] ANTHC Opp. at 20.

[134] *Chem. Producers & Distributors Ass'n v. Helliker*, 463 F.3d 871, 878 (9th Cir. 2006).

[135] *Id*; *accord Bell v. City of Boise*, 709 F.3d 890, 899 (9th Cir. 2013) ("repeal or amendment of an ordinance by a local government or agency does not necessarily deprive a federal court of its power to determine the legality of the practice." (quotation marks omitted)); *see also Cook Inlet Treaty Tribes v. Shalala*, 166 F.3d 986, 989 (9th Cir. 1999) (dismissing suit as moot after Congress enacted Section 325).

[136] As explained above, ANTHC's ratification argument fails because the full Board ████████████████████████████████████████████████████ The Executive Committee's decision to approve Teuber's employment contract was binding when made.

25

DORSEY & WHITNEY LLP
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

DATED: October 17, 2017        MUNGER, TOLLES & OLSON LLP

                               By:   */s/ William D. Temko*
                                     WILLIAM D. TEMKO, CA Bar #98858

                                     Attorneys for Plaintiff Southcentral Foundation
                                     *Appearing pro hac vice*


DATED: October 17, 2017        DORSEY & WHITNEY LLP

                               By:   */s/ Louisiana W. Cutler*
                                     LOUISIANA W. CUTLER, #9106028

                                     Attorneys for Plaintiff Southcentral Foundation


**CERTIFICATE OF SERVICE**

I hereby certify that on the October 17, 2017, a true and correct copy of the foregoing was served on:


James Torgerson        jim.torgerson@stoel.com

Sarah Langberg         sarah.langberg@stoel.com


by electronic means through the ECF system or if not confirmed by ECF, by first class mail.


/s/ *Louisiana W. Cutler*

Dorsey & Whitney LLP

*Southcentral Foundation v. ANTHC*
Case No. 3:17-cv-00018-TMB

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557