**PUBLIC VERSION**

James E. Torgerson (Bar No. 8509120)
jim.torgerson@stoel.com
Sarah Langberg (Bar No. 1505075)
sarah.langberg@stoel.com
STOEL RIVES LLP
510 L Street, Suite 500
Anchorage, AK 99501
Telephone: 907.277.1900
Facsimile: 907.277.1920

Attorneys for Defendant and Counterclaimant
Alaska Native Tribal Health Consortium

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

SOUTHCENTRAL FOUNDATION,

Plaintiff and Counterclaim-Defendant,

v.

ALASKA NATIVE TRIBAL HEALTH CONSORTIUM,

Defendant and Counterclaimant.

Case No.: 3:17-cv-00018-TMB

ANTHC'S REPLY IN SUPPORT OF ANTHC'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1) (STANDING AND MOOTNESS) **(REDACTED)**

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK 99501
*Main 907.277.1900 Fax 907.277.1920*

## TABLE OF CONTENTS

Page

I. INTRODUCTION ........ 1
II. ARGUMENT ........ 1
A. SCF has neither Article III nor prudential standing to bring the claims that it asserts on behalf of the Directors that it selected for the ANTHC Board........ 1
1. SCF does not have Article III standing because it has not articulated any injury to a right that it holds. ........ 1
a. Section 325 does not give SCF a legally protected interest in receiving confidential ANTHC information. ........ 1
b. No other source of law gives SCF an interest in obtaining ANTHC information. ........ 6
c. SCF's alleged injury is a result of its own conduct. ........ 7
d. ANTHC's past litigation positions are irrelevant. ........ 8
2. SCF does not have prudential standing because its claims are dependent on the rights of others, which the U.S. Supreme Court and the Ninth Circuit have continued to reject as a basis for standing under prudential standing case law. ........ 9
B. SCF's claim regarding the Executive Committee is moot based on the full Board's ratification of all of the Committee's decisions and the Board's revisions to ANTHC's governing documents. ........ 11
III. CONCLUSION ........ 16

## I. INTRODUCTION

The Alaska Native Tribal Health Consortium ("ANTHC" or "Consortium") seeks dismissal of the Southcentral Foundation's (SCF) complaint for lack of standing. SCF lacks both Article III and prudential standing to bring the claims that it asserts because those claims are dependent on alleged injuries to alleged rights held by the Directors that SCF selected for the ANTHC Board, rather than any injury to a clear right held by SCF directly.

Further, ANTHC asks the Court to dismiss SCF's claim concerning ANTHC's Executive Committee for the additional reason that it is moot. ANTHC's Board ratified all of the Committee's decisions—decisions which the Board indisputably has authority to make—and revisions to ANTHC's governing documents ensure that only the Board will decide those matters in the future. In brief, the allegedly wrongful behavior cannot be reasonably expected to reoccur since (1) it never happened in the first place (i.e., the Executive Committee has never made a substantive decision that was not subsequently ratified by the Board); (2) even if there was some deficiency in the Executive Committee process in December 2014 (and there was not), the subsequent ratification cured it; and (3) several governing documents, including the Bylaws, were amended to expressly require approval of future Executive Committee recommendations.

## II. ARGUMENT

### A. SCF has neither Article III nor prudential standing to bring the claims that it asserts on behalf of the Directors that it selected for the ANTHC Board.

#### 1. SCF does not have Article III standing because it has not articulated any injury to a right that it holds.

##### a. Section 325 does not give SCF a legally protected interest in receiving confidential ANTHC information.

"To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK 99501
*Main 907.277.1900 Fax 907.277.1920*

conjectural or hypothetical."[1] Thus, the existence of a legally protected interest held by the plaintiff is required to establish standing. SCF states that "the primary source of the rights that SCF is asserting is federal law, specifically Section 325."[2] But as explained in ANTHC's prior briefing,[3] Section 325 neither affirmatively requires ANTHC to share its confidential and privileged Board information with an entity that does not sit on the ANTHC Board, either directly or through the selected Directors, nor does it prohibit ANTHC from setting limits on the sharing of this information outside the boardroom. Put simply, the sole source of SCF's alleged legally protected interest in disclosure of confidential and privileged ANTHC information is Section 325. And, if that statute does not address (even implicitly) when and under what circumstances disclosure of information must occur, as it does not, then there is no other basis in federal law for SCF's alleged interest or standing.

SCF argues that ANTHC "confuses the concept of standing with the merits of SCF's lawsuit."[4] While they are analytically distinct questions, the two are difficult to untwine from each other here since they depend on similar legal considerations. SCF cites *Maya v. Centex Corp.* for the proposition that standing is a jurisdictional question distinct from the merits of the case.[5] But *Maya* did not consider a situation analogous to the issues here. *Maya* considered whether, if certain facts were true—namely, whether plaintiffs overpaid for their homes and whether the defendant's activities decreased the value and desirability of their homes—there

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK 99501
*Main 907.277.1900* *Fax 907.277.1920*

---

[1] *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016), *as revised* (May 24, 2016) (internal quotation marks omitted).

[2] SCF Opp. (Standing and Mootness) (Dkt. 72) at 7.

[3] *See, e.g.*, ANTHC Opposition to SCF's Motion for Summary Judgment (ANTHC Opp.) (Dkt. 61) at 7-9.

[4] SCF Opp. (Standing and Mootness) (Dkt. 72) at 10.

[5] 658 F.3d 1060, 1068 (9th Cir. 2011). SCF also cites *H.L. v. Matheson*, 450 U.S. 398 (1981) but fails to indicate that the language it quotes is from a dissent, not the majority opinion.

would be injury to the plaintiffs sufficient to confer standing.[6] In contrast, the question of whether Section 325 entitles SCF to the ANTHC Board's confidential and privileged information is a pure question of law. *Maya* does not inform how to consider the question of whether there is an injury to a legally protected interest that is in part dependent on a court's decision as to whether that interest is actually protected under the law.

Beyond *Maya*, SCF asserts that "Courts have consistently held that the denial of information to which one is entitled constitutes injury sufficient for standing to sue."[7] But in the cases that SCF cites there was a clear right to information under the statutes examined in those decisions.[8] Plaintiffs' standing in those cases did not turn on whether the relevant statute entitled them to receive the information they sought, or whether certain entities had a right or obligation to disclose that information, as it does here. For example, the standing question in *Public Citizen v. U.S. Dept. of Justice* turned on whether the Federal Advisory Committee Act—which provides the public with a clear right to information and indisputably requires certain entities to disclose

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK 99501
*Main 907.277.1900 Fax 907.277.1920*

---

[6] *Id.* at 1069-72.

[7] SCF Opp. (Standing and Mootness) (Dkt. 72) at 9.

[8] *See, e.g.*, *Public Citizen v. U.S. Dept. of Justice*, 491 U.S. 440, 449 (1989) (considering whether an organization was subject to the Federal Advisory Committee Act (FACA), which requires certain information to be disclosed by entities subject to the Act; no question that information disclosure was required under FACA); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 374 (1982) (considering whether plaintiffs received certain information required under the Fair Housing Act; no dispute that information disclosure was required under the Act); *Am. Canoe Ass'n., Inc. v. City of Louisa Water & Sewer Com'n*, 389 F.3d 536, 542 (6th Cir. 2004) (holding that plaintiff faced sufficient injury where he did not receive information required to be provided to the public under the Clean Water Act; no dispute that information disclosure was required under the Act); *Cummock v. Gore*, 180 F.3d 282, 290-93 (D.C. Cir. 1999) (considering whether plaintiff had standing based on deprivation of information required to be produced under FACA; no question that information disclosure was required under FACA). Although SCF cites *Case v. Hertz Corp.*, No. 15-CV-02707-BLF, 2016 WL 6835086, at *4 (N.D. Cal. Nov. 21, 2016) as support for its position, *Case* ultimately held that there was no informational injury sufficient to establish standing.

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
*Main 907.277.1900 Fax 907.277.1920*

information—applied to the entity in question. Here, there is no question that Section 325 applies to and governs ANTHC. But a fundamental question in this case is whether Section 325 entitles SCF—as distinct from the ANTHC Director that SCF selects—to receive the ANTHC Board's confidential and privileged information. If that right does not exist, there can be no justiciable injury to SCF here.

*Wilderness Society, Inc. v. Rey*, a case cited by SCF, confirms this point.[9] At issue in *Wilderness Society* was a provision in the U.S. Forest Service Decisionmaking and Appeals Reform Act (ARA) that required the Secretary of Agriculture to give notice of proposed actions to the public. Plaintiffs argued that this provision conferred a statutory right to information that was sufficient to establish standing. The Ninth Circuit disagreed. It reasoned that, "[t]o ground a claim to standing on an informational injury, the ARA must grant a right to information capable of supporting a lawsuit."[10] The Ninth Circuit then proceeded to examine whether the ARA granted such a right. The Court held that it does not because the right to notice in the ARA was more akin to a procedural right that cannot support standing without an actual injury, rather than an informational right as Congress created in other statutes like the Freedom of Information Act (FOIA). The Court recognized that statutes like FOIA can support standing because they were enacted for the specific purpose of giving individuals access to information. The Court reasoned that although notice is a form of information, "Congress's *purpose* in mandating notice in the context of the ARA was not to disclose information, but rather to allow the public opportunity to

[9] 622 F.3d 1251, 1258 (9th Cir. 2010).
[10] *Id.* at 1259 (citing Cass R. Sunstein, *Informational Regulation and Informational Standing:* Akins *and Beyond*, 147 U. PA. L. REV. 613, 642-43 (1999) (concluding that the "principal question after *Akins*, for purposes of 'injury in fact,' is whether Congress or any other source of law gives the litigant a right to bring suit")).

comment on the proposals."[11] The Court did recognize that notice is a predicate for public comment and that "the ARA grants the public a right to process and to participation."[12] But it held that, "[e]ven though these rights necessarily involve the dissemination of information, they are not thereby *tantamount* to a right to information per se."[13] Since the plaintiff did not have an actual injury beyond the procedural deprivation, the Ninth Circuit proceeded to dismiss the plaintiff's claim for lack of standing.[14]

*Wilderness Society* is instructive because it discusses what kind of concrete injury is needed to establish standing where, as here, the legal provisions being challenged "do not require or forbid any action on the part of the [defendants]."[15] "Standing is substantially more difficult to establish" in such a vacuum.[16] Although Section 325 refers to regional health entities as "participating" in the Consortium, it says nothing about the Consortium providing notice or disclosing other information to them.[17] For this reason, SCF's position is even weaker than the plaintiffs in *Wilderness Society*.

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK 99501
*Main 907.277.1900 Fax 907.277.1920*

---

[11] *Id.* (emphasis in original).
[12] *Id.*
[13] *Id.* (emphasis in original).
[14] *Id.* at 1260 (acknowledging that "procedural injury, standing on its own, cannot serve as an injury-in-fact").
[15] *Id.* at 1254.
[16] *Id.* (citing *Summers v. Earth Island Institute*, 129 S.Ct. 1142, 1149 (2009)).
[17] Section 325 does indicate that the Directors "represent" various regional health and tribal entities. ANTHC has adopted policies that provide for liberal information sharing directly with regional health entities, other tribal health entities participating in the Alaska Tribal Health Compact, and individual beneficiaries. Its Code of Conduct also addresses how information may be shared between Directors and the entities that select them. SCF points to nothing in Section 325 that suggests ANTHC is required to substitute SCF's preferred mode of "participation" for the ones that ANTHC has developed in coordination with participating organizations, including SCF, over the nearly 20 years of its existence.

Even if Section 325 did provide a clear right to information, its main purpose is to provide a framework for effective Alaska Native governance of statewide Indian Health Service functions. Thus, while Section 325 provides for a board of directors composed of representatives of regional health and other tribal entities, the law does not feature, as SCF argues, any requirement that would effectively recreate the very problem Section 325 was intended to solve. It does not, as its main purpose or otherwise, impose an unwieldy requirement for direct governance by a large number of distinct tribal legal entities. Nor does it require ANTHC to treat each of the dozens of entities described in Section 325(b) [18] as if they are Directors on its Board or as if they are "members" of the corporation. Although Section 325 contemplates that regional health and other tribal entities would have an opportunity to be represented on the ANTHC Board, that is not tantamount to a right to confidential and privileged ANTHC Board information per se. As in *Wilderness Society*, in the absence of a clear right to information in Section 325 capable of supporting a lawsuit, SCF lacks standing.

**b. No other source of law gives SCF an interest in obtaining ANTHC information.**

In the absence of any affirmative requirement or explicit prohibition under Section 325 one way or another, it is appropriate to look to ANTHC's governing documents and state law to

[18] The Unaffiliated Alaska Native Tribal Health Committee (UANTHC), which selects two of ANTHC's Directors, initially recognized about a dozen tribal entities that qualified under Section 325(b) to be represented by the Directors. However, the Indian Health Service recently posted its updated "Alaska Area 2016 Active User Population by Tribal Resolution and Federally Recognized Tribe for American Indian/Alaska Natives (AI/AN) from the Action User Population Report (B) Version 88," which indicates there may be as many as 130 unaffiliated communities, including 62 with "active users" of the Alaska Tribal Health System. Counting the thirteen regional health entities, the number of tribal entities described in Section 325(b) appears to range from about 25 to 75 or more. *See* https://www.ihs.gov/alaska/includes/themes/responsive2017/display_objects/documents/pop_reports/TRIBE2016.pdf .

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK 99501
*Main 907.277.1900 Fax 907.277.1920*

determine whether SCF—as distinct from the individual Directors that SCF selected for the ANTHC Board—have a right to ANTHC's confidential and privileged Board information. As ANTHC's extensive briefing confirms, it does not. SCF's citation to AS 10.20.011(2),[19] which states that a corporation may "sue and be sued," is inapposite because the statute addresses the potential scope of ANTHC's corporate authority, not private rights of action, which are addressed elsewhere in the statutory scheme. Thus, that provision cannot be read to provide an unlimited right of action for any person or any entity to sue a corporation. Interpreting AS 10.20.011(2) in this manner would render superfluous AS 10.20.360, for example, which provides a private right of action for creditors as part of the same statutory scheme. "[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme."[20]

**c. SCF's alleged injury is a result of its own conduct.**

Contrary to SCF's assertion otherwise, SCF's alleged injury is not traceable to ANTHC's conduct. SCF's pleadings and briefings all indicate that its right to access confidential information is conditioned on its promise to keep ANTHC's information in confidence. However, SCF has never met this condition. Despite SCF's repeated assertions that it is willing to maintain confidentiality, and despite ANTHC's efforts to implement appropriate safeguards that would have allowed disclosure of much of the information SCF sought, SCF ultimately rejected the opportunity to sign a confidentially agreement that ANTHC offered in early 2016,

[19] SCF Opp. (Standing and Mootness) (Dkt. 72) at 8 n.32.

[20] *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) (citing *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 185 (2011) ("As our cases have noted in the past, we are hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law.")).

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK 99501
*Main 907.277.1900 Fax 907.277.1920*

ostensibly because the agreements did not track SCF's unsupportable interpretation of Section 325.[21]

Thus, the alleged deprivation, and any allegedly related injury, is not fairly traceable to ANTHC; rather it stems from factors within SCF's control: chiefly, the SCF-selected Directors' refusal to comply with ANTHC's reasonable policy decision to ensure adequate safeguards and appropriate limitations are in place to comply with various legal requirements and protect ANTHC's interests. To the extent it exists at all, any alleged injury results as much from SCF's steadfast refusal to accept any confidentiality agreement that does not reflect its unsupported interpretation of the law, a position not capable of being redressed by the Court's decision.

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK 99501
*Main 907.277.1900 Fax 907.277.1920*

**d. ANTHC's past litigation positions are irrelevant.**

Finally, the Court should disregard SCF's suggestion that ANTHC's position in prior unrelated lawsuits is relevant here. ANTHC's challenges to the standing of other entities and individuals in completely different lawsuits were tailored to the relevant statutes and facts of those cases; decisions about ANTHC's governance were not at issue and those cases have no bearing on the merits of ANTHC's standing arguments here.[22] ANTHC does not argue that *only* members of the Board of Directors or "members" of ANTHC within the meaning of Alaska's Nonprofit Corporations Act can sue ANTHC, as SCF asserts.[23] Rather, ANTHC's opening brief cites a non-exhaustive list of entities and individuals that the state law provides rights of action for against ANTHC and explains why SCF's claims do not fall within their ambit.[24] SCF does not offer any plausible reading of Section 325 that suggests it expressly or impliedly provides

---

[21] Declaration of Nacole Heslep, ¶ 16, filed herewith.
[22] SCF Opp. (Standing and Mootness) (Dkt. 72) at 10.
[23] *Id.*
[24] Dkt. 34 at 11-12.

anything more to SCF. Nor does SCF identify any other law that might provide it with a private right of action. More importantly, ANTHC's position in other cases says nothing about whether SCF faces any actual, particularized injury here sufficient to confer standing. Its effort to borrow the purported injury of individual ANTHC Directors does not suffice to confer standing.

**2. SCF does not have prudential standing because its claims are dependent on the rights of others, which the U.S. Supreme Court and the Ninth Circuit have continued to reject as a basis for standing under prudential standing case law.**

In addition to constitutional limitations on federal court jurisdiction, there are also prudential limitations on its exercise.[25] The doctrine of prudential standing "restrict[s] the grounds a plaintiff may put forward in seeking to vindicate his personal stake."[26] Courts must consider, among other things, "whether the alleged injury is more than a mere generalized grievance, whether the plaintiff is asserting her own rights or the rights of third parties, and whether the claim in question falls within the zone of interests to be protected or regulated by the constitutional guarantee in question."[27] "Even where plaintiffs meet the bare minimum of the Article III case or controversy requirement, we typically decline to hear cases asserting rights properly belonging to third parties rather than the plaintiff."[28]

SCF makes two arguments in response to ANTHC's prudential standing argument. First, SCF contends that it asserts its own rights, not those of anybody else.[29] That contention, however, conflates SCF with the ANTHC Director(s) selected by SCF, and it misdescribes SCF's claim. As SCF asserts in its Complaint, it is the directors who must initially assert the

[25] *Fleck & Assocs., Inc. v. City of Phoenix*, 471 F.3d 1100, 1103-04 (9th Cir. 2006).
[26] *Id*. at 1104.
[27] *Wolfson*, 616 F.3d at 1056 (internal quotation marks and citation omitted).
[28] *McCollum v. Cal. Dep't of Corr. & Rehab*., 647 F.3d 870, 878 (9th Cir. 2011).
[29] SCF Opp. (Standing and Mootness) (Dkt. 72) at 11.

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK 99501
*Main 907.277.1900* *Fax 907.277.1920*

right to confidential and privileged ANTHC Board information and who have the correlative right and obligation to provide that information to the entities that selected them.[30] To put the point bluntly, SCF is not claiming a right on its own behalf to access ANTHC's confidential file cabinets. Rather, SCF is asserting that it must have the ability to access information *through* the ANTHC Directors that it selected; Directors who, SCF argues, must have the ability to share that information without restriction. SCF's claim is wholly dependent on the ANTHC Directors that it selected acting as go-betweens.

Second, SCF suggests that the doctrine of prudential standing is dead.[31] Although the Supreme Court recently recharacterized zone-of-interest inquiries as questions of statutory, rather than prudential, standing,[32] in substance the remaining requirements for prudential standing are largely the same. The Ninth Circuit and courts in this district continue to evaluate whether—beyond the requirements of Article III—plaintiffs have standing to bring a cause of action in reliance on a particular law and whether they have standing to assert the rights of others.[33] That is exactly the inquiry the Court must pursue here.

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK 99501
*Main 907.277.1900 Fax 907.277.1920*

---

30 Compl. (Dkt. 2) ¶ 37 (referring to "Designated Directors' ability to share confidential information"); *id.* ¶ 40 ("Designated Directors' ability to share information or documents regarding ANTHC").

31 SCF Opp. (Standing and Mootness) (Dkt. 72) at 11.

32 *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014).

33 *See Ray Charles Found. v. Robinson*, 795 F.3d 1109, 1118 (9th Cir. 2015) ("Historically, courts have treated the limitation on third-party standing as a prudential principle that requires plaintiffs to assert their own legal rights."); *All. for the Wild Rockies v. U.S. Dep't of Agric.*, 772 F.3d 592, 600 (9th Cir. 2014) ("In addition to these constitutional requirements, prudential standing under NEPA also requires a showing that the alleged injury "falls within the 'zone of interests' that NEPA was designed to protect."); *McQuiston v. City of Los Angeles*, 560 F. App'x 684, 685 (9th Cir. 2014) ("The doctrine of standing has both a constitutional and a prudential component."); *see also United States v. Windsor*, 133 S. Ct. 2675, 268 (2013) ("Even when Article III permits the exercise of federal jurisdiction, prudential considerations demand that the Court insist upon 'that concrete adverseness which sharpens the presentation of issues upon

**B. SCF's claim regarding the Executive Committee is moot based on the full Board's ratification of all of the Committee's decisions and the Board's revisions to ANTHC's governing documents.**

SCF's requested declaratory judgment that Section 325 prohibits delegating the power of the Board to the Executive Committee is moot and should be dismissed. As an initial matter, and as also discussed in ANTHC's opposition to SCF's motion for summary judgment,[34] SCF admits that all past actions of the Executive Committee have been subsequently ratified by the full Board.[35] It is undisputed that the full ANTHC Board has the authority to make all of the decisions that the Executive Committee made in December 2014[36]—the decisions that are the central focus of SCF's story, and the only decisions of substance the Executive Committee ever made.[37] It is also undisputed that at the April 2015 special Board meeting (more than 20 months *before* this lawsuit was filed) the ANTHC Board ratified the Executive Committee's December 2014 decisions.[38] Thus, SCF's assertion that the Executive Committee took any action "without

---

which the court so largely depends for illumination of difficult constitutional questions.'"); Wright & Miller, 33 *Fed. Prac. & Proc. Judicial Review* § 8413 (1st ed.) (discussing prudential standing and third party standing).

[34] ANTHC Opp. (Dkt. 61) at 18-20.

[35] SCF Motion (Dkt. 38) at 22 ("[T]he Board ratified all of the actions that the Executive Committee had taken in December 2014."); *id.* at 33 ("Thus, although the Board ultimately ratified the actions ....").

[36] *See id.* at 21-24, 31-33.

[37] *See* ANTHC Opp. (Dkt. 61) at 26-27 (describing how, beyond the December 2014 Executive Committee meeting, the Executive Committee only met two other times: once on December 1, 2015 to approve the minutes of the December 2014 meeting, and a second time that same day, December 1, 20115, to preview year-end performance evaluation materials and compensation information that would be later discussed and acted on by the full Board).

[38] *See* Dkt. 67-2 (April 2015 Meeting Minutes); 2A *Fletcher Cyclopedia of the Law of Corporations* § 762, Westlaw (database updated Sept. 2017) ("Ratification may be effected by a resolution or vote of the board of directors expressly ratifying previous acts either of corporate officers or agents[.]").

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK 99501
*Main 907.277.1900* *Fax 907.277.1920*

notice to or input from the 10 other ANTHC Directors on the Board"[39] is demonstrably false.[40] Moreover, the ANTHC Board recently re-affirmed and supported that ratification, removing any doubt that the Board supports the Executive Committee's limited actions.[41]

In ratifying those decisions, the ANTHC Board substituted its authority for that of the Executive Committee as of the date the decisions were originally made.[42] Therefore, even if the Executive Committee had lacked the authority to make these decisions (which it did not), the ANTHC Board's ratification of those actions cured any defect retroactively.[43] Ratification triggers the same result as that which would have occurred had those decisions been made by the

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK 99501
*Main 907.277.1900 Fax 907.277.1920*

[39] SCF Opp. (Standing and Mootness) (Dkt. 72) at 3.

[40] *See* Dkt. 64 (Merculief Decl.) at 3-4. During the special Board meeting in April 2015 the full Board "review[ed] voluminous materials related to the decisions the Executive Committee made, especially the decisions related to executive agreements and compensation." *Id.* at 3. "The board had sufficient information to make a responsible and informed decision" regarding ratification that was not pressured by any prior Executive Committee decision. *Id.* Moreover, the Committee's decisions "were consistent with the direction that the Board of Directors previously outlined." *Id.* at 4.

[41] *See* Dkt. 67-3 (ANTHC Resolution 17-10).

[42] *See, e.g.*, *Kalageorgi v. Victor Kamkin, Inc.*, 750 A.2d 531, 539 (Del. Ch. 1999) ("[W]here board authorization of corporate action that falls within the board's *de jure* authority is defective, the defect in authority can be cured retroactively by board ratification."), *aff'd*, 748 A.2d 913 (Del. 2000); *CarrAmerica Realty Corp. v. Kaidanow*, 321 F.3d 165, 173 (D.C. Cir. 2003) (quoting same); *Cohen v. Ayers*, 449 F. Supp. 298, 308 (N.D. Ill. 1978) ("Ratification is by definition retroactive, but it is nevertheless equivalent to prior authority."); *Schreiber v. Bryan*, 396 A.2d 512, 518 (Del. Ch. 1978) ("[T]he general rule of law is that stockholder ratification cures a voidable wrong . . . ."); 2A *Fletcher Cyclopedia of the Law of Corporations* § 752 ("[Ratification] amounts to a substitute for prior authority."); *id.* § 782 ("[R]atification by a corporation of an unauthorized act ... relates back to the time of the act or contract ratified, and is equivalent to original authority." (collecting cases)).

[43] *See, e.g., Kalageorgi*, 750 A.2d 531 at 539; *CarrAmerica Realty Corp.*, 321 F.3d at 173.

ANTHC Board in the first instance.[44] Thus, to the extent SCF seeks a declaration regarding past actions of the Executive Committee, its request is moot. [45]

To the extent SCF challenges the possibility of a *future* excessive delegation to the Executive Committee or a decision made without notifying the Board of Directors, that claim is also moot. Since the Executive Committee Charter was first adopted in 2014, it required the Executive Committee to regularly report its decisions to the Board.[46] While there was never any past excessive delegation to the Executive Committee, ANTHC amended its Bylaws in April 2017 to confirm that "[a]ll actions of the Committee must be ratified and approved by a vote of the Board."[47] The Executive Committee Charter contains the same language.[48]

Indeed, SCF does not challenge the current version of the Bylaws. Instead, SCF argues that the voluntary cessation of disputed conduct does not moot its request for declaratory relief.[49] SCF is wrong. The voluntary cessation of disputed conduct can render a case moot when there is a reasonable expectation that the allegedly illegal action will not reoccur.[50] The decisions made under the challenged prior authority of the Executive Committee cannot be reasonably expected to reoccur because, as explained above, no unratified decisions were actually made pursuant to

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK 99501
*Main 907.277.1900 Fax 907.277.1920*

---

[44] *Id.*
[45] *See Mates v. N. Am. Vaccine, Inc.*, 53 F. Supp. 2d 814, 826 (D. Md. 1999) (board ratification makes moot requests for declaratory relief).
[46] *See* Dkt. 43-7 (Executive Committee Charter, Dec. 2014), at § 4.4 ("Records. The Chair will designate a Committee member or other individual to take minutes that reflect the final decisions of the Executive Committee an report regularly to the Board of Directors on such actions"); Dkt. 42-20 (Executive Committee Charter, Sept. 2016), at § 4.4 (same); Dkt. 42-21 (Executive Committee Charter, April 2017), at § 4.4 (same).
[47] Dkt. 32-1 (Bylaws).
[48] Dkt. 42-21 (ANTHC Executive Committee Charter, Apr. 6, 2017).
[49] SCF Opp. (Standing and Mootness) (Dkt. 72) at 12-14.
[50] *See Native Vill. of Noatak v. Blatchford*, 38 F.3d 1505, 1510 (9th Cir. 1994).

the challenged authority.[51] Rather, the full Board ratified the Executive Committee's decisions some 20 months before this lawsuit was filed. Thus, the allegedly wrongful behavior cannot be reasonably expected to reoccur since it, in practical effect, never happened in the first place.

SCF's suggestion that "the wrongful conduct has already reoccurred" because the ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████[52] As intended, the Board ███████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████.[53]

---

[51] SCF's Prayer for Relief specifically requests an order declaring that the Executive Committee is contrary to law "to the extent any action of the Executive Committee is deemed valid before it is ratified by the full 15-member ANTHC Board." Complaint (Dkt. 2) at 17. But because ratification, by definition, means that the ANTHC Board substituted its authority for that of the Executive Committee as of the date the decisions were originally made by the Executive Committee, there have never been any actions deemed valid solely by the Executive Committee. *See supra* notes 42-43.

[52] SCF Opp. (Standing and Mootness) (Dkt. 72) at 14 (emphasis added). SCF also complains that ANTHC Directors did not have adequate notice that this issue would be discussed at the June 2017 meeting. However, ANTHC's governing documents do not specify a minimum amount of notice for any proposed Board decision, aside from notice as to when meetings will be held and proposed amendments to the Articles of Incorporation and the Bylaws. Even so, the draft minutes from ████████████████████████████████████████████████████████ ████████████████████████████████████. *See* Langberg Decl., Ex. I ████████████████████. ████████████████████████████████████████████████ ████████████████████████████████████████████. The Board of Directors' decision ████████████ demonstrates that the Board ████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████.

ANTHC'S REPLY IN SUPPORT OF MOTION TO DISMISS (STANDING & MOOTNESS)
*SCF v. ANTHC*, 3:17-cv-00018-TMB
Page 14

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK 99501
*Main 907.277.1900   Fax 907.277.1920*

The fact [redacted] further confirms that [redacted].

SCF's argument thus contains a subtle but critical distinction between responsibility and authority: SCF notes that "[redacted]."[54] Yet, SCF tellingly makes no assertion that any actions by [redacted] were or could be valid before a full Board vote, let alone made without full input from the Board. As a result, SCF's assertion in this regard does not undercut ANTHC's showing of a reasonable expectation that the disputed conduct will not reoccur.

SCF's insinuations about the [redacted] reflect a lack of familiarity with federal requirements regarding non-profit compensation and a mischaracterization of ANTHC's purposes in formalizing its executive compensation policy. The Executive Committee Charter and [redacted] closely track the standards and processes promulgated by the IRS for non-profits to ensure they are not overpaying executives.[55] Far from attempting to "hide" information from the Board of Directors, the [redacted] is designed to [redacted]. Ironically, [redacted] arose because the ANTHC Board of Directors acceded to SCF's request that the Executive Committee only be

[54] SCF Opp. (Standing and Mootness) (Dkt. 72) at 14 (emphasis added).

[55] *Compare* Section 3.2 of the Executive Committee Charter (2017) (Dkt. 42-21) and Declaration of Sarah Langberg, Ex. J [redacted], filed herewith, with Treasury Reg. § 53.4958-6(a) (adhering to standards creates a "rebuttable presumption" against finding an "excess benefit transaction").

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK 99501
*Main 907.277.1900 Fax 907.277.1920*

allowed to meet when the full Board could not. Because this prevents the Executive Committee from scheduling regular meetings, it cannot reliably carry out the routine review, oversight, and other responsibilities formerly required by the Executive Committee Charter (and now required by the Compensation Review Policy). Rather than diluting its oversight and compliance efforts, the Board of Directors [redacted] [redacted]. But again, "responsibility" does not connote authority.

Finally, as is analogous to this case, "[a] statutory change . . . is usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed.'"[56] The same should hold true for changes to the Board's governing documents, which, in effect, provide the 'statutory' authority for the Executive Committee and all other Board committees and actions.

## III. CONCLUSION

For the foregoing reasons, ANTHC respectfully asks the Court to grant ANTHC's motion to dismiss based on standing and mootness and to award ANTHC its reasonable attorneys' fees and costs.

[56] *Chem. Producers & Distribs. Ass'n v. Helliker*, 463 F.3d 871, 878 (9th Cir. 2006) (citation omitted; alteration in original); *see also Native Vill. of Noatak*, 38 F.3d at 1510 (citing cases). "The exceptions to this general line of holdings are rare and typically involve situations where it is virtually certain that the repealed law will be reenacted." *Id.* (citing *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982) (repeal of city ordinance did not render challenge to ordinance moot where city was likely to reenact statute after completion of litigation)).

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK 99501
*Main 907.277.1900 Fax 907.277.1920*

DATED: October 17, 2017

STOEL RIVES LLP

By: /s/ James E. Torgerson
JAMES E. TORGERSON
SARAH LANGBERG

Attorneys for Defendant and Counterclaimant
Alaska Native Tribal Health Consortium

**CERTIFICATE OF SERVICE**

I hereby certify that on October 17, 2017, I filed a true and correct copy of the foregoing document with the Clerk of the Court for the United States District Court – District of Alaska by using the CM/ECF system. Participants in this Case No. 3:17-cv-00018-TMB who are registered CM/ECF users, and who are listed below, will be served by the CM/ECF system.

Louisiana W. Cutler
Shane K. Kanady
Dorsey & Whitney, LLC
1031 W 4th Ave., Ste. 600
Anchorage, AK 99501
cutler.louisiana@dorsey.com
kanady.shane@dorsey.com

William D. Temko
Munger, Tolles & Olson LLP
355 S Grand Ave., Ste. 3500
Los Angeles, CA 90071
William.Temko@mto.com

/s/ James E. Torgerson
James E. Torgerson

94445333.1 0009312-00008

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK 99501
*Main 907.277.1900* *Fax 907.277.1920*