James E. Torgerson (Bar No. 8509120)
jim.torgerson@stoel.com
Sarah Langberg (Bar No. 1505075)
sarah.langberg@stoel.com
STOEL RIVES LLP
510 L Street, Suite 500
Anchorage, AK 99501
Telephone: 907.277.1900
Facsimile: 907.277.1920

Attorneys for Defendant and Counterclaimant
Alaska Native Tribal Health Consortium

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SOUTHCENTRAL FOUNDATION,<br><br>    Plaintiff and Counterclaim-Defendant,<br><br>v.<br><br>ALASKA NATIVE TRIBAL HEALTH CONSORTIUM,<br><br>    Defendant and Counterclaimant. | Case No.: 3:17-cv-00018-TMB<br><br>ANTHC'S REPLY IN SUPPORT OF ANTHC'S MOTION FOR SUMMARY JUDGMENT (**REDACTED**) |

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main 907.277.1900  Fax 907.277.1920

ANTHC'S REPLY IN SUPPORT OF ANTHC'S MOTION FOR SUMMARY JUDGMENT
*SCF v. ANTHC*, 3:17-cv-00018-TMB

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ............................................................................................. 1

II.   ARGUMENT ................................................................................................... 4

    A.   Whether cooperating or competing, SCF would gain an advantage over ANTHC if it could have ANTHC's confidential and privileged information. ............................... 4

        1.   Both parties describe a long-standing relationship that includes both cooperation and competition. ......................................................................... 4

        2.   SCF seeks to change ANTHC's governance to obtain access to ANTHC's confidential and privileged information and to gain a competitive advantage over ANTHC. ......................................................................... 6

    B.   SCF's governance theory conflicts with Section 325. ................................. 10

        1.   SCF misdescribes the relief it seeks. ............................................. 10

        2.   SCF seeks to eviscerate the new, independent entity that Congress created in Section 325. ........................................................... 11

    C.   SCF's governance theory conflicts with corporate law—in particular, the business judgment rule and corporate directors' duties. ................................. 14

    D.   SCF's informational sharing theories are inconsistent with federal and corporate law. ............................................................................................. 17

    E.   SCF asks this Court to improperly interfere with the ANTHC Board's exercise of Indian self–governance. ...................................................... 20

    F.   ANTHC's requested relief is consistent with federal and corporate law ....................... 20

III.  CONCLUSION ............................................................................................... 23

**STOEL RIVES** LLP
510 L Street, Suite 500, Anchorage, AK 99501
*Main 907.277.1900    Fax 907.277.1920*

# I.    INTRODUCTION

Under the relevant law, there is a critical distinction between (1) the *people* who serve as ANTHC's Directors and (2) the *entities* that selected them. SCF conflates and obscures this distinction in its Opposition to Defendant's Motion for Summary Judgment (Opposition)[1] as it tries to persuade the Court that SCF has a right to the same information from ANTHC as do ANTHC's Board members. SCF's position is wrong under all the relevant law.

Under ANTHC's policies and the common law, ANTHC Directors are entitled to all of ANTHC's information relevant to the governance of ANTHC. This right to information is limited when Directors face an irreconcilable conflict of interest, such as between their duties to ANTHC and their duties to the entity they represent. For example, ANTHC Directors who are fiduciaries of a selecting entity may be duty-bound to share confidential or privileged ANTHC information with their selecting entity if doing so would benefit the selecting entity—even if sharing the information harms ANTHC's interests and violates the Director's duty of loyalty to ANTHC. At the same time, as Directors they also have fiduciary duties to ANTHC and may be duty-bound to preserve the confidentiality or privilege that applies to the information. In such instances, an ANTHC Director's duties to ANTHC would be in direct conflict with his or her duties to the selecting entity. The way to address this clash in duties is to avoid it entirely. That is why both the common law and ANTHC policies require Directors to identify potential conflicts of interest and recuse themselves from situations in which their duties irreconcilably conflict. Section 325 does not address this issue; it contains no provisions contrary to the common law or ANTHC's Board policies.

_____

[1] Dkt. 83.

ANTHC'S REPLY IN SUPPORT OF ANTHC'S MOTION FOR SUMMARY JUDGMENT
*SCF v. ANTHC*, 3:17-cv-00018-TMB
Page 1

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK  99501
*Main 907.277.1900    Fax 907.277.1920*

By contrast, under the common law and Section 325 the entities that are represented on ANTHC's Board, like the broader public, have no right to any confidential or privileged ANTHC information—because the entities do not sit on the Board of Directors. And because they do not sit on ANTHC's Board, they have no duties of loyalty or confidentiality to ANTHC as to any information they do receive. This is true regardless of whether a conflict of interest exists between ANTHC and the entity seeking access to its confidential and privileged information.

Despite this, the ANTHC Board has elected to provide selecting entities access to a broad range of ANTHC material under its Disclosure Policy,[2] consistent with its Code of Conduct[3] and

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK 99501
*Main* 907.277.1900   *Fax* 907.277.1920

---

[2] Under ANTHC's Disclosure of Records and Information Policy (Dkt. 42-7), regional health entities that select Directors may access ANTHC's articles of incorporation, bylaws, annual tax returns, quarterly financial statements, annual audits, annual program reports and non-confidential materials that may be useful to their governance, executive management or clinical leadership, including final meeting minutes, information presented to the Board in regular session; ANTHC and ANMC policies and procedures; contact information for current directors and officers; descriptions of ANTHC's programs, functions, services, and activities; approved strategic and master plans; and epidemiology data related to statewide programs and to the regional health entity's own regional or community programs. Regional health entities may also access non-confidential information that ANTHC presents in open session to groups that foster consultation and collaboration, including the Medical Services Networking Committee, the Tribal Caucus, the Alaska Native Health Board, the Anchorage Service Unit Tribal Council, the Rural Anchorage Service Unit, the Alaska State Hospital and Nursing Home Association, the National Indian Health Board, and tribal advisory committees. In addition, Co-Signers of the Alaska Tribal Health Compact, which include all regional health entities, may access other materials they may have a legitimate interest in, if they provide adequate assurances that the information will be safeguarded from re-disclosure and improper use. "Confidential, proprietary and other sensitive information may also be provided in appropriate cases if adequate safeguards are in place to protect the integrity, confidentiality and use of the information, such as a data-use agreement, a confidentiality or non-disclosure agreement, or a common interest or joint defense agreement." *Id.*

[3] Under the current Code of Conduct (Dkt. 42-10), Directors are expected to coordinate with the entities that select them to ensure effective representation and, to the extent consistent with their fiduciary duties to ANTHC, should inform the regional health entities of "actions to be taken and issues to be considered by the Board of Directors." Except for confidential and sensitive materials, Directors may share with the regional health entities ANTHC Board resolutions, final meeting minutes, and materials presented to the Board in regular session. Section B(2). The

ANTHC'S REPLY IN SUPPORT OF ANTHC'S MOTION FOR SUMMARY JUDGMENT
*SCF v. ANTHC*, 3:17-cv-00018-TMB
Page 2

Bylaws. The ability to set these policies arises out of the Board's inherent governance power, which of course must be exercised consistent with the business judgment rule.

SCF's efforts to minimize the competition and the resulting conflicts of interest between ANTHC and SCF, and its suggestion that in the absence of significant competition it is appropriate for ANTHC to share its confidential and privileged information with SCF, misses the mark. Because the Board's authority to decide what confidential and privileged information of ANTHC to share arises out of its inherent governance power, it does not depend on the existence of any conflict of interest. SCF's argument that it is entitled to receive confidential and privileged ANTHC information because, as it asserts, ANTHC and SCF's relationship is primarily cooperative, is precisely the posture a competitor would take to gain access to otherwise inaccessible information. And SCF's conflation of the two separate and independently critical issues in this case—(1) what confidential or privileged ANTHC information its Directors are entitled to, and (2) what information the selecting entities are entitled to—highlights the need for ANTHC's requested declaration.

---

Code of Conduct also allows Directors to convey confidential and sensitive information to their respective regional health entities as permitted by the Board, by the Disclosure and other policies, and as authorized by either the Chair of the Board or the Chair of the Ethics, Compliance, Quality, and Safety Committee. Section A(4)(d).

ANTHC'S REPLY IN SUPPORT OF ANTHC'S MOTION FOR SUMMARY JUDGMENT
*SCF v. ANTHC*, 3:17-cv-00018-TMB
Page 3

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main 907.277.1900   Fax 907.277.1920

## II. ARGUMENT

### A. Whether cooperating or competing, SCF would gain an advantage over ANTHC if it could have ANTHC's confidential and privileged information.

#### 1. Both parties describe a long-standing relationship that includes both cooperation and competition.

SCF devotes nearly two-thirds of its opposition to try to show that ANTHC and SCF cooperate in a number of arenas, arguing against a straw man it created.[4] ANTHC agrees the two entities cooperate, and plainly said so in its opening brief.[5] But while there are examples of cooperation between the two organizations, there also are examples of competition.

---

[4] *See* SCF Opp. (Dkt. 83) at 4-22.

[5] *See* ANTHC's Mot. for Summary Judgment (Dkt. 36) at 11. ANTHC does not agree, however, with numerous misstatements SCF made in its Opposition. For example, SCF incorrectly asserts that ANTHC withheld information from Directors about ███████████████████████ ██████████████████████████████. This information was provided to Directors and they discussed it a number of times between 2014 and the present. *See, e.g.*, Declaration of Sarah Langberg, Ex. A ████████████████████████████████████████████████████████████ ████████████████████████████████████████████ filed contemporaneously herewith ("Langberg Decl."); Dkt. 68-3 - SEALED (████████████████████████████████████ ████████████████████████████████████████████ Langberg Decl., Ex. B ████████████ ██████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████; Dkt. 67-2 (April 7, 2015 meeting minutes confirming Director Sylvester's attendance); Langberg Decl., Ex. C ████████████████████████████████████████████████████████████████████████████ ████████████████████████████ In addition to these materials, the Board was provided with hundreds of pages of additional materials on these topics that were produced as "Attorneys Eyes Only" in this litigation; "Attorneys Eyes Only" materials were excluded from citation in Exs. A-B; *see also* Declaration of Nacole Heslep, ¶ 9 (discussing March 19, 2015 meeting) and ¶ 10 (discussing April 7, 2015 meeting), filed herewith; Merculief Decl. ¶¶ 8-9 (Dkt. 64). In fact, Directors Gottlieb and Sylvester ████████████████████████████████████—the very information they claim they were denied—██████████████████████████████████. *See* Langberg, Ex. D [ANTHC_000910-916].

ANTHC'S REPLY IN SUPPORT OF ANTHC'S MOTION FOR SUMMARY JUDGMENT
*SCF v. ANTHC*, 3:17-cv-00018-TMB
Page 4

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main 907.277.1900   Fax 907.277.1920

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK 99501
*Main 907.277.1900   Fax 907.277.1920*

SCF's Opposition confirms this. For example, in the real estate context—by SCF's account—ANTHC stole the Diplomacy Building "out from under SCF."[6] That is not really the case. ████████████████████████████████████████████████[7] But even if it were, this example confirms the existence of competition for and conflicts of interest over real estate.

There also are competing declarations and documents as to whether SCF has recruited Tribes to get them to change their affiliations from another tribal healthcare provider to SCF. On the one hand, SCF officials declare that they did not attempt to recruit Tribes to change their affiliations, ████████████████████.[8] On the other hand, two board resolutions—one from the Chugachmiut Board of Directors and the other from the ████████ ████████████████████—characterize SCF's interactions with Tribes in their regions as recruitment.[9]

Regardless of what SCF calls its solicitation efforts, whether Tribes transferred their affiliation solely in response to being recruited by SCF or for other reasons as well, it is undisputed that Tribes can and do change affiliations. Moreover, it is undisputed that doing so leads to shifts in funding from one tribal health provider to another, which can significantly affect and spur tensions between the tribal health providers that are represented on the ANTHC Board. The existence of those tensions and potential competition for funding, which SCF does not deny, highlight yet another reason why the ANTHC Board must be able to institute policies

---

[6] SCF Opp. (Dkt. 83) at 9.
[7] Langberg Decl., Ex. E ████████████████████████ ██████████.
[8] *See* Declaration of Katherine Gottlieb (Dkt. 85) ¶¶ 11-15.
[9] *See* Dkt. 40-7 and 41-5.

ANTHC'S REPLY IN SUPPORT OF ANTHC'S MOTION FOR SUMMARY JUDGMENT
*SCF v. ANTHC*, 3:17-cv-00018-TMB
Page 5

that allow it to distance itself from and continue its governance functions unencumbered by any conflicts of interest that its Directors, and their selecting entities, may have.

Finally, despite its recitation of examples of cooperation between ANTHC and SCF, SCF admits that ANTHC was created because of competition within Alaska's Native Health system. As SCF acknowledged, "Congress was fully cognizant of the potential ways in which the Regional Health Entities competed with each other. After all, it was precisely because of disagreements among the Regional Health Entities that Congress . . . "cut that Gordian knot" and created ANTHC."[10] Alongside significant cooperation, that competition continues both between SCF and the Regional Health Entities and with ANTHC itself, as the parties' briefing establishes.

> **2.** **SCF seeks to change ANTHC's governance to obtain access to ANTHC's confidential and privileged information and to gain a competitive advantage over ANTHC.**

Although SCF disputes the extent of its competition with ANTHC, SCF does not deny that competition exists between it and ANTHC, in addition to competition and conflicts between it and other entities represented on ANTHC's Board.[11] That competition helps explain why SCF has sought to dilute the duty of loyalty its selected Directors owe ANTHC.

SCF denies that it



[12] It frames its denial by

---

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main 907.277.1900    Fax 907.277.1920

[10] SCF Opp. (Dkt. 83) at 23.
[11] *See, e.g., id.* at 2. Also, SCF acknowledged by implication the parties' competition in writing that "ANTHC and SCF cooperate in far more areas than they compete." (emphasis removed). *Id.* at 2. It also wrote that "there is not currently any great divide in the two organizations' vision of the Fast Track Department" implicitly acknowledging that such a divide has existed. *See id.* at 16.
[12] *Id.* at 27-28.

ANTHC'S REPLY IN SUPPORT OF ANTHC'S MOTION FOR SUMMARY JUDGMENT
*SCF v. ANTHC*, 3:17-cv-00018-TMB
Page 6

██████████████████████████████████████████

████████████████████

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
[13]

SCF's post-hoc efforts at explanation do not solve its problem here. Its ████████████

███████████████ sought a sharp departure from typical corporate bylaws and corporate law, and would have ████████████████████████████████

████████████████████████████. Moreover, whatever reason SCF may now advance for

████████████████████████, there can be no question that the effect ████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████.

SCF goes on to assert that it has never ████████████████████

████████████[14] But in fact SCF repeatedly has ████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

---

[13] Dkt. 45-2, at 9.
[14] SCF Opp. (Dkt. 83) at 28.

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK 99501
Main 907.277.1900   Fax 907.277.1920

███████████████████████████████████████████████. Specifically, SCF has ████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████

In other words, SCF has tried to persuade the ANTHC Board to ██████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████. Because the Board

repeatedly has rejected SCF's efforts, it now has turned to this Court to ████████████████.

ANTHC's Disclosure Policy already allows access to ample information to tribal entities

in the Alaska Tribal Health System, and allows for additional information to be provided on a

---

[15] *See, e.g.*, Langberg Decl, Ex. F at 2-18 ████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████ (emphasis added)); *see id.* at 19-28

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████ Ex. G

██████████████████ (emphasis added)); Ex. H ████████████████████████████████

██████████████████████████████████████████████

ANTHC'S REPLY IN SUPPORT OF ANTHC'S MOTION FOR SUMMARY JUDGMENT
*SCF v. ANTHC*, 3:17-cv-00018-TMB
Page 8
Case 3:17-cv-00018-TMB   Document 104   Filed 10/17/17   Page 10 of 26

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK  99501
Main 907.277.1900   Fax 907.277.1920

case-by-case basis if one of the tribal entities requests additional materials.[16] SCF's determination that this is insufficient coupled with its rejection of a standard confidentiality agreement with ANTHC—one that excluded only a handful of items and required SCF to safeguard the information from improper use, strongly suggests that SCF's primary purpose in seeking ANTHC's information is not to ensure better governance decisions but to use the information for its own advantage.

SCF's 20-year effort to obtain ANTHC's confidential or privileged information under circumstances where it would have no duty of loyalty to ANTHC illustrates why preserving the duties of loyalty and confidentiality undiminished is so important to ANTHC's well-being. Additionally, it explains why it is important that the ANTHC Board—which is ultimately ruled by a majority vote of Directors—be allowed to exercise its authority to enact policies that preserve ANTHC's independence. Because competition can create conflicts of interest related to SCF and ANTHC—and between SCF and the other selecting entities—it is appropriate for the Board to have policies that address such conflicts when they arise. Put differently, even if it is true that "the relationship between ANTHC and SCF is primarily collaborative,"[17] that would not obviate the need for ANTHC's Board to have the power to adopt policies regarding the dissemination of confidential or privileged information to third parties, including SCF. The Board has in fact adopted such policies. Because they are an appropriate exercise of its inherent authority, meet the business judgment rule test, and in no way conflict with the governance mandates of Section 325, this Court should uphold them rather than interjecting itself into ANTHC's governance. Certainly, the Court should not award ANTHC's most frequent

---

[16] *See* Dkt. 42-7.
[17] SCF Opp. (Dkt. 83) at 5.

ANTHC'S REPLY IN SUPPORT OF ANTHC'S MOTION FOR SUMMARY JUDGMENT
*SCF v. ANTHC*, 3:17-cv-00018-TMB
Page 9
Case 3:17-cv-00018-TMB   Document 104   Filed 10/17/17   Page 11 of 26

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK 99501
*Main 907.277.1900   Fax 907.277.1920*

competitor carte blanche access to all that a Director would have but with none of the concomitant duties.

### B. SCF's governance theory conflicts with Section 325.

#### 1. SCF misdescribes the relief it seeks.

Signaling that it understands the lack of legal support for the relief it seeks in its Complaint, SCF consistently misdescibes what it is asking this Court to do. In its Complaint, SCF asserts that "Congress, through Section 325, requires ANTHC's tribal entity participants to govern ANTHC collectively *and directly* in order to ensure that the more than 200 separate Alaska Tribes have a voice in the governance of ANTHC[.]"[18] By this contention, SCF advances a collective *and* direct role for regional health and other tribal entities in the governance of ANTHC. Likewise, in its Prayer for Relief, SCF asks the Court for:

> An order declaring SCF and the other Designating Entities specified in Section 325 to be participants in the ANTHC consortium under the federal law creating it, entitled to all documents and information necessary to participate in the governance of the consortium, including confidential and/or privileged documents and information, provided SCF and the other Designating Entities agree to maintain the confidentiality of such documents and information[19]

But SCF can point to nothing in the text of Section 325 supporting its direct governance claim, relying instead on snippets of legislative history, general assertions, and rhetoric.[20] Likewise, SCF can identify no basis in Section 325 for its contention that it is entitled to

---

[18] Compl. (Dkt. 2) ¶ 45 (emphasis added); *see also id.* at 5 ("Section 325 requires ANTHC's tribal entity participants to govern ANTHC collectively and directly."); *id.* at 17 (stating that regional health entities require information in order to "participate in the governance of the consortium").

[19] Compl. (Dkt. 2) at 17.

[20] For the reasons outlined in ANTHC's Opposition to SCF's Motion for Summary Judgment (Dkt. 61 at 10-12), the legislative history supports ANTHC, to the extent the Court deems it relevant..

ANTHC'S REPLY IN SUPPORT OF ANTHC'S MOTION FOR SUMMARY JUDGMENT
*SCF v. ANTHC*, 3:17-cv-00018-TMB
Page 10
Case 3:17-cv-00018-TMB   Document 104   Filed 10/17/17   Page 12 of 26

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main 907.277.1900   Fax 907.277.1920

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main 907.277.1900   Fax 907.277.1920

participate in the "governance of the Consortium, including [receiving] confidential and/or privileged documents and information."[21] Nor does SCF explain why Congress would enact Section 325 to solve the legal and logistical problems associated with needing unanimous consent from more than 200 distinct tribal entities with a consortium governed by a single board of directors only to eviscerate that board of directors by either (1) making the organizations themselves directors or by (2) requiring the individuals on the board to prioritize their loyalty to their selecting entities over their fiduciary obligations to the Consortium.

As a result, in its Opposition SCF tries to reposition itself and obscure its assertion that it is entitled to a direct role in ANTHC's governance. It now asserts that "Congress designed ANTHC to be run by its constituent organizations through a representative board."[22] Although this somewhat confusing contention appears to concede at least some role for the Board of Directors, it still conflates the "constituent organizations" who "run" ANTHC with the Board itself. Again, Section 325 states otherwise. The Board (which is comprised of people, not entities) governs ANTHC, not the Regional Health Entities themselves.

> **2.  SCF seeks to eviscerate the new, independent entity that Congress created in Section 325.**

Perhaps the clearest statement of SCF's position is the statement in its Opposition that ANTHC is not in fact a new entity, independent and self-governing, but is rather effectively an operating unit subject to the governance of the existing Regional Health Entities including SCF. SCF argues in its Opposition that Congress was aware of the competition between the Regional

---

[21] Compl. (Dkt. 2) at 17.
[22] SCF Opp. (Dkt. 83) at 1.

ANTHC'S REPLY IN SUPPORT OF ANTHC'S MOTION FOR SUMMARY JUDGMENT
*SCF v. ANTHC*, 3:17-cv-00018-TMB
Page 11

Health Entities and created ANTHC in response to that competition. But, SCF asserts, it did not create a new governance entity when it did so.

SCF's argument clarifies what is at stake in this litigation. Is ANTHC a "new entity," with independent governance entitled to the protections and rights of an independent entity? Or is it simply an operating unit of SCF and the other Regional Health Entities? Does ANTHC's Board govern it, or is it really governed by the entities that select its Board Members?

The answers to all of these questions lie in Section 325, and in particular the four sentences of Section 325(b).[23] ANTHC's position on those matters is straightforward. Congress expressly stated that the Regional Health Entities and other enumerated entities were authorized to form a new entity: the Consortium.[24] Congress then turned to how the Consortium would be governed, a critical question given the history of competition within the Native health system in Alaska. Congress said "[t]he Consortium shall be governed by a 15-member Board of Directors." In that provision, Congress did two things. First, it identified who would govern ANTHC: "a 15-member Board of Directors." There is no ambiguity here. The Board, not anyone else, governs ANTHC.[25] Second, by using the well-understood and recognized legal term "Board of Directors," Congress invoked a body of corporate law dealing with boards of directors – their duties, powers, and responsibilities.[26] Thus, Congress indicated that ANTHC would be governed

---

[23] *See* Dkt. 42-2 (full text of Sections 325 and 326).

[24] *Id.* (Section 325(a)).

[25] *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) ("[T]he mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion.").

[26] *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 615 (2001) ("Words that have acquired a specialized meaning in the legal context must be accorded their *legal* meaning."); *Henry v. United States*, 251 U.S. 393, 395 (1920) ("The law uses familiar legal expressions in their familiar legal sense . . . ."); *Lambert v. Blodgett*, 393 F.3d 943, 966 (9th Cir. 2004) ("Reinforcing our textual analysis is the usual presumption that when

ANTHC'S REPLY IN SUPPORT OF ANTHC'S MOTION FOR SUMMARY JUDGMENT
*SCF v. ANTHC*, 3:17-cv-00018-TMB
Page 12

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main 907.277.1900   Fax 907.277.1920

by an independent board of directors with fiduciary duties to the Consortium, with responsibility for overseeing its overall operations, and with authority to act based on its business judgment.

Second, Congress determined the composition of the Board—one representative of each of the Regional Health Entities and two representatives of the other tribal providers who are not affiliated with a regional health entity. Congress also indicated that each director would be entitled to one vote and that, when consensus cannot be reached, the majority would rule. Having broken the stalemate that had deferred implementation of self-governance over Native health issues in Alaska, Congress took this next step to ensure that no one regional health or tribal entity would exercise disproportionate power over the Board or be able to block decisions supported by a majority of the Board.

By expressly requiring that the Consortium be governed by a Board of Directors composed of representatives, Congress authorized the Regional Health Entities to do exactly what they did—create a non-member organization that has significant ties to and is responsive to the regional health and other tribal entities in the Alaska Tribal Health System while being independent of them and loyal to the mission of ANTHC. This assured that ANTHC could move forward without being deterred by the lack of unanimity among all the tribal leaders in the State. Congress thus ensured that the Board would have the authority necessary to direct and oversee the Consortium's activities. If the majority of the Board approved a disclosure policy, for example, it would be functioning just as Congress intended. That is the essence of Board governance.

---

Congress employs a commonly used phrase like 'adjudicated on the merits,' it intends that term to retain its ordinary meaning.").

ANTHC'S REPLY IN SUPPORT OF ANTHC'S MOTION FOR SUMMARY JUDGMENT
*SCF v. ANTHC*, 3:17-cv-00018-TMB
Page 13

SCF has attacked those decisions, and asks this Court to intervene in the Board's work. But this Court would not be doing Congress's will if it did so. Overturning decisions made by the majority of ANTHC's Board, so long as those decisions satisfy the business judgment rule, would be contrary to Congress's intent. SCF's contrary argument relies on either adding terms and concepts that appear nowhere in the statute, or simply misquoting the statute.

At its core, SCF's governance theory requires that the Court infer that Congress, without ever saying so, intended that the Regional Health Entities would directly manage ANTHC. That argument is simply wrong.[27] Section 325(b) plainly created an independent governance structure that is not composed of the Regional Health Entities but rather populated by individual board members with traditional board member duties to ANTHC.

### C. SCF's governance theory conflicts with corporate law—in particular, the business judgment rule and corporate directors' duties.

Given that Congress said that a "Board of Directors" would govern ANTHC, and given that ANTHC is organized as an Alaska non-profit corporation, it is appropriate to examine corporate law to determine what duties directors owe ANTHC and how courts review board decision-making. In general, courts do not involve themselves in the internal workings of corporations, instead deferring to a board's business judgment in running the company's operations.[28] The business judgment rule serves as the default standard of review and applies to

---

[27] *Burns v. United States*, 501 U.S. 129, 136 (1991) ("An inference drawn from congressional silence certainly cannot be credited when it is contrary to all other textual and contextual evidence of congressional intent.").

[28] *See Brooks v. Horner*, 344 P.3d 294, 301-02 (Alaska 2015) (recognizing that per the business judgment rule "courts are reluctant to substitute their judgment for that of the board of directors unless the board's decisions are unreasonable" (internal quotation marks omitted) (citing *Alaska Plastics, Inc. v. Coppock*, 621 P.2d 270, 278 (Alaska 1980))); *Betz v. Chena Hot Springs Grp.*,

ANTHC'S REPLY IN SUPPORT OF ANTHC'S MOTION FOR SUMMARY JUDGMENT
*SCF v. ANTHC*, 3:17-cv-00018-TMB
Page 14
Case 3:17-cv-00018-TMB   Document 104   Filed 10/17/17   Page 16 of 26

the overwhelming majority of decisions that boards make, including innumerable decisions that are never litigated and that could not legitimately be challenged. As framed by the Delaware Supreme Court in *Aronson v. Lewis*, the rule presumes that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company."[29]

Because the business judgment rule establishes a presumption in favor of the directors, a plaintiff can challenge board decisions only by alleging facts sufficient to overcome the rule.[30] For example, "the duty of loyalty mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally."[31] To overcome the presumption that directors acted loyally and consistent with the company's best interests, a plaintiff must allege facts supporting a reasonable inference that there were not enough independent and disinterested individuals among the directors making the decision to comprise a board majority.[32]

In some cases, a corporate director will hold other positions in other companies, and therefore will be a fiduciary to more than one entity. In those circumstances, the law is clear: "There is *no dilution* of [fiduciary] obligation where one holds dual or multiple directorships" or

---

657 P.2d 831, 835 (Alaska 1982) (noting that "[a]bsent bad faith, breach of a fiduciary duty, or acts contrary to public policy, we will not interfere with . . . management decisions").
[29] 473 A.2d 805, 812 (Del. 1984).
[30] *See Solomon v. Armstrong*, 747 A.2d 1098, 1111 (Del. Ch. 1999) ("Under the business judgment rule, the burden of pleading and proof is on the party challenging the decision . . . .").
[31] *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993).
[32] *See Aronson*, 473 A.2d at 812 (noting that if "the transaction is not approved by a majority consisting of the disinterested directors, then the business judgment rule has no application whatever").

ANTHC'S REPLY IN SUPPORT OF ANTHC'S MOTION FOR SUMMARY JUDGMENT
*SCF v. ANTHC*, 3:17-cv-00018-TMB
Page 15

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main 907.277.1900   Fax 907.277.1920

otherwise confronts the conflicting pull of competing fiduciary roles.[33] In other words, there is

no exception to or dilution of a director's duty of loyalty that would permit a director to breach

that duty or act contrary to the interests of the corporation simply because the director held a

similar position at another company. Where "the interests of the beneficiaries to whom the dual

fiduciary owes duties are aligned, then there is no conflict. But if the interests of the beneficiaries

diverge, the fiduciary faces an inherent conflict of interest."[34]

Two principles are evident. First, when the Board makes a decision to manage the

business (such as enacting a policy or directing management to take a certain action), that

decision is protected by the business judgment rule.[35] SCF concedes as much and sets an

extremely high bar for itself by arguing that the business judgment rule will not protect a

decision to undertake "illegal activity."[36]

Second, dual fiduciaries' duties of loyalty are undivided and require them to act in the

best interests of both entities when it is possible to do so. As ANTHC explained in its Motion for

Summary Judgment, however, there are circumstances when it will be impossible to do so given

the inherent conflicts that may arise in the face of dual fiduciary obligations. Thus, for example,

a dual fiduciary cannot say that they are compelled to do something that would harm Company A

---

[33] *See Weinberger v. UOP, Inc.*, 457 A.2d 701, 710 (Del. 1983) (emphasis added); *see also Phillips v. Insituform of N. Am., Inc.*, No. CIV.A. 9173, 1987 WL 16285, at *10 (Del. Ch. Aug. 27, 1987) (the law does not recognize "a special duty on the part of directors elected by a special class to the class electing them").

[34] *In re Trados, Inc. S'holders Litig.*, 73 A.3d 17, 46-47 (Del. Ch. 2013) (citation omitted); *see also In re Nine Sys. Corp. S'holders Litig.*, No. CIV.A. 3940-VCN, 2014 WL 4383127, at *29 (Del. Ch. Sept. 4, 2014) ("Thus, to discharge his or her fiduciary duties—especially the duty of loyalty—a director must put the interests of the stockholders above self-interest and, by extension, the interests of the other beneficiaries to whom the director may also owe fiduciary duties.").

[35] *See* ANTHC's Mot. for Summary Judgment (Dkt. 36) at 32-33, 39.

[36] SCF Opp. (Dkt. 83) at 30.

ANTHC'S REPLY IN SUPPORT OF ANTHC'S MOTION FOR SUMMARY JUDGMENT
*SCF v. ANTHC*, 3:17-cv-00018-TMB
Page 16

(like disclose its confidential information) because doing so would be in the best interest of Company B. Rather, the director must recognize and resolve the conflict, or otherwise recuse him or herself from the matter.

### D. SCF's informational sharing theories are inconsistent with federal and corporate law.

SCF appears to advance two theories for why it has a right to unfettered access to ANTHC's confidential and privileged information, notwithstanding ANTHC's Disclosure Policy or other decisions by the Board intended to safeguard ANTHC's sensitive, confidential, proprietary, and privileged information. Neither argument is tenable.

First, based on a misreading of Section 325, SCF appears to argue that federal law gives it a right to ANTHC's confidential and privileged information because SCF is a "participant" in the Consortium or "runs" ANTHC.[37] The argument appears to be that (1) the tribal health entities govern ANTHC, and (2) in order to govern ANTHC, they must have access to information. To the extent SCF's alleged right to information hinges on this governance theory, however, it is wrong for the reasons outlined above—chief among them the fact that Congress stated in Section 325 that "[t]he Consortium shall be governed by a 15-member Board of Directors." Section 325 contradicts SCF's position; it neither expressly nor impliedly requires ANTHC to share

---

[37] *See* Compl. (Dkt. 2) ¶ 49 ("The Disclosure Policy as currently drafted restricts the Designating Entities' ability to access information and materials that are presented to the ANTHC Board of Directors and its committees in executive session[.] . . . SCF contends that the Disclosure Policy conflicts with both federal law Section 325 and Alaska law, and is illegal and void as drafted."); *id.* at 17 (seeking declaration that SCF is "entitled to all documents and information necessary to participate in the governance of the consortium"); *see also* SCF Opp, (Dkt. 83) at 30 ("ANTHC's Congressionally appointed designating entities, including SCF, have a right to information critical to ANTHC's governance.").

ANTHC'S REPLY IN SUPPORT OF ANTHC'S MOTION FOR SUMMARY JUDGMENT
*SCF v. ANTHC*, 3:17-cv-00018-TMB
Page 17
Case 3:17-cv-00018-TMB   Document 104   Filed 10/17/17   Page 19 of 26

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main 907.277.1900   Fax 907.277.1920

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK 99501
*Main 907.277.1900 Fax 907.277.1920*

information beyond what is shared with the Board itself. Indeed, knowing that it has no valid argument based on federal or corporate law, SCF simply assumes what it is trying to prove.[38]

SCF's second theory appears to be that, even if SCF does not legally govern ANTHC, it still has a right to the information because it must be able to advise its representative as to ANTHC's policies and decision-making.[39] This "advisory" theory has no specificity and no factual basis. For example, SCF does not explain why its selected Director would somehow be misinformed or ignorant of SCF's views on a particular matter, or, even if the Director did feel the need to seek input from SCF, why disclosure of confidential and privileged information would be necessary in that instance. In addition, SCF's views on what its selected Director must receive does not overcome the majority of the Board's decision to enact the Disclosure Policy in which the other Directors determined that such wide-ranging sharing of confidential and privileged information was not necessary to govern ANTHC effectively or to represent their organizations appropriately.[40]

Notwithstanding the fact that Directors' selecting entities do not have a right to ANTHC's confidential and privileged information, ANTHC permits information sharing pursuant to reasonable policies. In addition to listing a broad array of materials that can be accessed, the Disclosure Policy states that sensitive, confidential, proprietary, and privileged information may be provided to Tribal Co-Signers of the Alaska Tribal Health Compact "in

---

[38] SCF Opp. (Dkt. 83) at 30 ("But what ANTHC cannot do is hide behind the business judgment rule to justify its decision to violate federal law and withhold information to which SCF is entitled.").
[39] SCF Opp. (Dkt. 83) at 29 ("Section 325 requires ANTHC to make information available to SCF (through its designated directors) so that SCF can advise its designated directors.").
[40] *See* ANTHC's Mot. for Summary Judgment (Dkt. 36) at 41 (explaining that courts uphold corporate disclosure policies).

appropriate cases if adequate safeguards are in place to protect the integrity, confidentiality and use of the information, such as a data-use agreement, a confidentiality or non-disclosure agreement, or a common interest or joint defense agreement."[41]  The Disclosure Policy does not impart a rigid mechanism to be used uniformly regardless of the nature of the sensitive information at issue, but rather provides flexibility for fashioning an appropriate method to safeguard certain information based on its specific character.

Contrary to the impression SCF has tried to create, ANTHC offered to provide additional information to SCF subject to "adequate safeguards," and exchanged a number of drafts of confidentiality agreements with SCF before SCF filed this lawsuit. ANTHC was still attempting to negotiate a mutually acceptable confidentiality agreement when SCF filed this case.

In light of the wide array of information already available to SCF (1) automatically under ANTHC's disclosure policy, (2) by agreement under ANTHC's disclosure policy, and (3) via existing agreements and arrangements with respect to ANMC, the issues that apparently prevented the SCF from agreeing to ANTHC's proposals cause concern. It is hard to understand why SCF would legitimately need to know in exact detail what was said in executive session; would need access to all information shared in confidence by third parties, including other tribal health organizations relying on ANTHC for consultation and technical assistance and those exploring new business transactions under non-disclosure agreement, *and* would need it without any restraints on its use or redisclosure. In short, as it has been doing for 20 years, SCF is seeking to parlay its ability to select a single director into a competitive advantage.

---

[41] Dkt. 42-7 (Disclosure Policy) at 2; *see also supra* note 2.

ANTHC'S REPLY IN SUPPORT OF ANTHC'S MOTION FOR SUMMARY JUDGMENT
*SCF v. ANTHC*, 3:17-cv-00018-TMB
Page 19

**STOEL RIVES** LLP
510 L Street, Suite 500, Anchorage, AK 99501
*Main* 907.277.1900   *Fax* 907.277.1920

### E. SCF asks this Court to improperly interfere with the ANTHC Board's exercise of Indian self –governance.

Congress has expressed a clear preference for deferring to tribal self-governance.[42] In passing Section 325, Congress left it up to ANTHC to decide how to address conflicts of interest, if and when they arise. The extent to which Congress took a 'hands off' approach in shaping ANTHC's governance is evidenced by the fact that Congress did not even dictate in Section 325 what form ANTHC should take, whether non-profit organization, member corporation, or otherwise. The Regional Health Entities made this decision for themselves in 1997 when they created ANTHC and they gave the ANTHC Board of Directors the authority to change it, if a majority of the entire Board of Directors agrees. So far, the Board of Directors has rejected SCF's proposal to transform ANTHC into member-based organization and has declined to eviscerate the fiduciary obligations of individual Directors to in response to SCF's arguments.

ANTHC's Board has exercised its authority and discretion well within the bounds set by Congress. This Court should reject SCF's request that it improperly interfere with the Board's exercise of self-governance.

### F. ANTHC's requested relief is consistent with federal and corporate law.

Under ANTHC's policies and common law ANTHC Directors are entitled to *all* information necessary and appropriate for the governance of ANTHC, unless the Directors face an irreconcilable conflict of interest between their duties to ANTHC and some other interests, including their duties to the entity they represent. The declarations that ANTHC requests are entirely consistent with that view. ANTHC seeks an order declaring that ANTHC Directors have

---

[42] *See, e.g.*, *Michigan v. Bay Mills Indian Cmty.*, 134 S. Ct. 2024, 2032 (2014) (recognizing that "[a]lthough Congress has plenary authority over tribes, courts will not lightly assume that Congress in fact intends to undermine Indian self-government").

ANTHC'S REPLY IN SUPPORT OF ANTHC'S MOTION FOR SUMMARY JUDGMENT
*SCF v. ANTHC*, 3:17-cv-00018-TMB
Page 20
Case 3:17-cv-00018-TMB   Document 104   Filed 10/17/17   Page 22 of 26

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK 99501
*Main 907.277.1900   Fax 907.277.1920*

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK 99501
*Main 907.277.1900    Fax 907.277.1920*

an undivided duty of loyalty to ANTHC that requires Directors "to identify any potential conflict of interest they may have and, if they cannot share details regarding the potential conflict, to recuse themselves from discussions and votes that involve the potential conflict of interest."[43] ANTHC also seeks an order declaring that "directors are not entitled to ANTHC documents and information if those materials will be used in a way that is inconsistent with directors' undivided duty of loyalty to ANTHC."[44]

This declaration is necessary because SCF took a contrary position leading up to this litigation and in its Complaint. For example, SCF alleged that not only do the ANTHC Directors it selects have an "absolute right" to ANTHC documents and information "without limitation or reservation," they have a "*duty to convey* such documents and information to their designating entity, SCF." [45] Thus, contrary to the law outlined above (and certain statements in its Opposition), SCF does contend that, in certain circumstances, their selected Director's duty to SCF and its board will trump the contrary interest of ANTHC.

Not only that, but SCF contends that the Director it selected must share ANTHC's confidential and privileged information with SCF even when a majority of the ANTHC Board has decided otherwise, even when it results in a waiver of privilege, even when it is inconsistent with ANTHC's commitments and responsibilities to third parties, and even when it undermines the candor among Directors that is needed for effective governance. The ANTHC Board adopted

---

[43] ANTHC Amended Answer and Counterclaim (Dkt. 21) at 30-31.
[44] *Id.* at 31.
[45] Compl. (Dkt. 2) at 17; *see also id.* at 12 ("[SCF's designated directors] also have fiduciary duties to their Designating Entity, SCF, to share with SCF Board of Directors ANTHC information and documents provided to them as ANTHC Directors, as necessary in order to receive advice, input, and direction from the SCF Board of Directors about the governance of ANTHC.").

ANTHC'S REPLY IN SUPPORT OF ANTHC'S MOTION FOR SUMMARY JUDGMENT
*SCF v. ANTHC*, 3:17-cv-00018-TMB
Page 21

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main 907.277.1900 Fax 907.277.1920

the Code of Conduct and the Disclosure Policy to guide Directors' decision-making and to safeguard sensitive, confidential, proprietary, and privileged information. As ANTHC explained in its Motion for Summary Judgment, both policies involve the exercise of business judgment to which this Court should defer.[46]

The confidential and privileged information that must be provided to the *entities* that selected the ANTHC Directors, on the other hand, is much more limited. Section 325 and common law do not require ANTHC to share any of its confidential and privileged information with the selecting entities. Accordingly, ANTHC seeks an order declaring that, "among other restrictions and consistent with the duty of loyalty, ANTHC may restrict the flow of information from directors to their Regional Health Entities when directors face conflicts of interest, directors have competing duties between ANTHC and the Regional Health Entity that they represent, or such information may be used for the benefit of Regional Health Entities in competition with ANTHC."[47]

ANTHC also seeks an order declaring the legality of its Code of Conduct and Disclosure Policy.[48] ANTHC's Code of Conduct and Disclosure Policy simply embody what the common law duties of loyalty and confidentiality require.[49] This means that, as a matter of law, the

---

[46] ANTHC's Mot. for Summary Judgment (Dkt. 36) at 38-42.
[47] ANTHC Amended Answer and Counterclaim (Dkt. 21) at 31.
[48] *Id.*
[49] *Compare* ANTHC's Mot. for Summary Judgment (Dkt. 36) at 28-31 (detailing the requirements of the duty of loyalty, which encompasses the duty of confidentiality) with *id.* at 8-10 (detailing the Code of Conduct and Disclosure Policy); *see, e.g., Holdgreiwe v. Nostalgia Network, Inc.*, No. CIV.A. 12914, 1993 WL 144604, at *6 (Del. Ch. Apr. 29, 1993) (holding that the duty of confidentiality places upon directors "an obligation to maintain the confidences of [the entity]; to use its confidential information only to inform discussion among directors and action by the board or a committee"); *Kerbawy v. McDonnell*, No. C.A. 10769-VCP, 2015 WL 4929198, at *22 (Del. Ch. Aug. 18, 2015) ("As a legal matter, the proposition . . . that '[i]nherent

ANTHC'S REPLY IN SUPPORT OF ANTHC'S MOTION FOR SUMMARY JUDGMENT
*SCF v. ANTHC*, 3:17-cv-00018-TMB
Page 22
Case 3:17-cv-00018-TMB  Document 104  Filed 10/17/17  Page 24 of 26

legality of the Code of Conduct and Disclosure Policy are not dependent on or affected by the absence or presence of a specific point of competition or conflict of interest.[50] ANTHC's requested declaration is necessary because an ANTHC Director's ability to share ANTHC's confidential and privileged information with entities outside the ANTHC boardroom must be consistent with the Director's common law duties of loyalty and confidentiality to ANTHC, which is precisely what the Code of Conduct and Disclosure Policy require.[51]

## III.    CONCLUSION

For the foregoing reasons, ANTHC respectfully asks the Court to grant ANTHC's summary judgment motion and to award ANTHC its reasonable attorneys' fees and costs.

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main 907.277.1900    Fax 907.277.1920

---

in the duty of loyalty is an obligation to protect the corporation by maintaining the confidentiality of its sensitive information,' seems indisputable." (quoting J. Travis Laster & John Mark Zeberkiewicz, *The Rights and Duties of Blockholder Directors*, 70 Bus. L. 33, 52 (2015))); *Shocking Techs., Inc. v. Michael*, No. C.A. 7164-VCN, 2012 WL 4482838, at *11 (Del. Ch. Oct. 1, 2012) ("[A] dissident board member has significant freedom . . . to share her concerns with other shareholders . . . [but] internal disagreement will not generally allow a dissident to release confidential corporate information."), *vacated on other grounds*, 2015 WL 3465825 (Del. Ch. May 29, 2015).

[50] *Cf. Kortum v. Webasto Sunroofs, Inc.*, 769 A.2d 113 (Del. Ch. 2000) (discussing approvingly Kortum's self-imposed restriction on sharing WSI's confidential information with Hollandia, a competitor to WSI owned and operated by WAG, since Kortum sat on the board of WSI and was WAG's CEO).

[51] Assessing the potential for conflicts between ANTHC and the entity seeking the information is relevant because under ANTHC's Disclosure Policy it may grant regional health entities access to ANTHC's confidential and privileged information when the outside entity has a "legitimate interest" in such information. If the outside entity has a conflict of interest, that would ordinarily preclude that interest from being "legitimate" and preclude sharing unless ANTHC and the regional health entity can reach a mutual agreement on limitations of use and other safeguards.

ANTHC'S REPLY IN SUPPORT OF ANTHC'S MOTION FOR SUMMARY JUDGMENT
*SCF v. ANTHC*, 3:17-cv-00018-TMB
Page 23

DATED: October 17, 2017

STOEL RIVES LLP

By:/s/ James E. Torgerson
    JAMES E. TORGERSON
    SARAH LANGBERG

    Attorneys for Defendant and Counterclaimant
    Alaska Native Tribal Health Consortium

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2017, I filed a true and correct copy of the foregoing document with the Clerk of the Court for the United States District Court – District of Alaska by using the CM/ECF system. Participants in this Case No. 3:17-cv-00018-TMB who are registered CM/ECF users, and who are listed below, will be served by the CM/ECF system.

Louisiana W. Cutler
Shane K. Kanady
Dorsey & Whitney, LLC
1031 W 4th Ave., Ste. 600
Anchorage, AK 99501
cutler.louisiana@dorsey.com
kanady.shane@dorsey.com

William D. Temko
Munger, Tolles & Olson LLP
355 S Grand Ave., Ste. 3500
Los Angeles, CA 90071
William.Temko@mto.com

                                        /s/ James E. Torgerson
                                        James E. Torgerson

94445322.1 0009312-00008

ANTHC'S REPLY IN SUPPORT OF ANTHC'S MOTION FOR SUMMARY JUDGMENT
*SCF v. ANTHC*, 3:17-cv-00018-TMB
Page 24