James E. Torgerson (Bar No. 8509120)
jim.torgerson@stoel.com
Sarah Langberg (Bar No. 1505075)
sarah.langberg@stoel.com
STOEL RIVES LLP
510 L Street, Suite 500
Anchorage, AK 99501
Telephone: 907.277.1900
Facsimile: 907.277.1920

Attorneys for Defendant and Counterclaimant
Alaska Native Tribal Health Consortium

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main 907.277.1900  Fax 907.277.1920

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SOUTHCENTRAL FOUNDATION,<br><br>      Plaintiff and Counterclaim-Defendant,<br><br>     v.<br><br>ALASKA NATIVE TRIBAL HEALTH<br>CONSORTIUM,<br><br>      Defendant and Counterclaimant. | Case No.: 3:17-cv-00018-TMB<br><br>ANTHC'S REPLY IN SUPPORT OF ITS<br>MOTION TO DISMISS PURSUANT TO<br>FED. R. CIV. P. 12(B)(1) (SOVEREIGN<br>IMMUNITY) |

# I.    INTRODUCTION

As described in its opening brief, ANTHC is a tribally controlled, nonprofit tribal organization that provides health services to Alaska Native beneficiaries under federal law.[1] It is a statutorily defined "tribe," operating under a compact and funding agreement with the federal government on behalf of more than two hundred Alaska Native tribes to provide these services. Pursuant to federal law, ANTHC is entitled to the rights of its authorizing tribes, including the right to sovereign immunity from unconsented suit. Alternatively, ANTHC is entitled to sovereign immunity as the arm of hundreds of Alaska Native tribes. ANTHC did not waive its sovereign immunity by asserting counterclaims in this lawsuit. In an effort to salvage its claims attacking ANTHC's self-governance, SCF misdescribes the law on tribal sovereign immunity in several important ways. As explained below, both Congress and the courts recognize that entities like ANTHC are entitled to tribal sovereign immunity in furtherance of tribal self-governance. This Court lacks subject matter jurisdiction over this intratribal governance dispute, and it should dismiss SCF's lawsuit.

# II.    ARGUMENT

## A.    ANTHC Has Sovereign Immunity.

ANTHC has sovereign immunity as a statutorily defined tribe, an agency of the tribes, and as an arm of more than two hundred tribes on whose behalf ANTHC operates. "In the context of a Rule 12(b)(1) motion to dismiss on the basis of tribal sovereign immunity, 'the party asserting subject matter jurisdiction has the burden of proving its existence,' i.e., that immunity does not bar the suit."[2] SCF has failed to satisfy its burden to show that the Court has jurisdiction here.

### 1.    ANTHC is a statutorily defined tribe.

SCF's argument rests on a flawed premise. SCF claims that only federally recognized tribes – which SCF defines as those named on an annual list prepared by the Department of Interior – and certain subordinate tribal entities of those tribes are entitled to sovereign

---

[1] *See generally* Dkt. 30 at 1-7; Dkt. 32 (Declaration of Andy Teuber) ¶¶ 3-8.

[2] *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015) (quoting *Miller v. Wright*, 705 F.3d 919, 923 (9th Cir. 2013)); *see also Rosales v. Dutschke*, 2017 WL 3730500, at *3 (E.D. Cal. Aug. 30, 2017) (same).

ANTHC'S REPLY IN SUPPORT OF MOTION TO DISMISS (SOVEREIGN IMMUNITY)
*SCF v. ANTHC*, 3:17-cv-00018-TMB
Page 1

**STOEL RIVES** LLP
510 L Street, Suite 500, Anchorage, AK 99501
*Main* 907.277.1900    *Fax* 907.277.1920

immunity.[3] This is false. The authorities that SCF relies upon simply state that these are two types of entities that are entitled to sovereign immunity, but the authorities do not preclude others.[4] In fact, a tribe may also be entitled to sovereign immunity if it is organized under the Indian Reorganization Act of 1934, or if it satisfies a common law test, or "if it is recognized as [a tribe] by the federal government."[5] ANTHC has been recognized as, and statutorily defined to be, a "tribe" by Congress.

The Indian Self-Determination and Education Assistance Act ("ISDEAA") provides that an inter-tribal consortium that has been authorized by an Indian tribe "to plan for or carry out programs, services, functions, or activities (or portions thereof) on its behalf under this subchapter [Title V] . . . shall have the rights and responsibilities of the authorizing Indian tribe (except as otherwise provided in the authorizing resolution or in this subchapter)."[6] Congress further defined "inter-tribal consortium" to mean "a coalition of two [or] more separate Indian tribes that join together for the purpose of participating in self-governance, including tribal organizations."[7] Importantly, Congress made clear that ANTHC was exactly the inter-tribal consortium that it had in mind when crafting this definition:

> [D]uring the Title III Demonstration Project the IHS [Indian Health Service] authorized inter-tribal consortia, such as the co-signers to the Alaska Tribal Health Compact, to participate in the Project and that participation has experienced great success. The definition of "inter-tribal consortium" . . . . would include consortia such as those involved in the Alaska Tribal Health Consortium.[8]

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main 907.277.1900   Fax 907.277.1920

---

[3] *See* Amended Opposition of Plaintiff Southcentral Foundation to Defendant ANTHC's Motion to Dismiss Pursuant to FRCP 12(B)(1) (Sovereign Immunity) ("Opp.") (Dkt. 89) at 2, 5 & n.14 (citing 82 Fed. Reg. 4915-5920 (Jan. 17, 2017)).

[4] *See id.* at 2 & n.1.

[5] *See Native Village of Tyonek v. Puckett*, 957 F.2d 631, 635 (9th Cir. 1992); *Alaska v. Native Village of Venetie*, 856 F.2d 1384, 1387 (9th Cir. 1988).

[6] 25 U.S.C. § 5381(b) (defining the inter-tribal consortium as an "Indian tribe").

[7] 25 U.S.C. § 5381(a)(5).

[8] S. Rep. 106-221, at 6 (Nov. 9, 1999).

ANTHC'S REPLY IN SUPPORT OF MOTION TO DISMISS (SOVEREIGN IMMUNITY)
*SCF v. ANTHC*, 3:17-cv-00018-TMB
Page 2

By statutorily defining ANTHC as a tribe and as an entity that has the rights of authorizing tribes, which includes sovereign immunity, Congress recognized ANTHC as a "tribe" with sovereign immunity.[9]

SCF argues that ANTHC lacks the requisite authorization, and the attendant right to sovereign immunity, because Congress prevented such authorization. In particular, SCF asserts Congress did not require any further resolutions from the tribes in order for ANTHC to come into existence, and therefore ANTHC lacks any authorization and any conferred rights whatsoever.[10]

SCF's argument fails for two reasons. First, it proves too much. Under Title V of ISDEAA, tribes must use a tribal resolution to request the Secretary of Health and Human Services to enter into self-governance agreements with inter-tribal consortia like ANTHC.[11] Under SCF's theory, ANTHC could not have operated at all for the past two decades because of the lack of tribal resolutions. Instead, Congress created an explicit exception to the requirement for tribal resolutions for ANTHC,[12] concluded that ANTHC was a "great success," and entered into a self-governance compact and funding agreement with ANTHC for the benefit of hundreds of Alaska Native tribes and villages, confirming that ANTHC was duly authorized.[13] Absent such authorization, ANTHC could not have entered into the Alaska Tribal Health Compact or its funding agreement with the United States.[14] By law, ANTHC is authorized to act on behalf of more than two hundred Alaska Native tribes and villages pursuant to Section 325.

---

[9] Tribal sovereignty is subject to the plenary control of Congress. *See Santa Clara Pueblo v. Martinez*, 436, U.S. 49, 58 (1978).

[10] *See* Opp. at 2 (claiming ANTHC lacks resolutions from tribes that confer sovereign immunity or tribal authority to act on behalf of the tribes in the provision of healthcare services); *see also id.* at 6, 11-12.

[11] *See* 25 U.S.C. § 5321(a)(1).

[12] Section 325(a) of Public Law 105-83 (Section 325).

[13] It is worth noting that SCF litigated essentially the same question when Section 325 was signed into law. *See Cook Inlet Treaty Tribes v. Shalala*, 166 F.3d 986 (9th Cir. 1999). SCF was an appellee when the Ninth Circuit held that "Section 325(d) expressly authorizes CIRI/SCF to enter into 'funding agreements' under the ISDEA[A] without seeking the approval of any village or tribe, 'no matter where located.'" *Id.* at 990. SCF's newfound position that ANTHC lacks authority is at odds with SCF's prior stance and with binding precedent.

[14] *See, e.g.*, 25 U.S.C. § 5321(a)(1); *Cook Inlet Native Ass'n v. Bowen*, 810 F.2d 1471, 1472 (9th Cir. 1987) (noting that the ISDEAA requires that any contracts or grants to the tribal

---

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main 907.277.1900   Fax 907.277.1920

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK 99501
*Main 907.277.1900   Fax 907.277.1920*

Second, SCF's argument has it backwards. Under Section 5381(b) of ISDEAA, ANTHC has "the rights and responsibilities of the authorizing tribe (*except as otherwise provided in the authorizing resolution* or in this subchapter)." Since ANTHC is not required to have individual resolutions authorizing its participation in self-governance agreements, there are no resolution provisions limiting its tribal rights or responsibilities under Title V. In the absence of such an express limitation in Title V – and SCF identifies none – ANTHC is entitled to exercise the rights and responsibilities of the tribes on whose behalf it compacts.[15] By law, the default is the inclusion of all of the tribe's rights, including sovereign immunity.

This is consistent with Congress's purpose in enacting Section 325. ANTHC must act on behalf of all of Alaska's tribes in providing statewide health services.[16] If individual tribes could impose various limitations on ANTHC – some of which may well be inconsistent with others – then ANTHC's ability to provide all statewide health services that had previously been provided through the Indian Health Service would be compromised. Congress intended for Section 325 to provide the framework for self-governance in Alaska as to all of these services, despite the lack of complete tribal unanimity on all related issues.[17]

SCF notes that a different portion of the ISDEAA has a broad definition of "Indian tribe" that would include ANCSA corporations, and argues that since courts have repeatedly confirmed that ANCSA corporations are not entitled to sovereign immunity, then ANTHC must not be entitled to sovereign immunity, either.[18] SCF's argument misses the mark. The general definition of "Indian tribe" that SCF relies upon does not address the issue of whether tribal organizations have any rights or responsibilities of authorizing tribes. Section 5381(b), on the other hand, does address the issue and extends those rights to tribal organizations and inter-tribal

---

organization must be "[u]pon request of an Indian tribe"); *Cook Inlet Treaty Tribes*, 166 F.3d at 991 (noting that "Section 325 effected a general restructuring of the means for delivery of health services to Alaska Natives by authorizing a new consortium for the provision of statewide health services" and that it makes "clear that the contracts or funding agreements are authorized without 'any further authorizing resolutions from any other village or tribe, no matter where located'").

[15] S. Rep. No. 105-56, at 110 (July 22, 1997), 1997 WL 414606 (describing the "over 200 recognized tribes, regional entities, and various concerned organizations" that underlay ANTHC).

[16] Section 325(a).

[17] S. Rep. No. 105-56, at 110 (July 22, 1997), 1997 WL 414606.

[18] Opp. at 11 & nn.40-41 (citing 25 U.S.C. § 5304(e)).

ANTHC'S REPLY IN SUPPORT OF MOTION TO DISMISS (SOVEREIGN IMMUNITY)
*SCF v. ANTHC*, 3:17-cv-00018-TMB
Page 4

consortia compacting under Title V.  In 1997, Congress authorized the formation of ANTHC and allowed it to participate in ISDEAA without authorizing resolutions.[19]  In 1999, Congress declared the consortium to be a "great success" and confirmed that the forthcoming definition of "inter-tribal consortium" was intended to cover ANTHC.[20]  That same definition, adopted by Congress in 2000, provides that the consortium *shall* have the rights of the tribes.[21]  Nothing in ISDEAA's general definition of "tribes" undermines Congress's later and more specific determination that inter-tribal consortia should have the tribes' rights when acting on the tribes' behalf under ISDEAA and that ANTHC could act on the tribes' behalf without obtaining authorizing resolutions.

SCF also argues that Section 5332 of ISDEAA "merely confirms" that tribes' existing immunity from suit is preserved by the statute, rather than conferring sovereign immunity on an entity, "and that the statutorily defined 'tribes' who already have sovereign immunity do not lose such immunity by virtue of contracting with the federal government."[22]  But ANTHC does not contend that Section 5332 is the source of its sovereign immunity, and ANTHC agrees that its sovereign immunity has not been waived through ISDEAA.[23]  As a statutorily defined "tribe" with the rights and responsibilities of other tribes, ANTHC did not lose its immunity by virtue of contracting with the federal government.

SCF incorrectly claims that ANTHC was "created by Congress . . . not by FRTs [federally recognized tribes],"[24] but this assertion is objectively incorrect.  Through Section 325, Congress provided authorization for Metlakatla Indian Community, a federally recognized tribe,[25] and a number of regional health entities representing hundreds of tribes, villages, Indian Reorganization Act Councils, and others to form ANTHC.[26]  ANTHC was created by and for the tribes, both directly and through their duly authorized regional health entities.  ANTHC is a

---

[19] Section 325(a) (approved Nov. 14, 1997).
[20] S. Rep. 106-221, at 6 (Nov. 9, 1999).
[21] Tribal Self-Governance Amendments of 2000, Pub. L. No. 106-260, § 4 (Section 501(a)(5)), 114 Stat. 711, 713 (2000) (now located at 25 U.S.C. § 5381(a)(5)).
[22] Opp. at 10-11.
[23] *See* Dkt. 30 at 12 & n.49.
[24] Opp. at 2.
[25] *See* 82 Fed. Reg. 4915, 4919 (Jan. 17, 2017).
[26] Section 325(a).

ANTHC'S REPLY IN SUPPORT OF MOTION TO DISMISS (SOVEREIGN IMMUNITY)
*SCF v. ANTHC*, 3:17-cv-00018-TMB
Page 5

*tribal* health consortium that operates on behalf, and for the benefit, of Alaska's 229 federally recognized tribes and Alaska Natives who are entitled to health care and related services.[27]

SCF's efforts to suggest that ANTHC's connection to these federally recognized tribes is insufficient cannot be squared with the facts or the law. As U.S. Senator Ted Stevens explained in the very letter cited by SCF, Section 325 was intended to set out a framework for governance of the Alaska Native Medical Center and "provide[] for *representation of all recognized Native entities in Alaska*. A consortium [i.e., ANTHC] of regional Native health organizations and at-large representatives would manage ANMC . . . ."[28] ANTHC provides this representation for all recognized Alaska Native entities, including federally recognized tribes. ANTHC is not a creation of Congress, but rather an entity created by and for Alaska Native tribes (and regional health authorities acting under tribal authority) to enter into self-governance agreements to administer health care programs and services for Alaska Native people. As a statutorily defined "tribe" with the rights and responsibilities of the hundreds of tribes that authorized ANTHC to act on their behalf, ANTHC is entitled to sovereign immunity.

### 2. ANTHC is an arm of tribes.

In addition to being a statutorily defined "tribe" with the sovereign immunity rights of the more than two hundred tribes that have authorized it to carry out numerous healthcare activities, ANTHC also has sovereign immunity as an arm of those tribes. For this purpose, "[t]ribal immunity extends to both corporate and governmental activities of the tribe. It extends to agencies and subdivisions of the tribe . . . ."[29] It is undisputed that tribal status – and the right to sovereign immunity – extends to entities that serve as the arm of multiple tribes.[30] As explained below, ANTHC is an arm of Alaska's sovereign tribes.

---

[27] *See* Dkt. 32 ¶¶ 3-8.

[28] Dkt. 89-1 at 1 (emphasis added).

[29] *Marceau v. Blackfeet Hous. Auth.*, 455 F.3d 974, 978 (9th Cir. 2006) (internal citations omitted)), *superseded in part on other grounds*, 540 F.3d 916 (9th Cir. 2008).

[30] *See, e.g.*, *Pink v. Modoc Indian Health Project, Inc.*, 157 F.3d 1185, 1187-88 (9th Cir. 1998); *Taylor v. Alabama Intertribal Council Title IV*, 261 F.3d 1032 (11th Cir. 2001); *see also* Opp. at 13-14 & n.51 (citing *Pink* and *Taylor* and recognizing that sovereign immunity was granted for entities made up of multiple tribes).

ANTHC'S REPLY IN SUPPORT OF MOTION TO DISMISS (SOVEREIGN IMMUNITY)
*SCF v. ANTHC*, 3:17-cv-00018-TMB
Page 6

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
*Main 907.277.1900    Fax 907.277.1920*

In a footnote, SCF argues that ANTHC is not an arm of any tribe and therefore has no sovereign immunity.[31] Focusing exclusively on a single test recently employed in the Ninth Circuit, SCF fails to acknowledge that courts in the Ninth Circuit have used more than one approach in determining whether an entity is an arm of the tribe. When quintessentially government services are at issue, like healthcare and housing, these courts have frequently found that a tribal entity was an arm of the tribe when the tribe retained significant control and the entity was "acting as more than a mere business."[32] Importantly, SCF makes no meaningful effort to distinguish *Pink v. Modoc Indian Health Project*, a case in which the Ninth Circuit recognized that a nonprofit corporation acting on behalf of multiple tribes served as an arm of the tribes when providing health services to tribal members under ISDEAA.[33] SCF argues only that *Pink* is not analogous because ANTHC was not created and is not controlled solely by federally recognized tribes.[34] ANTHC addresses that argument below, but SCF's inability to distinguish *Pink* from ANTHC in any other respect is telling. Just like the arm of the sovereign tribes in *Pink*, ANTHC is a nonprofit corporation acting on behalf of multiple tribes, which are represented on its Board, to provide health services under ISDEAA to tribal members.[35] SCF fails to articulate any valid basis why ANTHC should be deprived of the same sovereign immunity enjoyed in *Pink*.

ANTHC "is not simply a business entity that happens to be run by a tribe or its members, but, rather, occupies a role quintessentially related to self-governance."[36] As explained in its opening brief and above, ANTHC was designed and created to allow Alaska Natives to participate meaningfully in self-governance, transforming their healthcare into something more responsive to their needs across Alaska. In a comparable circumstance, the Ninth Circuit found that a tribal housing authority "functions as an arm of the tribal government" when it provided safe and affordable housing to members of the tribe and received funding under the Native

---

[31] Opp. at 9 n.33.
[32] *Pink*, 157 F.3d at 1188.
[33] *See id.* at 1185.
[34] *See* Opp. at 13. SCF baldly asserts that the entities that formed ANTHC do not have sovereign immunity, but offers no evidence in support of this assertion.
[35] *See generally* Dkt. 32.
[36] *EEOC v. Karuk Tribe Hous. Auth.*, 260 F.3d 1071, 1080 (9th Cir. 2001).

ANTHC'S REPLY IN SUPPORT OF MOTION TO DISMISS (SOVEREIGN IMMUNITY)
*SCF v. ANTHC*, 3:17-cv-00018-TMB
Page 7

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main 907.277.1900   Fax 907.277.1920

American Housing Assistance and Self-Determination Act, which "was particularly concerned with the right of Indian self-determination and tribal self-governance."[37] ANTHC provides vital healthcare services to Alaska Native beneficiaries through a consortium whose very purpose is to enable Alaska Natives to collectively manage their public health resources, thereby promoting Alaska Native self-determination and self-governance in the delivery of healthcare statewide.

Likewise, in *J.L. Ward Associates, Inc. v. Great Plains Tribal Chairmen's Health Board*, a group of tribes formed a non-profit corporation to provide the Indian people of the Great Plains area with a single entity (i.e., a consortium) to participate with the Indian Health Service on health matters, including through self-determination contracts under ISDEAA.[38] In finding that the tribes' sovereign immunity extended to this tribal entity, the court relied in significant part upon the fact that the entity's purpose "to act as a formal representative of the tribes to the federal government and to provide health care and related services to member Indian tribes . . . are closer to the functions of a tribal government than a business."[39] The court also noted that the purposes of sovereign immunity would be furthered by granting it here because the entity was representing the tribes' health care interests to the federal government and was establishing health care programs that were unique to the tribes' needs.[40] This, in turn, promoted the tribes' cultural autonomy and tribal self-determination.[41] Finally, the court found that its conclusion was bolstered by the entity's participation in ISDEAA contracts, "an act whose very purpose was to promote tribal autonomy and self-determination."[42] ANTHC's actions in representing all of Alaska's 229 tribes' interests to the federal government, participating in ISDEAA funding agreements, establishing health care programs, and furthering Alaska Natives' tribal self-determination all help to confirm that ANTHC serves as an arm of the tribes here. Unlike some for-profit business entities, ANTHC "provides benefits other than revenue production to the

---

[37] *Id.* at 1074 (internal quotation omitted). In *Karuk*, the Ninth Circuit found that the EEOC lacked regulatory jurisdiction with respect to employment decisions for this tribal employer.
[38] 842 F. Supp. 2d 1163, 1165-66 (D.S.D. 2012).
[39] *See id.* at 1176 (citing *Pink*, 157 F.3d at 1187; *Gavle v. Little Six, Inc.*, 555 N.W.2d 284 (Minn. 1996); *In re Random*, 658 N.E.2d 989 (N.Y. 1995)).
[40] *See id.* at 1177.
[41] *See id.*
[42] *Id.*

ANTHC'S REPLY IN SUPPORT OF MOTION TO DISMISS (SOVEREIGN IMMUNITY)
*SCF v. ANTHC*, 3:17-cv-00018-TMB
Page 8

tribe."[43]  ANTHC's services and benefits to the Alaska Native tribes and beneficiaries makes ANTHC much more than "a mere business."

The Court should find that ANTHC is entitled to sovereign immunity as an arm of the 229 Alaska Native tribes, consistent with *Pink*, *J.L. Ward*, and the other authorities cited above because it is tribally controlled, serves as "more than a mere business," performs quintessentially governmental functions, and promotes self-governance for Alaska Natives in the healthcare arena.

Even assuming, however, that the test described in *White v. University of California* applies here, SCF misdescribed that test to reach its mistaken conclusion and then misapplied it. The Ninth Circuit uses a five-factor test, not the six-factor version cited by SCF,[44] but ANTHC qualifies as an arm of the tribe under both of those tests.[45]

The first factor – the method of the entity's formation – supports ANTHC's sovereign immunity.  As described above, ANTHC was authorized to enter into self-governance agreements with the Secretary of Health and Human Services on behalf of Alaska's 229 federally

---

[43] *See, e.g.*, *Eagleman v. Rocky Boys Chippewa-Cree Tribal Business Comm. or Council*, 2015 WL 7776887, at *2 (D. Mont. Dec. 2, 2015) (finding that sovereign immunity extends to a tribal housing authority as an "arm of the tribe" when it "provides benefits other than revenue production to the tribe"), *aff'd*, 2017 WL 2684129 (9th Cir. June 21, 2017); *Marceau v. Blackfeet Hous. Auth.*, 455 F.3d 974, 978 (9th Cir. 2006) (noting that tribal sovereign immunity has "generally been held to apply to housing authorities formed by tribes" (internal citations omitted)), *superseded in part on other grounds*, 540 F.3d 916 (9th Cir. 2008).

[44] *Compare White v. University of California*, 765 F.3d 1010, 1025 (9th Cir. 2014) (listing the five factors) *with* Opp. at 9 n.33 (mis-citing *White* as having a six-factor test).  SCF is quoting the test from the Tenth Circuit.  *See Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1187 (10th Cir. 2010).  The Tenth Circuit's test has a sixth factor – whether the purposes of sovereign immunity are served by granting immunity – which also favors a finding of sovereign immunity here.

[45] ANTHC demonstrated its status as an arm of the tribe in its opening brief and the supporting declaration.  ANTHC addressed its formation, purpose, structure and management, the tribes' authorized extension of tribal immunity, and the financial relationship between ANTHC and its tribes.  *See generally* Dkt. 30 at 2-11; Dkt. 32.  SCF's argument that ANTHC did not attempt to show that it was an arm of the tribe is simply erroneous.  In any event, highlighting each element of the test is not a prerequisite for a sovereign immunity finding.  *See, e.g.*, *Team Systems Int'l, LLC v. Haozous*, 2015 WL 2131479, at *3 (W.D. Okla. May 7, 2015) (applying the arm-of-the-tribe test to find sovereign immunity even when the parties did not address the factors); *Allen v. Gold Country Casino*, 464 F.3d 1044, 1045-46 (9th Cir. 2006) (finding that casino was an arm of the tribe despite lower court's assumption without analysis that sovereign immunity applied).

ANTHC'S REPLY IN SUPPORT OF MOTION TO DISMISS (SOVEREIGN IMMUNITY)
*SCF v. ANTHC*, 3:17-cv-00018-TMB
Page 9

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK  99501
*Main 907.277.1900    Fax 907.277.1920*

recognized tribes in order to provide statewide health services for all Alaska Native beneficiaries. Through Section 325, Congress determined that no further resolutions would be required from these hundreds of tribes, villages, and others in order for ANTHC to perform this work on behalf of the tribes and their beneficiaries. So, while ANTHC was not created pursuant to tribal law, it was created by Alaska's tribes, both directly and through tribally authorized regional health entities. ANTHC's creation and its ongoing activities in providing this healthcare are dependent upon government approval under the auspices of the tribes on several levels.[46]

The second factor – ANTHC's purpose – weighs heavily in ANTHC's favor. Its purpose is "to secure Alaska Native people, Tribes and tribal organizations an organized voice and participation in decisions, developments and implementation of Alaska Native management of the Alaska Native Medical Center and the Alaska Area Office of the Indian Health Service and to carry out the purposes of Section 325 of Public Law 105-83."[47] ANTHC's aim, consistent with its activities under the Indian *Self-Determination* and Education Assistance Act, is to facilitate Alaska Natives' self-determination through the delivery of health care and certain other services statewide.[48] As the Ninth Circuit has recognized, "preservation of tribal self-determination [is one] of the central policies underlying the doctrine of tribal sovereign immunity."[49] SCF does not dispute this.

The third factor – ANTHC's structure, ownership, and management (including tribal control) – also favors sovereign immunity here. ANTHC's fifteen Directors are all Alaska Natives who are selected by federally recognized tribes or regional health entities that are authorized by federally recognized tribes to administer healthcare programs on their behalf.[50]

---

[46] *See Allen*, 464 F.3d at 1046 (finding that a casino was entitled to sovereign immunity where its creation was "dependent upon government approval at numerous levels" to conduct activities permitted only under the auspices of tribes and required a compact with the government to operate); *see also* Dkt. 30 at 5.

[47] Dkt. 32-1 at 1.

[48] *See* Dkt. 32 ¶¶ 4-6 (describing ANTHC carrying out the self-governance mandate of the ISDEAA compact and funding agreement); Dkt. 30 at 4-5.

[49] *White*, 765 F.3d at 1025 (internal quotation omitted). The Ninth Circuit has found that an entity was entitled to sovereign immunity as an arm of the tribe when it was "not a mere revenue-producing tribal business," but also furthered a tribe's self-sufficiency. *Allen*, 464 F.3d at 1046.

[50] Dkt. 32 ¶ 8; *see also* Dkt. 30 at 5, 10.

ANTHC'S REPLY IN SUPPORT OF MOTION TO DISMISS (SOVEREIGN IMMUNITY)
*SCF v. ANTHC*, 3:17-cv-00018-TMB
Page 10

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
*Main 907.277.1900 Fax 907.277.1920*

ANTHC also convenes annual meetings so that all federally recognized tribes in Alaska, tribal organizations operating health programs in Alaska, and their beneficiaries may review and make recommendations regarding ANTHC's activities.[51] It is a tribally controlled, non-profit tribal organization.[52]

The fourth factor – the tribes' intent to extend sovereign immunity to ANTHC – is discussed above. The authorizing tribes' rights were conferred as a matter of law under Section 5381(b) and there is no indication that those rights were limited.

The fifth factor – the financial relationship between the tribes and ANTHC – also favors sovereign immunity. ANTHC is funded through a compact and funding agreement with the Secretary of Health and Human Services and the Indian Health Service pursuant to ISDEAA.[53] The Ninth Circuit has found that sovereign immunity was appropriate for an entity when the economic advantages of the entity "inure to the benefit of the Tribe[s]" because sovereign immunity functionally protects the sovereign tribe's treasury.[54] ANTHC's funding agreement with the federal government inures to the benefit of Alaska's 229 tribes whose people receive the healthcare to which they are entitled.[55]

The sixth factor (which the Ninth Circuit has not adopted) – whether the policies underlying sovereign immunity are served by granting immunity – also favors ANTHC. As described by the Tenth Circuit, these policies include protection of the tribes' finances and preservation of tribal self-determination.[56] ANTHC exists to preserve and improve Alaska Natives' ability to exercise self-determination when it comes to designing a healthcare delivery system that is responsive to their needs across Alaska.[57] ANTHC's operations inure to the

---

[51] Dkt. 32-1 at 2 (Art. II(B)).

[52] Dkt. 32 ¶ 3.

[53] Dkt. 32 ¶ 4.

[54] *Allen*, 464 F.3d at 1047.

[55] An adverse ruling on the sovereign immunity issue could subject ANTHC to monetary judgments in other cases (although no such claims are at issue here), potentially impacting the scope and quality of services available to the tribes.

[56] *See Breakthrough Mgmt. Group, Inc.*, 629 F.3d at 1188, 1195.

[57] *See Salazar v. Maha Navajo Chapter*, 132 S. Ct. 2181, 2186 (2012) ("Congress enacted [ISDEAA] in 1975 in order to achieve 'maximum Indian participation in the direction of . . . [certain] Federal services to Indian communities so as to render such services more responsive to

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
*Main 907.277.1900    Fax 907.277.1920*

benefit of the tribes and allowing costly litigation (or judgments impinging on ANTHC's self-governance) against ANTHC may ultimately impact the services that ANTHC can provide.

ANTHC is an arm of the hundreds of Alaska Native tribes on whose behalf ANTHC operates.

**B.     The Fact that SCF Claims that Some of ANTHC's Authorizing Entities Are Not Tribes Is Not Dispositive.**

As envisioned by Congress, ANTHC makes healthcare services available to all Alaska Natives, irrespective of their affiliation with any particular tribe or tribal entity.  Because of ANTHC's broad mandate, Congress recognized that "over 200 recognized tribes, regional entities, and various concerned organizations" participated in the negotiations over the proper governance for ANTHC.[58]  As part of the Alaska Tribal Health System, which is collectively managed by the 229 federally recognized tribes in Alaska directly and through their respective health organizations, ANTHC acts on behalf of Alaska's hundreds of federally recognized tribes as well as a number of regional health organizations that do not necessarily hold themselves out as "tribes" per se (although they are authorized by those tribes to administer healthcare programs on their behalf and are, therefore, "tribal organizations" or "inter-tribal consortia" under Title V).[59]  SCF argues that ANTHC was "established" by several non-"tribes" (in addition to one federally recognized tribe) and that this disqualifies ANTHC from being able to assert sovereign immunity.[60]  SCF offers just two readily distinguishable cases in support of its argument.

First, SCF asserts that *Aleman v. Chugach Support Services* stands for the proposition that an entity with any non-tribe "constituent entities" is not entitled to sovereign immunity,[61] but the case says no such thing.  Instead, *Aleman* involved an out of circuit decision where there

---

[58] S. Rep. No. 105-56, at 110 (July 22, 1997), 1997 WL 414606.

[59] *See* Dkt. 32 ¶¶ 3, 8.

[60] SCF offers no evidence that these regional health organizations are not also entitled to sovereign immunity.  In fact, just last month an Alaska Superior Court found that Tanana Chiefs Conference, Inc. (one of these regional health organizations) was entitled to tribal sovereign immunity pursuant to ISDEAA.  *See Beversdorf v. Tanana Chiefs Conference, Inc.*, 4FA-17-01911CI at 2-3 (Fourth Judicial District, Superior Court, Sept. 27, 2017) (attached as Exhibit A).

[61] *See* Opp. at 12 (citing *Aleman v. Chugach Support Services, Inc.*, 485 F.3d 206, 213 (4th Cir. 2007)).

the needs and desires of those communities.'" (quoting 25 U.S.C. § 450a(a) (now located at 25 U.S.C. § 5302(a)).

ANTHC'S REPLY IN SUPPORT OF MOTION TO DISMISS (SOVEREIGN IMMUNITY)
*SCF v. ANTHC*, 3:17-cv-00018-TMB
Page 12

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK  99501
Main 907.277.1900    Fax 907.277.1920

were *no* tribes at all involved, and the defendants did not even claim tribal sovereign immunity.[62] The defendants were an Alaska Native Corporation and its wholly-owned subsidiary and "defendants have not alleged that the plaintiffs' work touched in any way on the internal affairs or special functions of the Alaska Native Corporation."[63] The Fourth Circuit then went on to explain why the Alaska Native Corporation and its subsidiary were not entitled to sovereign immunity in that case.[64] *Aleman* thus stands for the proposition that tribal sovereign immunity does not bar relief under 42 U.S.C. § 1981 when no tribes are involved and no party claims sovereign immunity. This has no bearing on this case. To be clear, ANTHC is not asserting that it receives sovereign immunity from one or more entities that do not have sovereign immunity. Rather, as a matter of federal law, more than two hundred sovereign Alaska Native tribes have conferred their rights to sovereign immunity to ANTHC as part and parcel of ANTHC acting on their behalf to provide healthcare services under ISDEAA.

Second, SCF cites to an unreported decision from the Northern District of Oklahoma which found that the Association of Village Council Presidents was not entitled to sovereign immunity,[65] but this case is also readily distinguishable. Relying on dicta from the Tenth Circuit, that court found that the "arm of the tribe" test could not apply if the entity at issue was organized under state law, rather than tribal law.[66] The Ninth Circuit, however, has rejected the view that incorporation under state law precludes sovereign immunity.[67] Accordingly, this case has no precedential value here.

In sum, SCF asks this Court to create a "purity test" under which ANTHC can never be entitled to sovereign immunity as an "arm of the tribe" unless every single group that

---

[62] *See* 485 F.3d at 213 ("To be sure, we have recognized Indian tribal immunity as a bar to Section 1981 liability. *But the defendants claim no such immunity here . . . .*") (emphasis added).
[63] *Id.* at 208-09.
[64] *See id.* at 213.
[65] *See* Opp. at 14 (citing *Eaglesun Sys. Prods., Inc. v. Association of Village Council Presidents*, 2014 WL 1119726 (N.D. Okla. Mar. 20, 2014)).
[66] *Eaglesun*, 2014 WL 1119726, at *8 (citing *Somerlott v. Cherokee Nation Distrib., Inc.*, 686 F.3d 1144, 1149 (10th Cir. 2012)). *See Rassi v. Federal Program Integrators, LLC*, 69 F. Supp. 3d 288, 291 (D. Me. 2014) ("FPI is correct that the Tenth Circuit's discussion of sovereign immunity in *Somerlott* was dicta.").
[67] *See, e.g.*, *White*, 765 F.3d at 1026 ("We have previously rejected the Plaintiffs' alternative argument that a tribe's decision to incorporate waives its sovereign immunity.").

ANTHC'S REPLY IN SUPPORT OF MOTION TO DISMISS (SOVEREIGN IMMUNITY)
*SCF v. ANTHC*, 3:17-cv-00018-TMB
Page 13

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main 907.277.1900 Fax 907.277.1920

participated in the formation of ANTHC was a sovereign tribe. Aside from the inapposite cases above, SCF points to no authority for this claim. SCF's approach makes little sense when applied here. Under SCF's view, a joint venture between two tribes could exercise those tribes' sovereign immunity, but a consortium of hundreds of tribes and even a single regional health organization (which is authorized to represent those tribes) could not. Such an approach enjoys no support either in the governing statutes or the interpretive case law. It also would undermine the purposes of sovereign immunity and artificially require tribes to distance themselves from regional health organizations and other tribal entities, lest the tribes inadvertently waive their ability to confer sovereign immunity on a consortium like ANTHC. SCF does not suggest that the participation of these regional health organizations somehow diminishes the self-determination purpose of ANTHC or the healthcare services provided to Alaska Natives. Indeed, these organizations enhance those attributes and activities. ANTHC provides statewide healthcare services to *all* Alaska Native beneficiaries from all 229 federally recognized Alaska Native tribes. The fact that some of these tribes have elected to do so through regional health entities does not undermine the purposes for which tribal sovereign immunity is traditionally recognized. The end goal – self-determination by Alaska Natives as to the healthcare services to be delivered to their people – is strengthened when related Alaska Native regional health organizations work with tribes and ANTHC to provide the best possible care.

C. **SCF's Lawsuit Improperly Asks a Federal Court to Dictate ANTHC's Actions.**

ANTHC is a tribally controlled, non-profit inter-tribal consortium and tribal organization that provides medical and other services to more than 150,000 Alaska Natives and American Indians.[68] A primary purpose of ISDEAA – and the reason for ANTHC's existence – is to permit and encourage Alaska Natives to take control of their own programs with minimal federal intrusion or interference.[69] Accordingly, ANTHC is governed by the 15 Alaska Native members of its Board, who in turn are selected by regional health organizations that are authorized by

---

[68] *See* Dkt. 30 ¶ 3.
[69] *See* Tribal Self-Governance Amendments of 2000, Pub. L. No. 106-260, § 3(2)(F), 114 Stat. 711, 712 (2000); Indian Self-Determination Act, Pub. L. No. 93-638, tit. I, §§ 101-102, 88 Stat. 2203, 2206 (1975); 25 U.S.C. § 5302(b).

ANTHC'S REPLY IN SUPPORT OF MOTION TO DISMISS (SOVEREIGN IMMUNITY)
*SCF v. ANTHC*, 3:17-cv-00018-TMB
Page 14
Case 3:17-cv-00018-TMB   Document 109   Filed 10/17/17   Page 15 of 21

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
*Main 907.277.1900 Fax 907.277.1920*

federally recognized tribes to administer health care programs on their behalf as well as other tribes and subregional tribal organizations that administer their own health programs.[70] It is, in short, Alaska Native self-governance for the core purpose of providing Alaska Natives with healthcare.

With this lawsuit, SCF asks this Court to interpret Section 325 to displace the independence and authority of the existing congressionally-authorized Board of Directors. SCF is asking the Court to overturn numerous votes of ANTHC's duly authorized Board and instruct the Board what information it must share with its competitors and which tasks it is permitted to delegate to committees, even if the decisions at issue satisfy the business judgment rule. Despite this, SCF claims that its lawsuit has nothing to do with federal control of ANTHC. SCF's argument twists the concept of tribal self-governance. This is not merely a case about enforcing some inferred statutory right, but rather about interjecting the Court into the Board's careful business judgments and directing how they must share sensitive information or even whether they can or cannot delegate assorted governance responsibilities. ANTHC's self-governance is at risk.

### D. ANTHC Did Not Waive Its Sovereign Immunity.

Finally, SCF misstates the law in arguing that ANTHC waived its sovereign immunity by asserting conditional counterclaims in this litigation. While sovereign immunity can be waived if a tribe affirmatively and voluntarily files a lawsuit and asks the court to order certain relief, the law is clear that sovereign immunity is not waived by defensive assertions of counterclaims. ANTHC did not choose to be a litigant here. It was brought into this lawsuit by SCF and promptly asserted its sovereign immunity. The fact that ANTHC also submitted conditional counterclaims does not constitute a waiver of its sovereign immunity.

SCF asserts that it is "black-letter law" that a tribe waives sovereign immunity when the tribe requests that the court issue declaratory relief,[71] but this is demonstrably untrue. SCF cites two authorities for this proposition, but even a cursory review of those authorities demonstrates that SCF is mistaken. First, *Oneida Tribe of Indians v. Village of Hobart* did not hold that any

---

[70] *See id.* ¶ 8.
[71] Opp. at 16.

ANTHC'S REPLY IN SUPPORT OF MOTION TO DISMISS (SOVEREIGN IMMUNITY)
*SCF v. ANTHC*, 3:17-cv-00018-TMB
Page 15

tribe requesting declaratory relief thereby waives its sovereign immunity. To the contrary, *Oneida* stands for the principle that if a tribe *voluntarily initiates the lawsuit* as a plaintiff, then of course the tribe cannot argue that sovereign immunity should preclude the court from resolving the issues raised by the tribe (whether or not the defendant has raised identical or near-identical issues as well).[72] As discussed below, the proper legal analysis turns on whether ANTHC voluntarily submitted to the jurisdiction of the Court and thereby waived its sovereign immunity. Since ANTHC was brought into this litigation involuntarily, there was no waiver.

Second, SCF offers a misleading excerpt from Cohen's Handbook of Federal Indian Law. SCF quotes that treatise as saying "Participation in other litigation can also affect [sic] a waiver for limited purposes, but counterclaims may generally not be asserted . . . ."[73] SCF's misleading use of the ellipsis would suggest that this leading treatise found that counterclaims cannot be asserted by tribes without waiving their sovereign immunity. The actual text makes clear that SCF has it backwards: "Participation in other litigation can also effect a waiver for limited purposes, but counterclaims may not be asserted *absent an explicit waiver* . . . ."[74] The treatise then cites to *Oklahoma Tax Commission v. Citizen Band of Potawatomi Indian Tribe*, 498 U.S. 505, 509 (1991) for the proposition that a suit filed *by the tribe* to enjoin the collection of certain taxes did not waive the tribe's sovereign immunity with respect to a counterclaim by the taxing authority.[75] That is, the non-tribe cannot bring counterclaims against the tribe absent an explicit waiver even if the tribe initiated the litigation.[76]

The assertion of conditional counterclaims does not constitute a waiver of the tribe's sovereign immunity. SCF's precise argument was rejected in *Skelton v. Henry*.[77] In that case, plaintiffs filed a complaint against Missouri for retroactive refunds of certain amounts owed by

---

[72] *See* 500 F. Supp. 2d 1143, 1145 ("the Tribe commenced this action"), 1149 (finding that, by making a claim for declaratory relief, the tribe had waived sovereign immunity with respect to the non-tribe's similar counterclaim) (E.D. Wis. 2007).

[73] Opp. at 16 & n.57 (misquoting 1-7 Cohen's Handbook of Federal Indian Law § 7.05(1)(c)).

[74] 1-7 Cohen's Handbook of Federal Indian Law § 7.05(1)(c) (footnote omitted) (emphasis added).

[75] *See id.*

[76] To that end, *Oneida* found that the tribe had not explicitly waived its sovereign immunity with respect to the non-tribe's counterclaims for injunctive relief. *See* 500 F. Supp. 2d at 1148.

[77] 390 F.3d 614 (8th Cir. 2004).

ANTHC'S REPLY IN SUPPORT OF MOTION TO DISMISS (SOVEREIGN IMMUNITY)
*SCF v. ANTHC*, 3:17-cv-00018-TMB
Page 16

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main 907.277.1900   Fax 907.277.1920

non-custodial parents. Missouri raised a sovereign immunity defense but also filed a counterclaim and a third party complaint in response at the same time, and plaintiffs argued that the filing of the counterclaim and third party complaint constituted a waiver of sovereign immunity.[78] The Eighth Circuit rejected the plaintiffs' argument:

> We conclude that a counterclaim and third party complaint are not sufficient to waive a claim of Eleventh Amendment immunity asserted in the very same document. A state is not required to give up other valid defenses in order to preserve its immunity defense.
>
> We conclude that Missouri did not place itself in the federal forum. The state did not voluntarily invoke the jurisdiction of the federal courts by filing a counterclaim and third party claim. Missouri raised its Eleventh Amendment defense promptly in its answer to the plaintiffs' amended complaint and did not waive its immunity.[79]

The same analysis and result obtains here. ANTHC did not voluntarily invoke the jurisdiction of this Court by filing a counterclaim, and ANTHC raised its sovereign immunity defense promptly. ANTHC cannot be required to give up other valid defenses – including counterclaims for declaratory relief – in order to preserve its sovereign immunity defense. ANTHC firmly believes that the Court should dismiss the lawsuit due to sovereign immunity, but if the Court decides for some reason that the case should proceed then ANTHC must have the opportunity and ability to frame its defenses, including counterclaims, as it sees fit.

SCF's reliance on the "waiver-by-litigation" doctrine is misplaced because SCF fails to acknowledge that the doctrine is narrow.[80] As the Ninth Circuit explained, "[i]nitiation of a lawsuit necessarily establishes consent to the court's adjudication of the merits of that particular controversy."[81] That is because the tribe has voluntarily consented for the court to rule on the issue by choosing to file a complaint. Even so, "a tribe's waiver of sovereign immunity may be limited to the issues necessary to decide the action *brought by the tribe*; the waiver is not

---

[78] *See id.* at 618. The third party complaint was against the federal government for contribution if refunds were awarded to the plaintiffs. *See id.* at 617.

[79] *Id.* at 618.

[80] *Tohono O'odham Nation v. Ducey*, 174 F. Supp. 3d 1194, 1204 (D. Ariz. 2016) ("This waiver-by-litigation doctrine is narrow.").

[81] *McClendon v. U.S.*, 885 F.2d 627, 630 (9th Cir. 1989).

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main 907.277.1900   Fax 907.277.1920

necessarily broad enough to encompass related matters, even if those matters arise from the same set of underlying facts."[82] Here, ANTHC did not bring any action. It raised counterclaims defensively. SCF argues in conclusory fashion that it makes no difference whether ANTHC commenced the underlying action because the "mirror image" rule applies as long as the immune party, of its own accord, made itself "vulnerable to complete adjudication by the federal court of the issues in litigation."[83] SCF's argument ignores that the quoted language arises in the context of a tribe *voluntarily* intervening in a lawsuit to protect certain fishing rights.[84] Again, if ANTHC had voluntarily initiated the litigation against SCF or voluntarily intervened in a lawsuit to address these issues, then this would constitute a waiver of ANTHC's sovereign immunity as to that claim because ANTHC voluntarily requested that the Court address the issue. But that is not the case here. SCF has identified no authority in support of its argument that a tribe waives its sovereign immunity when it defensively asserts counterclaims. Just as in *Skelton v. Henry*, ANTHC is permitted to raise alternative defenses – including sovereign immunity and counterclaims – when it is forced to defend itself in a lawsuit.

## III.   CONCLUSION

For the foregoing reasons, ANTHC respectfully asks the Court to grant ANTHC's motion to dismiss based on sovereign immunity and to award ANTHC its reasonable attorneys' fees and costs.

---

[82] *Id.* (emphasis added).
[83] Opp. at 17 & n.60 (quoting *U.S. v. Oregon*, 657 F.2d 1009, 1014 (9th Cir. 1981) (internal quotation omitted)).
[84] *See Oregon*, 657 F.2d at 1014.

ANTHC'S REPLY IN SUPPORT OF MOTION TO DISMISS (SOVEREIGN IMMUNITY)
*SCF v. ANTHC*, 3:17-cv-00018-TMB
Page 18

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main 907.277.1900   Fax 907.277.1920

DATED: October 17, 2017

STOEL RIVES LLP


By:/s/ James E. Torgerson
    JAMES E. TORGERSON
    SARAH LANGBERG

    Attorneys for Defendant and Counterclaimant
    Alaska Native Tribal Health Consortium

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK 99501
*Main 907.277.1900    Fax 907.277.1920*

ANTHC'S REPLY IN SUPPORT OF MOTION TO DISMISS (SOVEREIGN IMMUNITY)
*SCF v. ANTHC*, 3:17-cv-00018-TMB
Page 19
Case 3:17-cv-00018-TMB   Document 109   Filed 10/17/17   Page 20 of 21

# CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2017, I filed a true and correct copy of the foregoing document with the Clerk of the Court for the United States District Court – District of Alaska by using the CM/ECF system. Participants in this Case No. 3:17-cv-00018-TMB who are registered CM/ECF users, and who are listed below, will be served by the CM/ECF system.

Louisiana W. Cutler
Shane K. Kanady
Dorsey & Whitney, LLC
1031 W 4th Ave., Ste. 600
Anchorage, AK 99501
cutler.louisiana@dorsey.com
kanady.shane@dorsey.com

William D. Temko
Munger, Tolles & Olson LLP
355 S Grand Ave., Ste. 3500
Los Angeles, CA 90071
William.Temko@mto.com

/s/ James E. Torgerson
James E. Torgerson

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main 907.277.1900   Fax 907.277.1920

94250736.6 0009312-00008

ANTHC'S REPLY IN SUPPORT OF MOTION TO DISMISS (SOVEREIGN IMMUNITY)
*SCF v. ANTHC*, 3:17-cv-00018-TMB
Page 20