James E. Torgerson (Bar No. 8509120)
jim.torgerson@stoel.com
STOEL RIVES LLP
510 L Street, Suite 500
Anchorage, AK 99501
Telephone: 907.277.1900
Facsimile: 907.277.1920

Attorneys for Defendant and Counterclaimant
Alaska Native Tribal Health Consortium

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SOUTHCENTRAL FOUNDATION,<br><br>    Plaintiff and Counterclaim Defendant,<br><br> v.<br><br>ALASKA NATIVE TRIBAL HEALTH CONSORTIUM,<br><br>    Defendant and Counterclaimant. | Case No.: 3:17-cv-00018-TMB |

**DEFENDANT'S BRIEF IN SUPPORT OF KEEPING CERTAIN DOCUMENTS UNDER SEAL**

**I. INTRODUCTION**

In a March 31, 2018 Order, the Court requested briefing on whether Alaska Native Tribal Health Consortium (ANTHC) and Southcentral Foundation's (SCF) motions to dismiss and for summary judgment, and their supporting documents, should be kept under seal.[1] In response, ANTHC has carefully reviewed all the materials that it or SCF asked be sealed. As detailed in the attached Declaration of Nacole Heslep, ANTHC does not object to unsealing a substantial

---

[1] Dkt. 131.

Page 1 of 16
96644439.9 0009312-00008
Case 3:17-cv-00018-TMB   Document 133   Filed 04/23/18   Page 1 of 16

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK 99501
*Main 907.277.1900   Fax 907.277.1920*

portion of the documents filed in support of the parties' dispositive motions.[2] ANTHC also has identified numerous additional documents that it does not object to unsealing so long as the confidential information in them is redacted.[3] ANTHC asks that the remaining documents (about a third of the documents filed under seal), remain under seal in their entirety.[4]

Compelling reasons justify ANTHC's request, outweighing the public interest in the documents' disclosure. This case has consistently been framed as a governance dispute that turns on the interpretation of Section 325. Although the parties presented the Court with extensive background information (and supported their respective explanations with numerous confidential documents), that factual background is, in many respects, irrelevant to the dispositive legal questions the Court will answer. For that reason, with respect to both the sealed and redacted documents, public interest in the documents (or portions of documents) is low because they would not assist the public in understanding the proceedings. At the same time, if disclosed the documents would harm ANTHC's business interests and competitive standing. Thus, with respect to the documents identified, the Court should conclude that ANTHC's interest in keeping certain court records sealed outweighs the public interest in access to irrelevant information.[5]

## II.   BACKGROUND

SCF filed its complaint for declaratory judgment on January 20, 2017. SCF alleged that "a dispute has arisen between [SCF] and [ANTHC] regarding ANTHC's failure to comply with

---

[2] *See* Declaration of Nacole Heslep in Support of ANTHC's Supplemental Brief (Heslep Dec.) ¶ 2.
[3] *Id.* ¶ 10.
[4] *Id.* ¶ 9.
[5] ANTHC also seeks to keep under seal the motions to dismiss and for summary judgment, and their accompanying declarations based on their reference to exhibits that should remain under seal. If the Court determines that the motions and declarations should be unsealed and filed with redactions that differ from those publicly filed, ANTHC will provide updated redacted versions of the motions and declarations based on the Court's determination.

the governance principles established by Congress in [Section 325]" and sought various declarations based on its interpretation of Section 325. ANTHC filed an Amended Answer and Counterclaim on May 22, 2017, in which ANTHC sought declarations regarding ANTHC's directors' duty of loyalty to ANTHC and its compliance with federal law.

As framed by the Complaint and Counterclaim, both parties asserted that this case turns on questions of law, and that there are no genuine issues of material fact. The parties' approach to discovery reflected that understanding. They agreed from the outset to very limited and informal discovery. In their Rule 26(f) Scheduling and Planning Conference Report, they established a case schedule that allowed for only limited document discovery and reported that they believed no material factual issues existed.[6] The parties agreed to allow only 120 days to complete all discovery.[7] Consistent with that approach, SCF did not promulgate formal discovery requests; rather, SCF sent an informal request for documents via email to ANTHC. And SCF produced only 397 pages of documents, many of which were basic governance documents and drafts of ANTHC documents.[8]

This discovery was completed under a protective order entered by the Court on June 15, 2017.[9] The Protective Order requires that if a party objects to a document designated as "Confidential," that party shall have thirty days to submit a written objection to the designation.[10] Although raising other issues with respect to ANTHC's document production, SCF did not submit written objections to any of ANTHC's confidentiality designations.

---

[6] Scheduling and Planning Conference Report (Dkt. 16) at 1-3.
[7] SCF Motion, Ex. 1 (Dkt. 93-2) at 8.
[8] Declaration of James E. Torgerson in Support of Opposition to Motion to Compel (Dkt. 115) ¶ 8.
[9] Dkt. 23.
[10] Dkt. 23 ¶ 6.

On August 16, 2017, each party filed a summary judgment motion. SCF sought an order granting summary judgment on the grounds that (1) ANTHC's establishment of an Executive Committee with certain responsibilities and (2) restrictions on the sharing of confidential information violated federal law.[11] SCF based its legal argument—and its alleged entitlement to summary judgment—on the plain language and legislative history of Section 325. ANTHC moved for summary judgment on its Counterclaim, arguing that ANTHC directors owe an undivided duty of loyalty to ANTHC and ANTHC's governance documents comply with federal and state law.[12] ANTHC asserted that no material dispute of fact existed because the scope of ANTHC's directors' duties to the corporation and the legality of ANTHC's governance documents and policies were pure questions of law.

Thus, the parties continued to represent to the Court in their briefing that their claims could be resolved via dispositive motions for summary judgment.[13] Although both parties presented extensive (and, in many cases, disputed) facts to the Court as background to the dispute, the question on which the parties, and the Court, have focused is the interpretation of Section 325, and the determination of whether certain ANTHC governance decisions and documents are consistent with that law, as well as what duties ANTHC directors owe to ANTHC and how those duties are impacted, if at all, by Section 325.[14]

Only documents relevant to those questions, therefore, are potentially important to the public's understanding of the resolution of this litigation.

---

[11] *See* SCF Proposed Order on Summary Judgment (Dkt. 38-5 - Sealed).

[12] ANTHC's Motion for Summary Judgment (Dkt. 36 - Sealed) at 1.

[13] ANTHC's Motion for Summary Judgment (Dkt. 36 - Sealed) and Opposition to SCF's Motion for Summary Judgment (Dkt. 61 - Sealed).

[14] ANTHC's Opposition to SCF's Motion to Compel (Dkt. 114 - Sealed) at 2-3.

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK 99501
*Main 907.277.1900   Fax 907.277.1920*

## III. LEGAL STANDARD

When the motion at issue is more than tangentially related to the underlying cause of action, confidential information may be filed under seal only if there is a "compelling reason" to keep it confidential.[15] Courts adopt a strong presumption in favor of public access to court records because it furthers the policy goal of supporting public confidence in the courts' administration of justice and assisting in the public's understanding of the judicial process.[16] But where a court's "analysis and resolution of the parties' motions … [does] not address" the confidential information, sealing the information does not interfere with the public's understanding of the judicial process, and the public's interest in access to the information is correspondingly low.[17] For example, where a court did not rely on a document in ruling on a dispositive motion, the court found that the document lacked probative value and the public's interest in access to the document was *de minimis*.[18]

Compelling reasons for sealing documents exist, for example, where disclosure of court records might release trade secrets,[19] or "[w]here the material includes information about

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main 907.277.1900  Fax 907.277.1920

---

[15] *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016); *see also Miotox LLC v. Allergan, Inc.*, No. 2:14-cv-08723-ODW, 2016 WL 31756557 (C.D. Cal. June 2, 2016) and *Shapiro v. Hasbro Inc.*, No. 2:15-cv-02964-BRW-AJW, 2016 WL 9137526 (C.D. Cal. July 20, 2016) (focusing not just on nature of the motion, but also on whether documents themselves are more than tangentially related to merits of the case).

[16] *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d at 1096.

[17] *Aviva USA Corp. v. Vazirani*, 902 F. Supp. 2d 1246, 1274 (D. Ariz. 2012) (information on company's marketing expenditures was not addressed by motion for summary judgment in trademark infringement case); *In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2014 WL 10537440, at *5 (N.D. Cal. Aug. 6, 2014) (document not referenced or relied upon in court's order would not enhance public's understanding of case).

[18] *Hesterberg v. United States*, No. C-13-01265, 2013 WL 6057068, at *2 (N.D. Cal. Nov. 15, 2013) (public interest in document is low when court's order does not rely on the document).

[19] *In re Google Inc. Gmail Litig.*, 2014 WL 10537440, at *2.

proprietary business operations, a company's business model or agreements with clients."[20] The Ninth Circuit has adopted the definition of "trade secret" from the Restatement of Torts, where a trade secret "may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it."[21] A trade secret can relate to the production of goods, sale of goods, or other operations of a business.[22]

In addition to trade secrets, "[c]ourts commonly seal business or financial information that is otherwise kept confidential, where such documents could be used to a company's competitive disadvantage."[23] Among the documents that courts have found a compelling reason for sealing are: (1) declarations that discuss the state of a business, operating budgets, financial performance, and future business planning and decisions,[24] (2) contracts between a litigant and a non-party,[25] (3) documents that discuss employee salaries and compensation practices,[26] (4)

---

[20] *Selling Source, LLC v. Red River Ventures, LLC*, No. 2:09-CV-01491-JCM, 2011 WL 1630338, at *6 (D. Nev. Apr. 29, 2011); *see also Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1221 (Fed. Cir. 2013) (applying Ninth Circuit law) (A factor weighing "in favor of sealing documents is when the release of the documents will cause competitive harm to a business.").
[21] *In re Google Inc. Gmail Litig.*, 2014 WL 10537440, at *3 (citation omitted).
[22] *Id.*
[23] *Kamdem-Ouaffo v. Idahoan Foods, LLC*, 243 F. Supp. 3d 1130, 1146 (D. Idaho 2017) (collecting cases).
[24] *Id.* (disclosure of company strategy and financials risks harm to competitive standing).
[25] *Watts v. Metro. Life Ins. Co.*, No. 09cv829, 2010 WL 11508844, (S.D. Cal. Oct. 7, 2020) at *2 (litigant's contracts could be used by competitors to determine litigant's internal decision-making processes).
[26] *Roadrunner Intermodal Servs., LLC v. T.G.S. Transp., Inc.*, No. 1:17-cv-01056-DAD-BAM, 2018 WL 432654 at *4 (E.D. Cal. Jan. 16, 2018) (competitors could use salary info to target most valuable personnel for hiring); *Saint Alphonsus Med. Ctr.-Nampa, Inc. v. St. Luke's Health Sys., Ltd.*, No. 1:12-CV-00560-BLW et al., 2015 WL 632311, at *3 (D. Idaho Feb. 13, 2015) (sealing exhibits that identified employees and their compensation); *Hill v. Xerox Corp.*, No. C12-0717-JCC, 2014 WL 1356212, at *2 (W.D. Wash. Apr. 7, 2014) (sealing compensation plan).

documents that contain pricing information,[27] (5) materials that discuss research and product development,[28] and (6) documents covered under the attorney-client and work product privileges.[29] Courts will also look at whether a party treats the documents at issue as confidential in the ordinary course of business, which ANTHC has done as to the documents it asks be sealed, in determining if there is a compelling reason to keep the information confidential.[30] Where a court does not find a compelling reason to seal a document in its entirety, it may allow a party to redact "sensitive personal and competitive information" before filing.[31]

Once a party has articulated a compelling reason, the court must balance the public's interest in access with the party's interest in keeping the records secret.[32] In performing this balancing test, it is important to recognize the underlying rationale for public access to court records. The public has an interest in access to support the public's confidence in the courts' administration of justice and to assist in public understanding of the judicial process.[33]

---

[27] *Roadrunner Intermodal Servs., LLC*, 2018 WL 432654, at *3 (access to pricing information would allow competitors to undercut litigant's rates); *Saint Alphonsus Med. Ctr.-Nampa, Inc.*, 2015 WL 632311, at *2 (same).

[28] *In re ConAgra Foods, Inc.*, No. CV1105379MMMAGRX, 2014 WL 12577132, at *5 (C.D. Cal. July 11, 2014) ("[T]he inclusion of trade secrets such as a company's internal strategies, marketing research, sales data, and product development plans provide compelling reasons to seal.") (citing *Saint Alphonsus Med. Ctr.-Nampa, Inc.*, 2015 WL 632311, at *1).

[29] *Asdale v. Int'l Game Tech.*, 2010 WL 2161930, at *2 (D. Nev. May 28, 2010) (motions and exhibits that contained attorney-client and work product privileged material remain under seal).

[30] *Kamdem-Ouaffo*, 243 F. Supp. 3d at 1145-46 (board minutes "are treated as highly confidential by the company and not distributed outside the Board and select members of the company's executive team"); *Aviva USA Corp.*, 902 F. Supp. 2d at 1273 ("[T]he information does not appear to be a type that a business would typically make public or choose to reveal to competitors.").

[31] *In re Midland Nat'l. Life Ins. Co. Annuity Sales Practices Litig.*, 686 F.3d 1115, 1120 (9th Cir. 2012).

[32] *Ctr. for Auto Safety*, 809 F.3d at 1096.

[33] *Id.*

Accordingly, and as a necessary corollary to this reasoning, documents that bear no relationship to the court's adjudication of the motion at issue are less likely to be unsealed.[34]

## IV. ARGUMENT

### A. Documents Covered by the Privacy Act Should Remain Sealed.

Federal law extends the protections of the Privacy Act of 1974 to certain records of ANTHC and other tribes and tribal organizations carrying out federal programs under the Indian Self-Determination and Education Assistance Act (ISDEAA).[35] Under ISDEAA and ANTHC's agreements with the federal government,[36] ANTHC's medical, financial and personnel records are protected from disclosure under 5 U.S.C. § 552a(b), which provides:

> (b) Conditions of disclosure.-- No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains . . . .

ANTHC keeps information about its personnel and finances in a system of records and maintains them in confidence. Thus, ANTHC is prohibited from providing copies of records to any third party without a proper "authorization" signed by the individual or entity about whom the record is kept, unless requests for such records complies with one of the narrow exceptions to the Federal Privacy Act of 1974.

---

[34] *Music Grp. Macao Commercial Offshore Ltd. v. Foote*, No. 14-cv-03078-JSC, 2015 WL 3993147, at *6 (N.D. Cal. June 30, 2015) ("The public interest is limited where, as here, the content sought to be sealed is irrelevant to the Court's decision."); *Network Appliance, Inc. v. Sun Microsystems Inc.*, No. C-07-06053, 2010 WL 841274, at *2 (N.D. Cal. Mar. 10, 2010) ("[T]he public interest in understanding the judicial system would appear to be less where, as here, the documents in question are irrelevant to the Court's decision.").
[35] 25 U.S.C. § 5386(d).
[36] Funding Agreement between the Alaska Native Tribal Health Consortium and the Secretary of the Department of Health and Human Services of the United States of America, Fiscal Years 2016 through 2018, § 7.1.1; Heslep Declaration ISO ANTHC's Standing Reply (Dkt. 106) ¶ 21.

One of the exceptions allows ANTHC to respond to an order of a court of competent jurisdiction that has made the requisite findings.[37] During discovery in the instant litigation, ANTHC relied on the protective order stipulated by SCF and signed by this Court, both as a means to comply with the Federal Privacy Act and for assurance that ANTHC would not be penalized for cooperating with SCF's discovery requests.[38] Rather than engaging in protracted battles with SCF over the extraordinary number of confidential documents that SCF demanded, most of which were, at best, tangential to SCF's prayer for relief,[39] ANTHC reasonably relied on the protective order's application to very specific categories of records: "personal private information, trade secrets, confidential business information, [and] ***information protected from disclosure by state or federal law***."[40]

---

[37] 5 U.S.C. § 552a(b)(11).

[38] "The law, however, gives district courts broad latitude to grant protective orders to prevent disclosure of materials for many types of information, including, *but not limited to*, trade secrets or other confidential research, development, or commercial information."  Charles Alan Wright et al., 8A *Federal Practice & Procedure: Civil* § 2043 (3d ed.) (*quoting Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002)).

[39] *See* cases cited *supra* note 15.

[40] Dkt 23 ¶ (1)(b) (emphasis added). As *Foltz v. State Farm Mutual Automobile Insurance Co.* explains:

> The central concern in determining whether access should be granted to documents sealed under a protective order is whether that order was relied upon in the decision to produce documents. *See Beckman,* 966 F.2d at 475. It is axiomatic that:
>
>> Among the goals furthered by protective orders is reducing conflict over discovery and facilitating the flow of information through discovery. Where that has happened, changing the ground rules later is to be avoided because protective orders that cannot be relied upon will not foster cooperation through discovery.

331 F.3d 1122, 1137-38 (quoting Charles Alan Wright et al., 8A *Federal Practice & Procedure: Civil* § 2044.1); *see also In re NASDAQ Market-Makers Antitrust Litig.*, 164 F.R.D. 346, 355 (S.D.N.Y. 1996) (where substantial production of documents and other materials was greatly facilitated by defendant's expectation of confidentiality via protective order, making materials

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK 99501
*Main 907.277.1900   Fax 907.277.1920*

Having reasonably relied on the protective order to bolster existing federal protections, ANTHC now requests that the Court continue to keep sensitive personnel and financial records confidential to protect a legitimate expectation of privacy individuals have based on federal law, ANTHC's longstanding treatment of these materials as confidential, and the course of dealing that has developed between ANTHC and its tribal partners. As indicated below, some documents also implicate ANTHC's interests in maintaining in confidence research and other competitive information.

### B. Documents Used for Improper Purposes Should Remain Sealed.

The Ninth Circuit has explained that "compelling reasons" that justify sealing court records generally exist "when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secret."[41] That overarching rationale—the submission of documents and use of court files for improper purposes—applies in this case with respect to documents submitted by SCF in support of its motion for summary judgment (SCF's Motion).[42]

Most of the facts outlined in SCF's Motion and the sealed documents submitted in support of SCF's Motion raised issues and made personal attacks that had nothing to do with the legal claims or dispositive legal issues. For example, many of the sealed documents related to executive compensation issues, but this case is not about whether any ANTHC executives or

---

available to public could cause persons to resist cooperation in particular or future cases and impair judicial economy).

[41] *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)); *see also Foltz*, 331 F.3d at 1135 (noting one relevant factor as "whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes" (citation omitted)).

[42] *See* Dkt Nos. 38, 53, 55, 83, 85, 87, 88, and 97 (and associated sealed documents and exhibits). The Heslep Declaration describes these documents in detail. (*See* Heslep Dec. ¶¶ 9-10.)

board members were overpaid. SCF asserted no claim for any form of relief for compensation paid to executives or directors. The only reason that those records became part of the court file was to impugn the motives and integrity of ANTHC's directors, executives, and management. This is precisely the improper purpose—the gratification of "private spite" and promotion of "public scandal"—that provides an independent basis for keeping the records sealed.

That rationale also applies to documents filed in support of ANTHC's opposition to SCF's Motion.[43] Faced with the Hobson's choice of maintaining confidentiality and providing accurate information and context to rebut SCF's attacks, ANTHC submitted a number of the confidential documents to the Court in response to the multitude of SCF's scurrilous and frequently irrelevant allegations. While ANTHC wanted the Court to have access to any and all information it might need, being forced to choose between remaining silent while subject to public scrutiny and disclosing still more secret information is "a level and type of 'embarrassment' unjustified by the public interest in disclosure."[44] "The mere fact that the production of records may lead to a litigant's embarrassment . . . will not, without more, compel the court to seal its records," but when the document is submitted for the improper purpose of embarrassing the other party or advancing a completely separate agenda, compelling reasons outweigh the public's interest in disclosure.[45]

### C. The Court Should Seal Documents Containing ANTHC's Confidential Employee Compensation Information.

As detailed in the Heslep Declaration, ANTHC has identified several documents and portions of documents related to employee contracts and non-public compensation information

---

[43] *See* Dkt. Nos. 61, 63, 66, and 68 (and associated sealed documents and exhibits). The Heslep Declaration describes these documents in detail. (*See* Heslep Dec. ¶¶ 9-10.)
[44] *In re NASDAQ Market-Makers Antitrust Litig.*, 164 F.R.D. at 358 (discussing issue in context of Rule 26(c).)
[45] *Kamakana*, 447 F.3d at 1179.

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK 99501
*Main 907.277.1900   Fax 907.277.1920*

that should remain under seal, including employment agreements, board minutes discussing executive compensation and employment, executive and board compensation studies, and communications related to executive compensation.[46]

In addition to the reasoning outlined above, these documents reveal confidential information that could be used to ANTHC's competitive disadvantage. For example, the terms of executive employment agreements are included in exhibits currently under seal.[47] ANTHC competes with other organizations for employees.[48] Employment agreements and other documents that provide information on ANTHC's employment and compensation practices and policies could be used by competitors for top talent in the same market.[49] Competitors with knowledge of the terms ANTHC offers in employment agreements could use that confidential information to gain a competitive advantage over ANTHC in hiring. Further, ANTHC's compensation and incentive practices are proprietary and ANTHC developed them with considerable time, expense, and effort.[50] ANTHC has treated these compensation practices and policies as confidential and does not disclose them outside of a limited universe of Board members and senior management.[51]

The Ninth Circuit has held that a party has a compelling reason to seal "employee salary information [that] would enable competitors to target [a party's] most valuable personnel for hiring."[52] Similarly, disclosure of ANTHC's employment agreements and compensation policies

---

[46] See Heslep Dec. ¶¶ 9-10.
[47] Langberg Declaration, Ex. I (Dkt. 108-13 - Sealed).
[48] Heslep Dec. ¶ 7.
[49] *Id*.
[50] *Id*.
[51] *Id*.
[52] *Roadrunner Intermodal Servs., LLC*, 2018 WL 432654, at *4; *Hill*, 2014 WL 1356212, at *2 (disclosure of employee compensation plan would harm party's competitive standing).

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK 99501
*Main 907.277.1900   Fax 907.277.1920*

would place ANTHC at a competitive disadvantage and allow competitors to target ANTHC's employees for hiring.

Based on these compelling reasons for confidentiality, the Court should reach the balancing test and weigh the public interest in access to the documents against ANTHC's interest in keeping the information sealed. Here, public interest in disclosure of these documents is minimal because they are not relevant to the legal questions at issue. Neither SCF's motion for summary judgment nor ANTHC's motion for summary judgment depends on ANTHC's employment or compensation policies. Rather, both motions focus on what federal law requires with respect to ANTHC's governance and restriction of confidential information. Because ANTHC's interests outweigh public interest in disclosure, the Court should keep ANTHC's confidential employment terms and compensation documents under seal.

### D. The Court Should Seal Documents That Discuss ANTHC's Potential Business Opportunities.

ANTHC has also identified several documents and portions of documents related to potential business opportunities and business strategy that should remain under seal.[53] For example, exhibits attached to declarations include information on confidential pending business transactions and proposed projects.[54] Further, ANTHC competes for real estate.[55] ANTHC also competes in providing health care services, including the use of electronic health record data for planning, non-emergent care, and competing care venues.[56] ANTHC's competitors could use the information included in these documents to undercut the terms that ANTHC may accept.[57]

---

[53] *See* Heslep Dec. ¶¶ 9-10.
[54] Bean Dec., Ex. 1 (Dkt. 45-1 - Sealed) and Frederenko Declaration, Ex. 9 (Dkt. 47-9 - Sealed).
[55] Motion for Summary Judgment (Dkt. 36 - Sealed) at 12-15 and Helgesen Declaration (Dkt. 39 - Sealed) ¶ 9.
[56] Motion for Summary Judgment (Dkt. 36 - Sealed) at 16-18; Helgesen Declaration (Dkt. 39) ¶ 9.
[57] Heslep Dec. ¶¶ 4, 8.

Disclosure of documents related to proposed business transactions and proposed projects present the risk of competitive disadvantage from both competitors and third parties that may be involved in those proposed transactions and projects.[58] Documents that discuss proposed business transactions by ANTHC should remain under seal because their disclosure will harm ANTHC's competitive standing by revealing the terms and prices that ANTHC accepts. Compelling reasons, therefore, support keeping these documents confidential.

Again, the public interest in these documents is low because the dispositive legal issues do not rely on ANTHC's proposed business transactions. This is a governance dispute that does not involve or relate to either party's business or commercial dealings. For those reasons, the Court should keep documents related to ANTHC's proposed business transactions under seal.

### E. The Court Should Seal Documents That Discuss ANTHC's Confidential Business Relationships with Third Parties.

ANTHC has identified several documents and portions of documents related to ANTHC's confidential business relationships with third parties that should remain under seal.[59] Courts within the Ninth Circuit have found that business contracts between a litigant and a third party should be sealed because their disclosure would expose "trade secret information regarding [a party's] contractual relationship with a third-party vendor which could be used by business competitors to determine [a party's] internal decision-making processes."[60] Here, competitors could use information of ANTHC's confidential business relationships to gain insight into ANTHC's internal decision-making processes and undercut ANTHC's business decisions.[61]

---

[58] *Saint Alphonsus Med. Ctr.-Nampa, Inc.*, 2015 WL 632311, at *2 (disclosure of planning documents of proposed project would be used by both competitors and contractors on the project for competitive advantage).
[59] *See* Heslep Dec. ¶¶ 9-10.
[60] *Watts*, 2010 WL 11508844, at *3 (contract with third party reflects confidential business relationship and party's expectations of third party).
[61] Heslep Dec. at 8.

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main 907.277.1900    Fax 907.277.1920

Further, documents related to ANTHC's confidential business relationships reveal business strategies that ANTHC developed with considerable time, effort, and expense.[62]

### F. Conclusion.

The documents identified by ANTHC for sealing are not relevant to the proceedings and therefore the public interest in access to these documents is low. The underlying issue is what federal law requires, if anything, with respect to ANTHC's governance, including the Board's power to impose restrictions on the disclosure of confidential information.

Information about confidential compensation practices, potential business opportunities, and business relationships do not bear on the Court's interpretation of federal law and how it interacts with ANTHC's governance. Because the documents would not shed light on these proceedings, the public has only a *de minimis* interest in their content.[63] Therefore, compelling reasons for sealing the documents outweigh any public interest in accessing them.

DATED: April 23, 2018

          STOEL RIVES LLP

          By: /s/ James E. Torgerson
              JAMES E. TORGERSON
              Attorneys for Defendant
              Alaska Native Tribal Health Consortium

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK 99501
*Main* 907.277.1900    *Fax* 907.277.1920

---

[62] *Id.*

[63] *Hesterberg v. United States*, 2013 WL 6057068 at *3 (N.D. Cal. Nov. 15, 2013) (public's *de minimis* interest is outweighed by litigant's interest in confidentiality).

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2018, I filed a true and correct copy of the foregoing document with the Clerk of the Court for the United States District Court – District of Alaska by using the CM/ECF system. Participants in this Case No. 3:17-cv-00018-TMB who are registered CM/ECF users, and who are listed below, will be served by the CM/ECF system.

Louisiana W. Cutler
Shane K. Kanady
Dorsey & Whitney, LLC
1031 W 4th Ave., Ste. 600
Anchorage, AK 99501
cutler.louisiana@dorsey.com
kanady.shane@dorsey.com

William D. Temko
Munger, Tolles & Olson LLP
355 S Grand Ave., Ste. 3500
Los Angeles, CA 90071
William.Temko@mto.com

Nicholas Daniel Fram
Munger, Tolles & Olson LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Nicholas.Fram@mto.com

/s/ James E. Torgerson
James E. Torgerson

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main 907.277.1900  Fax 907.277.1920