William D. Temko, CA Bar #98858
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA  90071-1560
(213) 683-9266
william.temko@mto.com

Louisiana W. Cutler #9106028
Katherine Demarest #1011074
DORSEY & WHITNEY LLP
1031 West Fourth Avenue, Suite 600
Anchorage, AK 99501-5907
(907) 276-4557
cutler.louisiana@dorsey.com
demarest.katherine@dorsey.com
mailto:Demarest.katherine@dorsey.com
Attorneys for Plaintiff Southcentral Foundation

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| Southcentral Foundation,<br><br>                         Plaintiff,<br><br>v.<br><br>Alaska Native Tribal Health Consortium<br><br>                         Defendant. | Case No. 3:17-cv-00018-TMB<br><br>**DECLARATION OF ILEEN SYLVESTER IN SUPPORT OF SOUTHCENTRAL FOUNDATION'S MOTION FOR SUMMARY JUDGMENT** |

I, Ileen Sylvester, declare and state as follows:

1.      I am the Vice President of Executive & Tribal Services for plaintiff Southcentral Foundation (SCF). I have been employed by SCF since 1995, and have served as a Vice President since at least 2000. Among other responsibilities, I currently oversee tribal relations and village initiatives for health care delivery to 55 rural villages, the Public Relations Department, and the Planning and Grants Department. I received a BA in Business Administration from Milligan College in 1978 and an MBA from Alaska Pacific University in 2005.

Case 3:17-cv-00018-TMB-TMB Document 51 *SEALED* Filed 04/10/89/17 Page Page 1 of 12

2. Katherine Gottlieb ("Gottlieb"), the President and Chief Executive Officer of SCF, has served as SCF's representative on the Board of Directors of defendant Alaska Native Tribal Health Consortium ("ANTHC") from the beginning. From time to time since the formation of ANTHC, including from December 1, 2014 to May 2016, and from May 2017 to the present, I have served as SCF's alternate representative on the ANTHC Board of Directors.[1]

3. I make this Declaration in support of SCF's motion for summary judgment in the above-referenced matter. The facts set forth herein are known to me personally, and, if called as a witness, I could and would testify competently thereto.

4. On November 12, 2014, Andy Teuber ("Teuber"), the ANTHC Board Chair and President, sent an email notice to the ANTHC Board of Directors that the Board would consider certain amendments to the ANTHC Bylaws at the Board of Directors' meeting on December 2-3, 2014. I received a copy of Teuber's email in my capacity as an Alternate on the ANTHC Board of Directors. The email purported to provide notice, "in accordance with our Bylaws, of potential Bylaw amendments that may be presented for the Board's consideration at the December 2-3, 2014 Board meeting." Attached as Exhibit 1 is a true and correct copy of Teuber's November 12, 2014 email. The email did not attach or provide the text of any of the Bylaw amendments being proposed by Teuber. The notice was intentionally cryptic, in violation of Article XII of the then-existing Bylaws of ANTHC. Attached as Exhibit 2 is a true and correct copy of the ANTHC Bylaws in effect at the time. According to the email notice, the proposed Bylaw changes would, among other things: (1) "distinguish the roles of the Chair and the President, clarify the responsibilities of each role, and update the methodology for setting compensation;" and (2) "allow the Board to create an 'Executive Committee' with authority to take certain action on behalf of the Board between meetings." Ex. 1. Teuber's email notice of the proposed Bylaw changes did not mention changes to his job description or executive compensation.

5. I sent a responsive email to Teuber on November 12, 2014, requesting that he send me "the specific language for these proposed [Bylaw] changes." *Id.* Teuber responded by email dated November 17, 2014, in which he stated that he planned to "work on the specific language of the proposed changes" later that week and promised to forward the specific language "as soon as it's prepared, proofed & reviewed …" *Id.*

---

[1] Alex Cleghorn briefly replaced me as the Alternate Designated Director during the period from May 2016 until April 2017.

Case 3:17-cv-00018-TMB-TMB Document 51 *SEALED* Filed 04/20/17 Page 2 of 12

6.      By email to Teuber dated November 17, 2014, I told Teuber that, in my view, ANTHC should circulate the actual proposed Bylaw language changes to the full Board at least 21 days before the Board meeting "to allow Board members enough time to have these changes reviewed for future impact." Because Teuber's proposed Bylaw changes were not yet available (indeed, not yet drafted), I officially requested that Teuber provide proper notice, with copies of the proposed language, and that his proposed Bylaw changes be considered at the March 25, 2015 ANTHC Board meeting. *Id.* Teuber never responded to that request.

7.      On November 24, 2014, ANTHC circulated the Board packet for the upcoming December 2-3, 2014, ANTHC Board meeting. The Board packet did not include copies of Teuber's proposed Bylaw changes to be considered at the upcoming Board meeting.

8.      On December 1, 2014, at the conclusion of ANTHC's Annual Meeting, an impromptu meeting of the ANTHC Bylaws and Policy Committee was called to consider Teuber's proposed Bylaw amendments. That committee meeting had not been scheduled, and no text of the proposed Bylaw changes had been sent to the members of the Bylaws and Policy Committee (much less the full Board) prior to that impromptu committee meeting. Although I was not formally a member of the Bylaws and Policy Committee, I attended the impromptu committee meeting on December 1, 2014. Nacole Heslep ("Heslep"), ANTHC's General Counsel, distributed the text of the proposed Bylaw amendments for the first time at the committee meeting. The entire Bylaws and Policy Committee meeting lasted only 35 minutes (including the time it took for committee members to read the text of the proposed Bylaw changes for the first time, as well as a proposed Board Resolution establishing an Executive Committee, the draft Executive Committee Charter, and a revised draft Compensation Policy).

9.      Teuber's proposed Bylaw changes were significant. First, the Bylaw changes allowed the Board of Directors to adopt a Resolution "to establish an Executive Committee to exercise the authority of the Board of Directors in the management of ANTHC and to set notice and participation requirements for the Executive Committee that may differ from those otherwise specified in the Bylaws." A draft Board Resolution establishing the Executive Committee was also circulated; although the Resolution stated in a whereas clause that the Board intended to authorize the Executive Committee "to take action on behalf of the Board of Directors between meetings," the Resolution itself contained no such limitation, and instead authorized the Executive Committee "to exercise the authority of the Board of Directors in the management of the Consortium …." The Executive Committee Charter circulated for the first time at the

Case 3:17-cv-00018-TMB Document 51-3 SEALED Filed 04/10/17 Page 3 of 12

Bylaws and Policy Committee meeting provided, among other things: (a) that the Executive Committee "may exercise the authority of the Board of Directors in the management of the Consortium …"; (b) that the Executive Committee will provide for the "review and approval of the compensation for and transactions with Directors, Designated Executives and their family members;" and (c) that the Committee Chair will provide notice of meetings "to Committee Members," but not all members of the Board of Directors.

10. The proposed Bylaw changes distributed for the first time at the Bylaws and Policy Committee meeting also made fundamental changes in the governance structure of ANTHC. At the time, Teuber served as the President/Chair of ANTHC. Under the proposed Bylaw changes, the positions of Chair and President were to be split into two distinct roles, but specifically allowed the same person to serve as both Chair and President. The proposed Bylaw changes also substantially expanded the authority and responsibilities of the President, charging the President with "responsibility for the overall supervision and control of the Consortium …," certain of which new responsibilities had been previously performed by the CEO, Roald Helgesen. Finally, the proposed Bylaw changes specifically allowed for Teuber to be compensated separately for his role as both Chair and President. Attached as Exhibit 3 is a true and correct copy of the proposed Bylaw changes distributed at the Bylaws and Policy Committee meeting, along with the proposed Board Resolution, Executive Committee Charter, and the revised Compensation, Benefits and Reimbursement Policy. Also attached as Exhibit 4 is a true and correct copy of the Agenda and the draft minutes of the December 1, 2014, Bylaws and Policy Committee meeting.

11. During the very brief Bylaws and Policy Committee meeting on December 1, 2014, I tried to ask a series of questions regarding the proposed Bylaw changes. The Chair of the Bylaws and Policy Committee would not permit me to ask questions regarding the proposed Bylaw amendments because I was not a formal member of the Bylaws and Policy Committee. He indicated that any questions that I had could be asked at the Board meeting on the following day. Despite my objections, the Bylaws and Policy Committee voted to recommend adoption of all the documents by the full Board. Attached as Exhibit 5 is a true and correct copy of an email that I sent to Ms. Gottlieb and the other ANTHC directors, with a copy to the SCF Board, on the evening of December 1, 2014, regarding the Bylaws and Policy Committee meeting. In that memo, I outlined some of the questions and concerns that I had about the proposed Bylaw

Case 3:17-cv-00018-TMB Document 51 *SEALED* Filed 04/10/17 Page 4 of 12

changes and the process by which the proposed amendments had been brought before the Board. I asked that my questions and comments be included as part of the official record. *Id.*

12.    At the ANTHC Board meeting on December 2, 2014, the Chair of the Bylaws and Policy Committee moved to have the Board approve the recommendations of the Bylaws and Policy Committee to adopt Teuber's proposed Bylaw amendments, along with the Board Resolution establishing the Executive Committee, the Executive Committee Charter, and the revised Compensation, Benefits and Reimbursement Policy. I attempted to ask questions, but Teuber would not entertain those questions, stating at one point "unless you make your comments in the form of a motion, I do not want to hear them." I also made a series of motions to strike certain of the proposed Bylaw changes, but the motions failed. Ultimately, the motion to approve the Bylaws and Policy Committee recommendations was passed by the Board. A true and correct copy of the Minutes of the December 2-3, 2014 Board of Directors meeting is attached hereto as Exhibit 6.

13.    The authority delegated to the newly-created Executive Committee was extremely broad and included serving as the ANTHC Board of Directors' Compensation Committee. Although Teuber downplayed the significance of the Executive Committee documentation, stating that it only gave the Board the "option" of forming an Executive Committee, in fact the documentation formed the Committee, which appeared to be his intention. The Executive Committee's authority was not limited to acting between Board meetings or in an emergency situation. Instead, the Executive Committee had the power to do almost all acts usually reserved to the full Board of Directors. There was no requirement that the Executive Committee's actions had to be ratified by the full ANTHC Board of Directors in order to be valid, or even that it needed to notify the Board of its actions. *Id.* Although the ANTHC Bylaws required all Directors to receive notice of all Board Committee meetings, the Bylaw amendments adopted on December 2, 2014 purported to do away with this requirement with respect to the newly-created Executive Committee so that no ANTHC Directors (including me) received notice of Executive Committee meetings unless they were members of the Executive Committee. *Id.*

14.    At the continuation of the ANTHC Board meeting on December 3, 2014, at Teuber's suggestion, the Board also approved a motion "to direct the Chairman & President to evaluate the reasonableness of historic remuneration provided to Directors prior to 2010 and to develop a plan to address adjustments if warranted." A true and correct copy of ANTHC's Articles of Incorporation in effect up until November 2011 is attached as Exhibit 7.

Case 3:17-cv-00018-TMB-TMB Document 51-2 SEALED Filed 04/10/17 Page 5 of 12

15. The Bylaw amendments adopted on December 2, 2014 were passed with little or no discussion or deliberation by the ANTHC Board of Directors, having been jammed through both the Bylaws and Policy Committee and the full Board by Teuber and Heslep.

16. Gottlieb and I (and SCF) did not discover until two months after the fact that the Executive Committee had met in secret in mid-December 2014 and had approved new employment contracts for both Teuber as President and Helgesen as CEO. Even then, we did not receive a comprehensive report from the Executive Committee, but instead received an email from Teuber advising us, almost in passing, that the Executive Committee had negotiated a new five-year contract for Mr. Helgesen and a new four-year contract for Teuber. Although the Teuber email disclosed the fact of his (and Helgesen's) new contract, Teuber did not disclose the terms of the new contracts to SCF, including the amount of compensation owed. A true and correct copy of the February 15, 2015 Teuber email is attached as Exhibit 8.

17. On February 23, 2015, Gottlieb and I sent a letter to Heslep protesting Teuber's actions with respect to the Executive Committee and requesting a number of documents, including legal opinions as to the legality of the Bylaw amendments that Teuber had forced through and documents relating to Teuber's compensation. A true and correct copy of that letter is attached hereto as Exhibit 9.

18. By letter to Heslep dated March 11, 2015, Gottlieb and I supplemented our document requests to ANTHC, seeking, among other things, documents relating to notice of the Executive Committee meeting. A true and correct copy of that letter is attached hereto as Exhibit 10.

19. ANTHC responded that its review of the legality of the Executive Committee under Section 325 "is ongoing and a more complete analysis will be forthcoming." That response is attached hereto as Exhibit 11.

20. At the March 25, 2015 ANTHC Board of Directors meeting, Gottlieb and I provided a memorandum to the other ANTHC Directors explaining that delegating all of the governance functions of the Board to the Executive Committee likely violated Section 325, and expressing concerns as to the appropriateness and legality of Teuber's compensation. A true and correct copy of that memorandum is attached hereto as Exhibit 12. At that meeting I also proposed a motion (that passed) to table the Executive Committee report and schedule a special meeting of the Board to review all of the items that the Executive Committee had reviewed.

Case 3:17-cv-00018-TMB Document 51-13 Filed 04/10/17 Page 6 of 12

21.    At a special ANTHC Board of Directors meeting held on April 7, 2015 in Anchorage, I made a motion requesting that the Bylaws and Policy Committee develop proposed language for consideration at the next Board meeting to require all ANTHC directors to be notified of all ANTHC committee meetings. That motion passed. Nevertheless, the Bylaws and Policy Committee never developed that proposed language. At that meeting I also made a motion requesting that the Board set aside time to review the Executive Committee Charter and to "discuss the possibility of setting parameters around what the Executive Committee has the authority to do and of requiring all actions by the Executive Committee be presented to the Board of Directors for ratification prior to final action." That motion passed. However, again, no such discussion occurred at either the April 7, 2015 Board meeting or the June 3-4, 2015 Board meeting. At the special Board meeting on April 7, 2015, the Board ratified all of the actions that the Executive Committee took in December 2014. It also ratified the creation of an *ad hoc* committee to study its own potential retroactive compensation. I voted against ratification in both cases. A true and correct copy of the Minutes of the Special Board Meeting is attached as Exhibit 13.

22.    Although both of my motions passed, they were both subsequently ignored. The Bylaws and Policy Committee never developed notice language (although it met in May 2015 and considered a Bylaw amendment regarding how the Board could take actions without meeting), and no time was set aside in the agenda for the next ANTHC Board meeting in June 2015 to review the scope of the power of the Executive Committee. Gottlieb and I then sent a letter to the full Board protesting this omission and again explaining how the Executive Committee violated Section 325. A true and correct copy of that letter is attached hereto as Exhibit 14. Despite this, Teuber did not amend the agenda and refused to entertain my motion to add these items to the agenda at the June 2015 Board meeting.

23.    Instead, the June 2015 Board meeting focused on Teuber's promise of redirecting money from ANMC health programs to compensate ANTHC Board members retroactively. This Resolution was distributed in executive session, and all members of the Board were required to return copies of the Resolution before leaving the Board meeting. The Resolution, which passed, authorized ANTHC to make a lump sum payment to each primary designated director equal to $15,000 per year for each year the individual served as a primary director, up to a maximum of 15 years—a total payment of up to $225,000 in retroactive compensation per director. The $15,000 per year payment would be paid even for those years where the primary

Case 3:17-cv-00018-TMB-TMB Document 51 *SEALED* Filed 04/20/17 Page 7 of 12

director had already been paid. The Resolution further provided that ANTHC could make a lump sum payment to each alternate director equal to $1,000 per year for each year the individual attended at least one Board meeting. A true and correct copy of the Resolution is attached hereto as Exhibit 15.

24.     On August 21, 2015, SCF sent Teuber and Heslep a letter proposing changes to the Bylaws. This letter and its attachments are attached hereto as Exhibit 16. The letter proposed changing the Bylaws to limit the power of the Executive Committee to matters that arise between meetings and to require the full Board to ratify all Executive Committee actions. In that letter, SCF requested that Teuber add SCF's proposed amendments to the agenda for the September 2015 Board meeting. Teuber did not do so.

25.     I continued to attempt to amend the ANTHC Bylaws to remedy the illegal Executive Committee. SCF submitted proposed amendments that were ultimately added to the agenda for the October 27, 2015 Bylaws and Policy Committee meeting. I, however, was excluded from attending this meeting by Heslep, the ANTHC General Counsel, who informed me that I had some sort of "conflict of interest" unrelated to the Bylaws. The Bylaws and Policy Committee, with no representative from SCF present to explain them, ultimately declined to recommend SCF's proposed amendments.

26.     The full ANTHC Board was scheduled to meet on December 2-3, 2015. This was the meeting where, historically, the Board had considered compensation for ANTHC executives. Despite this upcoming meeting, Teuber sent an email on the evening of November 29 (a Sunday) calling for a meeting of the Executive Committee for December 1, 2015. A copy of that email is attached hereto as Exhibit 17. The stated purpose of this meeting was to consider his and Helgesen's compensation.

27.     When I attempted to attend the meeting, I was again excluded because no Alternate Directors were permitted at the meeting. This appeared to be pure pretext, as the Bylaws permitted my attendance.

28.     The regularly scheduled full Board meeting occurred as scheduled the next two days. The Board went into executive session on both days apparently to discuss executive performance evaluations. A copy of the Minutes are attached hereto as Exhibit 18.

29.     In early January 2016, I learned accidentally about a meeting of the Executive Committee. No notice had been provided, rather I learned because I happened to be at another ANTHC committee meeting and heard others discussing the upcoming meeting. I was

Case 3:17-cv-00018-TMB   Document 51-13   Filed 04/10/89   Page 12 of 12

concerned about this secret Executive Committee meeting and decided to attend. At the meeting, the Executive Committee was presented with Heslep's long-promised opinion explaining the legality of the Executive Committee. Although I was permitted to attend, Heslep informed me that I would have to sign an onerous confidentiality agreement before I would even be permitted to *see* the document. A true and correct copy of the proposed confidentiality agreement is attached as Exhibit 19. I refused to sign and registered my protest with an email to Teuber and Heslep, which is attached hereto as Exhibit 20.

30.     The proposed confidentiality agreement highlighted a second information-related issue that had been the subject of disagreement, namely, the degree to which Designated Directors could share information with their Congressionally-appointed designating entities. SCF has long taken the position that the Congressionally-appointed entities that constitute the ANTHC Board must have information about ANTHC in order to have an effective voice in ANTHC's governance.

31.     ANTHC's Code of Conduct provided that ANTHC directors had "a duty of undivided loyalty" to ANTHC without regard to the interests of their designating organizations. Exhibit 21.

32.     In March 2016, SCF proposed amending ANTHC's Code of Conduct to clarify that Designated Directors have the right and obligation to share confidential information and documents and confer with the boards of their appointing entities in order to obtain direction and input from those entities. A copy of this proposal is attached hereto as Exhibit 22. These changes sought to acknowledge that the Congressionally-appointed regional health organizations are supposed to play a critical role in the management of the Consortium, and that they cannot play that role without access to information. Information sharing would be subject to the board of the designating entity keeping the information confidential, and carried other commonsense restrictions to ensure that disclosure did not harm ANTHC and that designating entities could not use information for their own benefit at the expense of ANTHC.

33.     Teuber and Heslep never agreed with SCF's position. Although negotiations occurred in early-mid 2016, ANTHC refused to entertain SCF's proposed revisions to the Code of Conduct. In fact, ANTHC proposed its own changes, which the Board adopted in June 2016. While these changes clarified that Directors could share Board Resolutions, final meeting minutes, and Board packet materials with their designating entities, they stopped far short of permitting full disclosure of Board material. Any "confidential or sensitive" information

Case 3:17-cv-00018-TMB   Document 51   *SEALED*   Filed 04/10/89   Page 9 of 12

(presumably as designated by ANTHC) required Designated Directors to receive permission from Teuber (or the Chair of the ANTHC Ethics and Compliance Committee) before sharing. A copy of these changes is attached as Exhibit 23.

34.     These amendments made no progress toward recognizing that the Congressionally-designated regional health organizations were supposed to have a major role in administering the Consortium under Section 325. SCF's alternate Designated Director at the time, Alex Cleghorn, voted against these changes, maintaining that SCF's Board had an absolute right to all Board information as a Congressionally-appointed member of the Consortium under Section 325.

35.     The SCF Board and its Designated Directors on the ANTHC Board, including myself, continued to push Teuber for SCF's proposed changes to the Code of Conduct during the summer of 2016, and ultimately demanded that ANTHC bring them to a vote at its September 28-29, 2016 Board meeting. In early August, Heslep sent out a version of the changes to the Code of Conduct that SCF had submitted when she sent out material to be considered at the August 23 meeting of the ANTHC Bylaws and Policy Committee meeting. But instead of submitting all of SCF's proposed changes to the Code of Conduct to the Bylaws and Policy Committee, Heslep edited them and distributed her own edited version to the Committee members without first giving SCF a chance to review her changes. ANTHC inserted language that still restricted the sharing of information provided or discussed in Executive Session (as all of Teuber's compensation had been), and still required permission from Teuber or the Ethics and Compliance Committee Chair before sharing confidential or sensitive information. That document is attached as Exhibit 24. The Bylaws and Policy Committee voted to pass the amendments to the Code of Conduct—as modified by ANTHC—along to the full Board at its September meeting.

36.     However, the Code of Conduct amendments that Teuber ultimately proposed to the ANTHC Board at the September meeting were *not* the same as those that were approved at the ANTHC Bylaws and Policy Committee meeting in August and distributed to the full ANTHC Board in the packet of meeting materials sent to ANTHC Directors in advance of the ANTHC Board meeting. Without warning, Teuber proposed a version that did not acknowledge that Designated Directors owe duties to their Congressionally-approved designating organizations. Instead, Teuber's proposed version stated that the duty to the designating organization was part of a director's duties to ANTHC. Teuber also deleted all of SCF's

Case 3:17-cv-00018-TMB-TMB Document 51 SEALED Filed 02/08/17 Page 10 of 12

proposed language that would have permitted Designated Directors to share information with their designating organizations. Teuber brought these changes to a vote without discussion and they passed.

37.     Teuber also introduced a "Disclosure of Records and Information Policy" that he had the Board vote on and approve at the September 28, 2016 ANTHC Board meeting. Exhibit 25. This policy had not been circulated to Directors in advance of the Board meeting. The policy further restricted the information that ANTHC could share not only with the Congressionally-appointed designating entities, but with its own Directors. The policy drastically limited Directors' access to what ANTHC considered to be "[c]onfidential, proprietary, and other sensitive information," in violation of the Directors' rights under Alaska law. The policy stated that Directors may "make reasonable inquiries" to fulfill their fiduciary duties. But the definition of "[r]easonable inquiry" under the policy required a Director to convince ANTHC that he/she had "a specific, stated, legitimate purpose" for seeking the information. The policy stated that "[o]rdinarily, requests are unreasonable to the extent they are unduly burdensome; likely to disrupt operations; . . . or otherwise inconsistent with the scope of a Director's responsibilities." The policy further provided that "Confidential, proprietary and other sensitive information" could be shared with ANTHC Directors (or other organizations) "in appropriate cases" and only if "adequate safeguards are in place" to ensure confidentiality. The policy also gave unnamed persons at ANTHC absolute discretion to determine what information would be shared and with whom, including Directors, with a rebuttable presumption against disclosure. This policy constituted a major breach of trust between SCF and ANTHC, as ANTHC had proposed it and pushed it through the Board without so much as mentioning it to SCF, with which it had been engaged in negotiations regarding information sharing for almost two years.

38.     At the September 2016 ANTHC Board meeting, Teuber agreed to allow the Board to vote on Bylaw changes that would require advanced notice of Executive Committee meetings, would limit Executive Committee authority to urgent matters that arose between meetings, and would make Executive Committee actions "subject to ratification or rescission by the Board of Directors" (but would not require Board ratification). That document is attached as Exhibit 26. It was still important that all actions of the Executive Committee be subject to Board ratification prior to them going into effect, or else the Executive Committee could still bind the organization on its own.

Case 3:17-cv-00018-TMB-TMB Document 51 SEALED Filed 04/10/17 Page 11 of 12

39. Teuber met with the SCF Board on November 2, 2016. The SCF Board gave Teuber one more chance to propose and have the Board pass at the upcoming November 28-29 ANTHC Board meeting the changes to the Code of Conduct and Bylaws that SCF had been proposing for almost two years. That meeting came and passed without Teuber putting any of SCF's proposals on the agenda.

40. I realize that reasonable restrictions on information sharing may be necessary in order for an organization like ANTHC to function. To that end, I understand that ANTHC and SCF began negotiating a confidentiality policy in December 2016. SCF's proposed language provided that SCF, through its Designated Directors, had an absolute legal right to all documents regarding ANTHC's business and operations in order to participate effectively in ANTHC's governance. It also clarified that SCF's Designated Directors may have fiduciary duties to both ANTHC and SCF and would have required ANTHC to recognize as much. SCF promised to maintain the confidentiality of any information shared with it, consistent with ANTHC's stated concerns about sensitive information.

41. Subsequent to filing this lawsuit, Teuber proposed, and the ANTHC Board passed, Bylaw amendments that now require advanced notice to all Board members of Executive Committee meetings, and require that all Executive Committee decisions be ratified by the Board prior to their going into effect. At the same time, however, Teuber asked the Board to revise the Executive Committee Charter to take away from the Executive Committee any responsibility to serve as the Compensation Committee of the Board.

42. Attached as Exhibit 27 is a copy of the statement posted on ANTHC's website on January 25, 2017.

I declare under penalty of perjury under the laws of the United States of America and the State of Alaska that the foregoing is true and correct.

Executed on August 16, 2017, at Anchorage, Alaska.

_Ileen Sylvester_

35963292.3

Case 3:17-cv-00018-TMB Document 51 SEALED Filed 04/10/891 Page 12 of 12