## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SOUTHCENTRAL FOUNDATION, | Case No. 3:17-cv-00018-TMB |
| Plaintiff, | |
| v. | ORDER ON SOUTHCENTRAL FOUNDATION'S MOTION FOR SUMMARY JUDGMENT (DKT. 316) |
| ALASKA NATIVE TRIBAL HEALTH CONSORTIUM, | |
| Defendant. | |

This matter comes before the Court on Plaintiff Southcentral Foundation's ("SCF") Motion for Summary Judgment (the "Motion").[1] SCF seeks a court order that provides the following declaratory relief:

1. Defendant Alaska Native Tribal Health Consortium ("ANTHC") violated Section 325 of the Department of the Interior and Related Agencies Appropriation Act of 1998, Pub. L. No. 105-83, 111 Stat. 1543 ("Section 325") when it denied SCF all documents and information that SCF, through its Designated Director, deemed necessary for SCF to exercise effectively its governance and participation rights in ANTHC. Section 325 entitles SCF to all documents and information that it, through its Designated Director, deems necessary to exercise these rights. Any ANTHC policy to the contrary violates Section 325 and shall be amended. No ANTHC policy may abridge SCF's right to all documents and information that SCF, through its Designated Director, deems necessary to exercise its governance and participation rights in ANTHC.

2. SCF's entitlement to documents and information under Section 325 includes documents and information and communications subject to the attorney-client privilege, attorney work product doctrine, and other similar doctrines ("Privilege"), pursuant to the common interest doctrine. Any ANTHC policy to the contrary violates Section 325 and shall be amended. ANTHC shall enter into a common interest agreement with SCF which shall permit SCF to obtain documents and information ANTHC deems subject to Privilege. No ANTHC

---

[1] Dkt. 316 (Motion); Dkt. 322 (Reply).

1

policy may abridge SCF's right to documents and information, including documents and information subject to Privilege.

3. For SCF's governance and participation rights to be meaningful, SCF's Designated Director must be able to share documents and information with SCF's Board of Directors, Officers, and legal counsel, subject to their agreement to keep ANTHC documents and information confidential. Any ANTHC policy to the contrary violates Section 325 and shall be amended. No ANTHC policy may reduce the universe of [] SCF persons who may view ANTHC documents and information to a universe that does not include SCF's Board, Officers, and legal counsel.[2]

ANTHC opposes the Motion both on the merits and on procedural grounds.[3] Oral argument was held on June 2, 2022.[4] For the following reasons, the Motion at Docket 316 is **GRANTED IN PART and DENIED IN PART**.

## I. BACKGROUND

This case is a dispute over what information SCF is entitled to receive from ANTHC in order to "exercise effectively the governance and participation rights" created by section 325 of the Department of the Interior and Related Agencies Appropriation Act of 1998, Pub. L. No. 105-83, 111 Stat. 1543 ("Section 325").[5]

### A. History of ANTHC

ANTHC was created precisely to avoid impasses, such as the one now before this Court. In the 1990s, Congress intervened after years of negotiations during which over 200 recognized tribes, regional tribal entities, and various other organizations failed to arrive at a consensus for

---

[2] Dkt. 316-1 (Proposed Order).

[3] Dkt. 317 (Opposition); Dkt. 326-1 (Sur-Response).

[4] Dkt. 346 (Minute Entry).

[5] *Southcentral Found. v. Alaska Native Tribal Health Consortium*, 983 F.3d 411, 417, 419 (9th Cir. 2020); *see also* Dkt. 2 (Complaint); Dkt. 21 (Amended Answer and Counterclaim).

2

how to manage the Alaska Native Medical Center ("ANMC").[6] As a solution to the gridlock, Senator Ted Stevens proposed the creation of a consortium.[7] So Congress enacted Section 325, and ANTHC was created "to ensure efficient, experienced Alaska Native management and control" of the new ANMC in Anchorage.[8] By creating ANTHC, Senator Stevens sought to "ensure[] that scarce federal funds will be effectively and efficiently spent on providing high quality health care to Native Alaskans."[9]

ANTHC is "governed by a 15-member Board of Directors" ("Board").[10] Thirteen of the Board's directors represent specific regional health entities ("RHEs"),[11] and two Directors represent the "Indian tribes, as defined in 25 U.S.C. 450b(e), and sub-regional tribal organizations which operate health programs not affiliated with the [RHEs] listed above and Indian tribes not receiving health services from any tribal, regional or sub-regional health provider."[12] Each of the directors on the Board ("Designated Directors" or "Directors") are "leaders in the Tribes and Tribal healthcare organizations that have designated them to serve on ANTHC's Board."[13] SCF, as one

---

[6] Dkt. 316-12 at 2 (Senator Stevens Letter).

[7] *Id.*

[8] *Id.* at 2.

[9] *Id.* at 3.

[10] Department of the Interior and Related Agencies Appropriation Act of 1998, Pub. L. No. 105-83, § 325, 111 Stat. 1543, 1597–98 (1997).

[11] Pub. L. No. 105-83, § 325, 111 Stat. 1543, 1597.

[12] *Id.* at 1597–98.

[13] Dkt. 319 (Lynch Affidavit); Dkt. 319-1 (Board Member Biographies).

3

of the thirteen RHEs and as a Designating Entity,[14] selects one of the fifteen Designated Directors.[15]

Section 325 outlines the participation and governance of ANTHC in the following key terms:

> (a) Notwithstanding any other provision of law, and except as provided in this section, [thirteen regional tribal health organizations, including Southcentral Foundation] . . . *are authorized to form a consortium (hereinafter "the Consortium") to enter into contracts, compacts, or funding agreements . . . to provide all statewide health services provided by the [IHS] of the [DHHS] through the [ANMC] and the Alaska Area Office*. Each specified "regional health entity" shall maintain that status for purposes of participating in the Consortium only so long as it operates a regional health program for the [IHS] under Public Law 93-638 ( 25 U.S.C. 450 et seq.), as amended.

> (b) *The Consortium shall be governed by a 15-member Board of Directors, which shall be composed of one representative of each regional health entity listed in subsection (a) above*, and two additional persons who shall represent Indian tribes, as defined in 25 U.S.C. 450b(e), and sub-regional tribal organizations which operate health programs not affiliated with the regional health entities listed above and Indian tribes not receiving health services from any tribal, regional or sub-regional health provider. *Each member of the Board of Directors shall be entitled to cast one vote. Decisions of the Board of Directors shall be made by consensus*

---

[14] *See* Dkt. 340-1 at 3 (ANTHC Bylaws) ("The term 'Designating Entity' (or 'Designating Entities') means (i) the Regional Health Organizations described in Section 325(a), and (ii) the Unaffiliated Alaska Native Tribal Health Committee.").

[15] Pub. L. No. 105-83, § 325, 111 Stat. 1543, 1597 (Section 325 provides that each of the following tribes may designate a representative to sit on the Board: Aleutian/Pribilof Islands Association, Inc., Bristol Bay Area Health Corporation, Chugachmiut, Copper River Native Association, Kodiak Area Native Area Association, Maniilaq Association, Metlakatla Indian Community, Arctic Slope Native Association, Ltd., Norton Sound Health Corporation, SCF, Southeast Alaska Regional Health Consortium, Tanana Chiefs Conference, Inc., and Yukon-Kuskokwim Health Corporation.).

4

*whenever possible, and by majority vote in the event that no consensus can be reached.*[16]

Accordingly, by its plain language, Section 325 confers to SCF and the other RHEs governance and participation rights in ANTHC.[17] In addition, the Ninth Circuit has determined that Section 325 also "necessarily includes an entitlement to information necessary to effectively exercise those rights."[18]

### B. The Complaints

In January 2017, SCF filed a Complaint seeking declaratory relief.[19] According to SCF and as relevant here,[20] ANTHC allegedly violated Section 325 in various ways, including when it took the following actions:

1. Withheld information from the Designating Entities.[21]

2. Restricted "Designated Directors [from] broadly shar[ing] information with their Designating Entities unless specific permission is sought from and provided by ANTHC."[22]

3. Created a Disclosure Policy that "restricts the Designating Entities' ability to access information and materials that are presented to the ANTHC Board of Directors and its

---

[16] *Southcentral Found.*, 983 F.3d at 414–15 (emphasis in original) (quoting Pub. L. No. 105-83, § 325, 111 Stat. 1543, 1597–98).

[17] *See id.* at 420.

[18] *Id.*

[19] Dkt. 2 at 2 (asserting that the Court "is authorized to issue the declaratory relief sought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202").

[20] SCF also alleged that the creation of the Executive Committee violated Section 325. *See* Dkt. 2 at 15.

[21] *Id.*

[22] *Id.* at 15–16.

5

committees in executive session and also restricts the Designated Directors' ability to access confidential and privileged ANTHC information."[23]

In the Complaint, SCF requested the following specific relief:

> 1. An order declaring the ANTHC Executive Committee as currently constituted to be contrary to federal law, void and without effect, to the extent any action of the Executive Committee is deemed valid before it is ratified by the full 15-member ANTHC Board, as required by Section 325;
>
> 2. An order declaring SCF and the other Designating Entities specified in Section 325 to be participants in the ANTHC consortium under the federal law creating it, entitled to all documents and information necessary to participate in the governance of the consortium, including confidential and/or privileged documents and information, provided SCF and the other Designating Entities agree to maintain the confidentiality of such documents and information;
>
> 3. An order declaring that SCF's Designated Directors have an absolute right to documents and information as directors of ANTHC, without limitation or reservation, and a right and duty to convey such documents and information to their Designating Entity, SCF, provided that SCF agrees to maintain the confidentiality of such documents and information;
>
> 4. An order declaring that certain Bylaws of ANTHC conflict with federal law and must be amended;
>
> 5. An order declaring that the ANTHC Board of Directors Code of Conduct as currently drafted conflicts with federal law and must be amended;
>
> 6. An order declaring that the ANTHC Disclosure Policy as currently drafted conflicts with federal law and must be rescinded;
>
> 7. An award for the costs of this suit, including attorneys' fees; and
>
> 8. Any other relief which this Court deems just and proper.[24]

After filing an initial Answer, ANTHC sought leave from the Court to amend its Answer and file a counterclaim for declaratory relief.[25] ANTHC's Complaint asks the Court to dismiss

---

[23] *Id.* at 16.

[24] *Id.* at 17–18.

[25] Dkt. 11 (Answer); Dkt. 21(Amended Answer & Counterclaim).

SCF's Complaint, and to declare that "ANTHC [D]irectors have an undivided duty of loyalty to ANTHC" and that "the duty of loyalty requires [D]irectors to identify any potential conflict of interest they may have and, if they cannot share details regarding the potential conflict, to recuse themselves from discussions and votes that involve the potential conflict of interest."[26] ANTHC also asks the Court to declare "that, among other restrictions and consistent with the duty of loyalty, ANTHC may restrict the flow of information from directors to their [RHEs] when directors face conflicts of interest, directors have competing duties between ANTHC and the [RHE] that they represent, or such information may be used for the benefit of [RHEs] in competition with ANTHC" and that "that directors are not entitled to ANTHC documents and information if those materials will be used in a way that is inconsistent with directors' undivided duty of loyalty to ANTHC."[27] Lastly, ANTHC asks the Court to declare that ANTHC's Articles of Incorporation, Bylaws, Code of Conduct, and Disclosure Policy comply with federal and state law.[28]

### C. Appeal to the Ninth Circuit

ANTHC also initially challenged whether SCF, as a Designated Entity, had standing to bring suit under Rule 12(b)(1).[29] This Court granted ANTHC's Motion to Dismiss, finding SCF failed to allege an injury in fact sufficient to confer Article III standing to challenge alleged

---

[26] Dkt. 21 at 30–31.

[27] *Id.* at 30.

[28] *Id.*

[29] Dkt. 33 (Sealed Motion to Dismiss); Dkt. 34 (Motion to Dismiss).

violations of Section 325.[30] SCF appealed.[31] The Ninth Circuit reversed this Court's Order dismissing the case.

The Ninth Circuit found that "SCF has alleged an injury in fact sufficient to confer Article III standing to bring its claim."[32] In finding so, the Ninth Circuit began its analysis with "the plain language of Section 325."[33] According to the plain language, "Section 325 conferred governance and participation rights to SCF, which necessarily includes an entitlement to information necessary to effectively exercise those rights."[34] While Section 325 states no express entitlement to information, the Ninth Circuit concluded "the right to govern would be a hollow promise absent the information necessary to exercise that right intelligently."[35] The Ninth Circuit also rejected ANTHC's argument "that Section 325 grants rights of governance *only* to Directors."[36] Instead, the Ninth Circuit concluded "[h]ad Congress meant, for instance, that [RHEs] were merely 'advisory,' it could have used this alternate language. Instead, Congress endowed each specified [RHE] with the right to have a 'representative' on the Board that stands in the shoes of the designating entity by acting on its behalf."[37]

---

[30] Dkt. 149 (Order re: Motion to Dismiss); *see also Southcentral Found.*, 983 F.3d at 413.

[31] *Southcentral Found.*, 983 F.3d at 413.

[32] *Id.* at 419.

[33] *Id.* at 417.

[34] *Id.* at 420; *see also id.* at 419 ("Section 325 granted SCF governance and participation rights in the management of ANTHC to be exercised through SCF's representative on the Board.").

[35] *Id.* at 419.

[36] *Id.* at 418 (emphasis in original).

[37] *Id.*

8

*D. ANTHC's Rule 19 Motion*

Once the Ninth Circuit established that SCF had standing to bring this suit, ANTHC moved for Judgment on the Pleadings for failure to join parties pursuant to Federal Rule of Civil Procedure ("Rule") 19.[38] ANTHC argued that SCF's claims should be dismissed "[b]ecause ANTHC's [other] Tribal participants are necessary and indispensable parties to the resolution of SCF's claims concerning those shared rights and because it is not feasible to join them."[39] The Court denied the Motion and found the case could proceed.[40]

*E. Partial Judgment*

At the parties' request, the Court then entered their Partial Settlement Agreement as a Stipulated Partial Judgment in this case ("Partial Judgment").[41] The Partial Judgment resolved some of the issues before this Court as the parties came to agreement on eight general principles. Included in those principles are:

(1) "SCF, as a Designating Entity, is entitled to all documents and information it needs to effectively exercise its governance and participation rights";[42]

(2) "the version of [ANTHC's Bylaws, Disclosure of Records and Information Policy ('Disclosure Policy'), and Code of Conduct] referenced in this Judgment conform to Section 325, Paragraphs 1–6 of this Judgment, and the principles enumerated in Paragraphs 1–6";[43] and

---

[38] Dkt. 296 (Rule 19 Motion).

[39] *Id.* at 40.

[40] Dkt. 334 (Order re: Rule 19 Motion).

[41] *See generally* Dkt. 313.

[42] Dkt. 340 at 3.

[43] *Id.* at 4.

9

(3) "ANTHC's Board of Directors shall retain the discretion to amend ANTHC's governance documents . . . but may not amend any governance document in a way inconsistent with this Judgment, Section 325 or other applicable law, or any order of the Court."[44]

Despite negotiating an agreement on some of the issues before the Court,[45] SCF expressly reserved the right to make arguments regarding three "Reserved Issues":

(1) whether ANTHC can share information subject to the attorney-client privilege, attorney work product doctrine or other similar protection with SCF under the common interest doctrine, joint defense doctrine, or other applicable doctrine without waiving the privilege[;]

(2) the persons at SCF with whom SCF's Designated Director may share information; and

(3) the documents and information that SCF's Designated Director may share with SCF, as a Designating Entity, and whether the ANTHC Board can amend ANTHC's governance documents in a way that reduces the documents and information that SCF, as a Designating Entity, can receive, consistent with Section 325 and other applicable law (collectively, the "Reserved Issues").[46]

The parties also added the caveat to the Partial Judgment that "[n]otwithstanding this paragraph or any other statement in this Judgment, SCF expressly reserves the right to make arguments regarding the Reserved Issues, including that ANTHC's interpretation and application of its current governance documents is not in compliance with Section 325 with regard to the Reserved Issues."[47]

---

[44] *Id.* at 4–5.

[45] *See* Dkt. 350 at 26–27 (Hearing Transcript).

[46] Dkt. 313 at 6; Dkt. 340 at 4, n.8.

[47] Dkt. 340 at 4.

*F.   ANTHC's Policies*

At the heart of the present dispute are three of ANTHC's written policies: the Board's Bylaws, Code of Conduct, and Disclosure Policy. The Bylaws provide that absent a conflict of interest or improper motive, Directors are "entitled at any reasonable time to inspect and copy the books, records, and documents of ANTHC to the extent reasonably related to the performance of the Director's duties as a Director."[48] But the Bylaws do not extend the same "nearly 'absolute' right" to documents and information that the Directors enjoy to the Designating Entities.[49] The Board's Code of Conduct and its Disclosure Policy restrict how Directors may share documents and information with their respective Designating Entity.[50]

The ANTHC Code of Conduct provides that each Director owes certain duties to ANTHC, including a duty of confidentiality.[51] Designating Entities are not subject to these same duties.[52] The Code of Conduct creates only two exceptions to a Director's Duty of Confidentiality: the first for sharing information with a Director's Designating Entity, and a second for certain compensation information.[53] The exception for Designating Entities provides:

---

[48] Dkt. 340-1 at 8.

[49] *Id.*

[50] *Id.* at 3.

[51] *See generally* Dkt. 340-2 (ANTHC Code of Conduct) (The Code of Conduct provides each Director has the following duties to ANTHC: Duty of Loyalty, Good Faith, and Fair Dealing; Duty of Confidentiality; Duty of Care; Duty to be Informed; Duty of Effective Representation; Duty to Act as a Deliberative Body; Duty of Corporate Oversight; Duty of Respect.); *see also* Dkt. 350 at 40 ("The designated directors are subject to all of the duties and obligations set forth in ANTHC's governance documents.").

[52] Dkt. 350 at 41.

[53] Dkt. 340-2 at 5.

Designating Entities are entitled to all documents and information they need to effectively exercise their governance and participation rights. Directors may share such documents and information with their Designating Entities under the procedures and limitations set out in ANTHC's Bylaws, [the] Code of Conduct, and the [Disclosure Policy], which are drafted to ensure the Designating Entities' governance rights.[54]

Meanwhile, the Disclosure Policy sets forth limitations on the procedures for sharing documents and information with Designating Entities. As a general rule, the Disclosure Policy provides that "Directors may share with Permitted Recipients of their Designating Entities all documents and information they receive as a Director, subject to the limitations and protections set out in section 5.4."[55] Section 5.4 designates certain categories of information and documents as "Highly Sensitive Confidential Information."[56] Those categories include information and documents subject to attorney-client privilege, attorney work product, or similar legal protections; medical and personal financial information about an individual and personnel information regarding ANTHC employees; sensitive compliance, accreditation, and clinical risk information and other sensitive information about other tribal health entities; sensitive epidemiology and population health information about populations served by other regions; information subject to specific contractual or legal restrictions, including the Privacy Act, HIPAA, and 42 C.F.R. Part 2 and peer review or medical quality assurance information; and information about what individual Directors said, supported, or opposed in executive session.[57] For the purposes of this lawsuit, the

---

[54] *Id.*

[55] Dkt. 340-3 at 2.

[56] *Id.* at 3.

[57] *Id.* at 3–4.

parties are concerned with documents and information subject to attorney-client privilege, attorney work product, or similar legal protections ("Legal Protections") only.

Pursuant to the Disclosure Policy, there are two processes by which a Director may seek permission to share information and documents subject to Legal Protections with its Designating Entity. First, the Disclosure Policy provides that information and documents subject to Legal Protections "may only be shared with a Designating Entity if ANTHC and the Designating Entity have an agreement (or agreements) that would preserve the legal protection."[58] The Disclosure Policy provides that "[w]hen a new matter that is subject to a legal protection arises, counsel for ANTHC and the Designating Entity will confer and present amendments to the applicable model agreement, if needed, so that the matter may be shared with the Designating Entity *if it is at all possible to do so without waiving the legal protection*."[59] But where it is not possible to share attorney-client privileged information without waiving privilege, a majority of the ANTHC Board of Directors may nevertheless vote to share the information with the Designating Entity and waive privilege.[60]

SCF has tried to obtain legally protected documents from ANTHC only through entry of a common-interest agreement.[61] SCF's Designated Director "has repeatedly asked ANTHC to enter a common interest agreement so that [she] can share information [she] obtained from ANTHC's counsel" that is otherwise privileged.[62] SCF's Director asserts that she "need[s] to be able to share

---

[58] *Id.* at 3.

[59] *Id.* (emphasis added).

[60] *Id.*

[61] Dkt. 319 at 3; *See* Dkt. 350 at 30, 45–50.

[62] Dkt. 316-2 at 2.

all documents and information about ANTHC's governance with SCF's Board, Officers and legal counsel in order to obtain guidance and input from them."[63] ANTHC has refused to enter a common-interest agreement with SCF—either a general agreement or one that is tailored for the investigative reports of ANTHC's former Chair/President.[64] "SCF has not asked the ANTHC Board to authorize the disclosure of the investigative reports at issue in its Motion," or in other words, SCF has not asked the ANTHC Board to vote on whether to waive privilege related to the investigative reports of ANTHC's prior Chair/President.[65]

### G. Motion for Summary Judgment

Now, through this Motion, SCF argues it is entitled the following three forms of declaratory relief:

(1) SCF's Designated Director rather than ANTHC should determine what documents and information are necessary for SCF to exercise its governance and participation rights on the Board;[66]

(2) SCF is entitled to documents and information and communications subject to Legal Protections, pursuant to the common-interest doctrine,[67] and

---

[63] *Id.*

[64] *See* Dkt. 317 at 36. In February 2021, ANTHC's Chair/President "abruptly resigned." Dkt. 316-14 at 2; *see also* Dkt. 316-2 at 2 (Kyle Affidavit). Shortly after, allegations surfaced that an employee had accused him of "a pattern of abusive behavior, harassment and coerced sexual encounters." Dkt. 316-14 at 2; *see also* Dkt. 316-2 at 2. In response to the allegations, ANTHC "conduct[ed] an 'independent outside' investigation." Dkt. 316-14 at 4; *see also* Dkt. 316-2 at 2.

[65] Dkt. 319 at 3; *see also* Dkt. 350 at 30, 45–50.

[66] *See* Dkt. 316 at 22–25.

[67] *See id.* at 25–33.

(3) SCF's Designated Director must be able to share documents and information with SCF's Board of Directors, officers, and legal counsel.[68]

ANTHC opposes the Motion and argues "[t]he rulings SCF seeks also should be denied for multiple jurisdictional and procedural reasons, and because they fail on the merits."[69] ANTHC first reasserts that this lawsuit should be dismissed pursuant to Rule 19 because the lawsuit implicates the interests of absent indispensable parties.[70] ANTHC next raises a series of procedural defenses it believes preclude summary judgment, including that (1) "none of SCF's present requests for declaratory relief are included in its complaint" and therefore its requests are not properly before the Court; (2) much of the relief SCF seeks is already addressed by the Partial Judgment in this case and is therefore "foreclosed by the Agreement and judicial estoppel"; and (3) the Court does not have jurisdiction to "strip ANTHC's Board of authority to lawfully change existing policies" by issuing advisory opinions.[71] Finally, ANTHC argues that the relief SCF seeks is itself contrary to Section 325 and that the common-interest doctrine will not shield ANTHC's attorney-client privileged information should it be shared with SCF.[72]

Despite ANTHC's objections, the Court finds that SCF is, in fact, entitled to relief and therefore **GRANTS in part and DENIES in part** the Motion.

---

[68] *See id.* at 33–25.

[69] Dkt. 317 at 11.

[70] *Id.* at 19.

[71] Dkt. 317 at 21–35.

[72] *Id.* at 36.

## II.  LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[73] "The evidence is viewed 'in the light most favorable to the non-moving party.'"[74]

Declaratory relief is available "[i]n a case of actual controversy" where "upon the filing of an appropriate pleading," a court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."[75] When declaratory relief is sought, the party seeking such relief must prove that there is a case of actual controversy before the court and that all of the elements of the claim are satisfied as a matter of law.[76] "If the suit passes constitutional and statutory muster, the district court must also be satisfied that entertaining the action is appropriate."[77] "The exercise of jurisdiction under the Declaratory Judgment Act is at the discretion of the district court."[78]

---

[73] Fed. R. Civ. P. 56(a).

[74] *Frlekin v. Apple, Inc.*, 979 F.3d 639, 643 (9th Cir. 2020) (quoting *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014) (en banc)).

[75] 28 U.S.C. § 2201(a).

[76] *Watts v. United States*, 703 F.2d 346, 347 (9th Cir. 1983) ("To obtain a summary judgment in favor of a claim, 'the moving party must offer evidence sufficient to support a finding upon every element of his [or her] claim . . . , except those elements admitted . . .' by the adversary.") (alterations in original) (quoting *United States v. Dibble*, 429 F.2d 598, 601 (9th Cir. 1970)); *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 604 (D. Nev. 2011) (explaining that a party seeking declaratory relief is required "to establish 'a case of actual controversy' within the court's jurisdiction") (citation omitted)).

[77] *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998) (*Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 250 (1952)).

[78] *Pinnacle Architecture, Inc. v. Hiscox, Inc.*, 543 F. Supp. 3d 997, 1003 (D. Or. 2021) (citing *Gov't Emp. Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998)).

16

## III. DISCUSSION

There is no dispute between the parties that at the time SCF filed suit "[s]ome provisions in ANTHC's Bylaws, Disclosure [] Policy, and Code of Conduct . . . were contrary to Section 325."[79] The ANTHC Board has since revised its policies,[80] and the parties entered a Partial Settlement Agreement.[81] In the Partial Settlement Agreement, the parties agreed that the latest version of ANTHC's policies "conform with Section 325," but even so, SCF "reserve[d] the right to make arguments regarding the Reserved Issues, including that ANTHC's interpretation and application of its current governance documents is not in compliance with Section 325 with regard to the Reserved Issues."[82]

The parties now dispute whether SCF is entitled to additional declaratory relief. ANTHC does not present material issues of fact that would preclude summary judgment but instead argues that SCF is not entitled to judgment as a matter of law. The Court disagrees and finds that SCF has demonstrated that it is entitled to some of the relief it seeks and that ANTHC has failed to show that summary judgment would be improper for procedural reasons.

### A. ANTHC Failed to Show that SCF is not entitled to Summary Judgment

#### 1. Rule 19 Motion Already Denied

First, ANTHC reasserts that this lawsuit should have been dismissed pursuant to Rule 19 because the interests of absent sovereign ANTHC participants will be affected by the relief sought by SCF, and therefore this case must be dismissed and SCF should not receive the relief it

---

[79] Dkt. 340 at 4.

[80] Dkt. 317 at 12; *see* Dkt. 319.

[81] *See* Dkt. 340.

[82] *Id.* at 4.

requests.[83] The Court, however, has already rejected this argument at Docket 334, and ANTHC has neither raised additional argument here nor moved for reconsideration of the Court's earlier order.

### 2. ANTHC Received Sufficient Notice of the Claims Against It

Second, ANTHC argues that "[b]ecause none of SCF's present requests for declaratory relief are included in its complaint, they are not properly before the Court" and SCF is not entitled to relief.[84] "[Rule] 8(a)(2) requires that the allegations in the complaint 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"[85] According to ANTHC, the Complaint does not provide notice that SCF would now seek the following specific forms of declaratory relief, including the factual bases for such relief: (1) that SCF's Designated Director rather than ANTHC should determine what documents SCF can access; (2) that ANTHC cannot amend its current information sharing policies in the future; and (3) that the common-interest doctrine would preserve ANTHC's privilege and ANTHC should be ordered to enter a common-interest agreement with SCF.[86] SCF responds that the only facts that have changed since it filed this lawsuit are that ANTHC revised its policies in response to the Ninth Circuit opinion.[87]

---

[83] Dkt. 317 at 19.

[84] *Id.* at 21.

[85] *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)).

[86] Dkt. 317 at 22–23.

[87] Dkt. 322 at 19–20. While SCF has alleged that there are additional documents and information that ANTHC has refused to provide since SCF filed the Complaint in this case, SCF does not seek an order from this Court stating that ANTHC is required to provide specific recent documents and information. *See* Dkt. 316-1.

According to SCF, ANTHC cannot "moot this case" by amending its policies and points to the fact that ANTHC both has agreed to the Reserved Issues in the parties' Partial Settlement Agreement and has relied on its amended policies to defend itself now.[88] But SCF also argues that the Complaint sufficiently pleads the remaining legal issues for the Court,[89] so ANTHC will not be prejudiced if the Court decides the remaining issues.[90]

The Court finds that the Complaint affords ANTHC fair notice of the factual bases of the allegations against it and the relief SCF now seeks.[91] Unlike *Pickern v. Pier 1 Imports (U.S.), Inc.*,[92] where the complaint provided a list of exemplar barriers but failed to identify the actual barrier in question, SCF's Complaint makes specific factual allegations and requests for relief consistent with the relief it presently seeks.[93] In addition, the parties recently mutually agreed on the Reserved Issues that SCF might raise in summary judgment.[94] With the exception of who

---

[88] Dkt. 322 at 20.

[89] *Id.* at 19.

[90] *Id.* at 21.

[91] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").

[92] 457 F.3d 963, 968 (9th Cir. 2006).

[93] *See* Dkt. 2 at 9–14 (ANTHC's policies codified "ANTHC's position that the Designating Entities are not legally entitled to information and materials that are presented to the ANTHC Board of Directors and its committees in executive session").

[94] *See* Dkt. 340 at 4, n.8; *see also* Dkt. 313 at 2, 6.

determines whether information or documents are necessary to exercise SCF's governance and participation rights, the relief sought falls squarely within the Reserved Issues.[95]

ANTHC's reliance on the notion that "summary judgment is not a procedural second chance to flesh out inadequate pleadings" is not applicable here. Unlike the cases ANTHC cites, SCF is not trying to "flesh out inadequate pleadings." Rather, the parties have narrowed the scope of the relief available in response to policy changes implemented by ANTHC and after the resolution of several claims by the Partial Settlement Agreement. By entering that agreement, the parties expressly reserved the issues SCF now raises for resolution through summary judgment.[96] This Partial Settlement Agreement clearly shows that ANTHC was on notice of the remaining claims.

Specifically, the Court first finds that the Complaint provides notice that SFC may seek relief that its Director, rather than ANTHC, should decide what information is necessary to effectively exercise its Section 325 governance rights. Even though the specific requested relief was amended following the Ninth Circuit's opinion and for purposes of summary judgment, the requested relief is consistent with the factual allegations and relief sought in the Complaint. From

---

[95] *See* Dkt. 313 at 6 (The Reserved Issues identified by the parties, which ANTHC agreed could be "raise[d] and oppose[d] on any grounds," include: (1) "whether ANTHC can share information . . . with SCF under the common interest doctrine," (2) "the persons at SCF with whom SCF's Designated Director may share information," and (3) "the documents and information that SCF's Designated Director may share with SCF, as a Designating Entity, and whether the ANTHC Board can amend ANTHC's governance documents in a way that reduces the documents and information that SCF, as a Designating Entity, can receive, consistent with Section 325 and other applicable law.").

[96] *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) (quoting *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006)). Nothing in the Partial Settlement Agreement leads the Court to conclude that ANTHC disputes whether the Reserved Issues are properly before the Court.

the beginning, SCF has taken issue with the fact that its Designated Directors were restricted on what information they can share with SCF.[97] SCF has asserted "the [RHEs], Indian tribes, and tribal organizations represented on the [Board] . . . are entitled to all information provided to the ANTHC Directors who are designated by these entities to represent them on the ANTHC Board."[98] In addition, the Complaint asserts that the requirement for Designated Directors to obtain "specific permission" to share certain information violates Section 325 and that the Code of Conduct should be clarified to state "the Designated Directors have the legal right to access confidential information and documents relating to ANTHC's business and operations and that they do not breach any fiduciary duties to ANTHC by sharing such ANTHC information and documents with the governing bodies of the Designating Entities they represent."[99] While the specific language of the relief sought may have been revised over the course of litigating this case, the Court finds that ANTHC had notice that SCF sought to shift who determines what information SCF can access.

Second, the Court finds that while the Complaint does not request specific relief to prevent ANTHC from amending its current policies, such relief is an anticipated reaction to the revisions ANTHC made to its policies during the course of litigating this case and is consistent with the agreed upon Reserved Issues. The present relief sought is not limitless but instead SCF seeks to prevent ANTHC from implementing policies that would "abridge" or "reduce" documents or information available to it. While this relief, when considered in the context of this case, appears consistent with the remedy SCF seeks in the Complaint, to the extent SCF seeks relief to "prevent[]

---

[97] Dkt. 2 at 9.

[98] *Id.* at 15.

[99] *Id.* at 15–16; *see also id.* at 12–13.

the ANTHC Board from amending the current information sharing policies"[100] whatsoever, the Court will not entertain such a request. The Court cannot anticipate changes to laws that may result in a reduction of what information can be shared. Furthermore, ANTHC has already agreed that "ANTHC's Board of Directors . . . "may not amend any governance document in a way inconsistent with this Judgment, Section 325 or other applicable law, or any order of the Court."[101]

Third, the Court finds that the Complaint affords ANTHC sufficient notice that SCF may argue that the common-interest doctrine would preserve ANTHC's attorney-client privilege. ANTHC asserts that the "complaint alleges no facts to support applying the common-interest doctrine, no claim regarding the legal consequences of disclosing ANTHC's privileged information, and no prayer for any relief relating to the common-interest doctrine, much less an injunction to enter into a common-interest agreement."[102] Yet, the Complaint expressly seeks "[a]n order declaring SCF and the other Designating Entities specified in Section 325 to be participants in the ANTHC consortium under the federal law creating it, entitled to all documents and information necessary to participate in the governance of the consortium, including confidential and/or privileged documents and information."[103] While SCF did not invoke the common-interest doctrine in the Complaint, it in no uncertain terms stated under its interpretation of Section 325, it is entitled to confidential and privileged documents. Further, ANTHC agreed in the Partial Settlement Agreement that one of the three Reserved Issues is "whether ANTHC can share information subject to the attorney-client privilege, attorney work product doctrine or other similar

_____

[100] Dkt. 317 at 23.

[101] Dkt. 340 at 4–5.

[102] Dkt. 317 at 23.

[103] Dkt. 2 at 17.

22

protection with SCF under the common interest doctrine, joint defense doctrine, or other applicable doctrine without waiving the privilege."[104] It is clear to the Court that ANTHC is on notice that that SCF is seeking privileged documents. Integral to any request for privileged documents is whether such disclosure would result in the waiver of privilege. Thus, it is foreseeable, and even likely, that issues related to the application of the common-interest doctrine may arise.

For these reasons, the Court finds that ANTHC was "on notice of the evidence it need[ed] to adduce in order to defend against [SCF's] allegations."[105] The Court, therefore, concludes the relief SCF now seeks was sufficiently pled to meet the liberal Rule 8 pleading requirements.

### 3. Neither Contract Law nor Judicial Estoppel Preclude the Court from Reaching the Merits

ANTHC next argues SCF is not entitled to an order stating that its Designated Director may determine which documents and information SCF is permitted to view because "SCF [has] renege[d] on its settlement agreement concession that ANTHC's current policies conform to Section 325."[106] According to ANTHC, because such relief is foreclosed by the Agreement, "SCF is [also] precluded from prevailing [] now by contract law and judicial estoppel."[107] Further, ANTHC argues that such relief is contrary to Section 325. SCF responds that it did not violate the Partial Settlement Agreement because "SCF was *not* agreeing that *all* of ANTHC's revised policies complied with Section 325."[108] Specifically, SCF claims that it "expressly reserved the argument

---

[104] Dkt. 340 at 4, n.8.

[105] *Updike v. Multnomah Cnty.*, 870 F.3d 939, 953 (9th Cir. 2017) (quoting *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000)).

[106] Dkt. 317 at 23–24.

[107] *Id.* at 24.

[108] Dkt. 322 at 12 ("Notwithstanding this paragraph or any other statement in this Agreement, SCF expressly reserves the right to make arguments regarding the Reserved Issues, including that

23

that even as to those policies that conform with Section 325 on their face, ANTHC's application of those policies violates Section 325."[109] The Court does not agree with ANTHC that SCF has reneged on its agreement.

The Court finds that there is an inherent tension in the parties' settlement agreement that the Court adopted as Partial Judgment in this case. The parties both agreed that the current versions of ANTHC's Bylaws, Disclosure of Records and Information Policy, and Code of Conduct both conformed with Section 325 while reserving the right to make arguments that policies underlying the Reserved Issues were not in compliance with Section 325.[110] To resolve the tension, the Court interprets the relief SCF seeks, including that SCF's Designated Director should determine what documents and information it can share with SCF, as within the scope of the Reserved Issues. Unlike *Alleva v. Municipality of Anchorage*,[111] the Agreement does not bar the relief SCF seeks because it was not covered in its entirety by the Agreement.[112] Thus, SCF has reserved the right to challenge ANTHC's policies as they relate to the application of the attorney-client privilege,

---

ANTHC's interpretation and application of its current governance documents is not in compliance with Section 325 with regard to the Reserved Issues in the preamble.").

[109] Dkt. 325 at 12.

[110] *See* Dkt. 340 at 4 ("Some provisions in ANTHC's Bylaws, Disclosure of Records and Information Policy, and Code of Conduct as they existed at the time SCF filed the Lawsuit were contrary to Section 325, but the version of those documents referenced in this Judgment conform to Section 325, Paragraphs 1–6 of this Judgment, and the principles enumerated in Paragraphs 1–6. Notwithstanding this paragraph or any other statement in this Judgment, SCF expressly reserves the right to make arguments regarding the Reserved Issues, including that ANTHC's interpretation and application of its current governance documents is not in compliance with Section 325 with regard to the Reserved Issues.").

[111] 467 P.3d 1083 (Alaska 2020).

[112] *Id.* at 1089.

including the common-interest doctrine, who at SCF can receive information regarding ANTHC, and the scope of the documents and information Designated Directors may share. For this reason, the Court determines that SCF has neither breached its Agreement nor should be judicially estopped from challenging ANTHC's policies as it has.

Further, the Court finds that SCF's challenge to the ANTHC policies does not inherently violate Section 325. While Section 325 sets forth a framework for how Board decisions should be made, the statute also grants "governance and participation rights to SCF, which necessarily includes an entitlement to information necessary to effectively exercise those rights."[113] Nothing in Section 325 or the Ninth Circuit's opinion would lead the Court to conclude that the Board can limit or curtail a Designating Entity's Section 325 rights by consensus or majority vote, even where the policies appear reasonable and consistent with data governance best practices.

    4.  <u>The Court does not Issue an Advisory Opinion, But Find there is a Live Case or Controversy</u>

ANTHC next argues that SCF is not entitled to declaratory relief that would "limit ANTHC's Board's authority to change its information sharing policies in the future" on the basis that such relief would amount to an impermissible advisory opinion.[114] ANTHC argues that any restriction related to ANTHC's future policies would be "hypothetical, speculative, and not ripe for resolution," especially in light of the fact that the parties previously agreed that ANTHC's existing policies comport with Section 325 and ANTHC is not currently considering any changes to "either the scope of information that may be shared with SCF or the scope of SCF's Permitted

---

[113] *Southcentral Found.*, 983 F.3d at 420.

[114] Dkt. 317 at 31.

Recipients."[115] ANTHC specifically argues that a court order would amount to an advisory opinion if the Board is precluded from making lawful changes to its information sharing policies that might either (1) "in some way limit the information available to SCF" or (2) "limit[] the individuals at SCF . . . who are entitled to see ANTHC's confidential information."[116] ANTHC also argues that such relief would be "in the nature of a mandatory injunction," which would "prospectively prohibit ANTHC's Board from ever making *lawful* changes to its information governance policies that SCF believes might be less favorable to it than ANTHC's current policies."[117]

SCF objects to this argument and accuses ANTHC of "repackage[ing] the mootness argument that the Ninth Circuit rejected."[118] According to SCF, even though ANTHC represents that its policies "currently allow for most of the relief that SCF seeks and [ANTHC] has no plans to change them," there remains a case or controversy. SCF asserts that ANTHC's revised policies do not meet the requirements of voluntary cessation and that because ANTHC is unwilling to stipulate to the complete relief which it seeks, the case is not moot.[119] For this reason, SCF seeks an order from this court that ANTHC cannot "reduce the amount of information SCF could obtain or reduce the universe of Permitted Recipients" in the future.[120]

To the extent that SCF's Motion seeks to outright prohibit ANTHC from revising its policies in any manner that would effectively reduce the amount of information SCF can obtain or

---

[115] *Id.* at 32.

[116] *Id.* at 30–31.

[117] *Id.* at 35 (emphasis in original).

[118] Dkt. 322 at 14.

[119] *Id.*

[120] *Id.* at 17.

restrict who is considered Permitted Recipients under ANTHC's policies, the Court declines to do so for four reasons. First, there are no specific proposed changes before the Court at this time, so it would be speculative for the Court to consider granting such relief. Second and related to the first point, it is conceivable that future revisions to ANTHC's policies may be necessary as a result of changes to the law but may also have the effect of reducing the amount of information that is available to SCF. The Court also finds that it is conceivable that the ANTHC Board may still be able to revise its policies in a manner that does not impair SCF's governance rights. Finally, the Court believes that the relief SCF seeks has already been granted in the Partial Judgment. The Partial Judgment states that "ANTHC's Board of Directors . . . may not amend any governance document in a way inconsistent with this Judgment, Section 325 or other applicable law, or any order of the Court."[121] Any specific future changes to the ANTHC Board's policies and procedures that fail to comport with Section 325 can be challenged in a later proceeding. For these reasons, the Court does not intend to provide declaratory relief that would restrict the ANTHC Board's authority to revise its policies in the future, provided such changes are consistent with Section 325.

### 5. Common-Interest Doctrine

Finally, ANTHC argues that SCF is not entitled to declaratory relief related to the common-interest doctrine. SCF seeks an order stating "SCF's entitlement to documents and information under Section 325 includes documents and information and communications subject to the attorney-client privilege, attorney work product doctrine, and other similar doctrines, [] pursuant to the common interest doctrine."[122] ANTHC points out that the Court cannot find categorically

---

[121] Dkt. 340 at 4.

[122] Dkt. 316-1 at 2. For purposes of the Court's analysis, the Court does not understand SCF's Motion to seek declaratory relief pertaining to any particular document or information, instead SCF has sought general declaratory relief. To the extent that the parties refer to investigative

that the common-interest doctrine applies to every disclosure of privileged information between ANTHC and the RHEs because privilege is analyzed on a case-by-case basis.[123] ANTHC also specifically argues that the common-interest doctrine would not apply under state or federal law to the investigative reports that SFC now seeks.[124] Finally, ANTHC asserts that the parties cannot prevent the waiver of privilege by asking the Court to order the parties to sign a common-interest agreement.[125]

As a general matter, the Court agrees with ANTHC that it cannot categorically find that any ANTHC's attorney-client privileged information disclosed to SCF is protected by the common-interest doctrine. But the Court does see an argument that certain attorney-client privileged information related to the governance of ANTHC may be protected pursuant to the common-interest doctrine. Even so, as explained below, the Court finds that Section 325 entitles SCF, as an RHE, to all information it needs to effectively exercise its governance and participation rights, even if that information is protected by the attorney-client privilege and even if the common-interest doctrine would not apply to prevent waiver.

B. Relief

SCF has asserted that Section 325 provides that it and the other Designated Entities are entitled to documents and information regardless of whether attorney-client privilege can be

---

reports, the Court understands the investigative reports to be offered as an example of the nature of documents and information that the parties dispute whether they can be disclosed without waiving attorney-client privilege pursuant to the common-interest doctrine.

[123] Dkt. 317 at 46.F

[124] *Id.* at 39–45.

[125] Dkt. 350 at 20.

preserved.[126] In light of the plain language of Section 325 and the Ninth Circuit's opinion in this case, the Court agrees with SCF.

Without question, Section 325 expressly confers governance and participation rights in the management of ANTHC to the RHEs, including SCF.[127] The Ninth Circuit rejected the notion that RHEs are merely intended to be advisory under Section 325 but instead concluded that "Congress endowed each specified [RHE] with the right to have a 'representative' on the Board that *stands in the shoes* of the designating entity by acting on its behalf."[128] The Ninth Circuit found that those governance and participation rights "necessarily include[] an entitlement to information necessary to effectively exercise those rights."[129] An entitlement is "[a]n absolute right to a [] benefit, . . . granted immediately upon meeting a legal requirement."[130] Here, the Court understands that by virtue of being a designated RHE on ANTHC's Board, SCF has an absolute right to any information that is necessary for SCF to effectively exercise its governance and participation rights. Therefore, the Court concludes that where information is necessary to effectively exercise an RHE's governance rights, ANTHC may not withhold attorney-client privileged information from RHEs. If information could be withheld from RHEs on the mere basis that it is privileged,

---

[126] *See* Dkt. 2; *see also* Dkt. 350 at 48–49; *but see* Dkt. 322 at 24, n.66 ("As previously discussed, the Ninth Circuit's discussion of the relationship between a Designating Entity and its Designated Director renders a common interest agreement unnecessary under the circumstances. [] However, on this motion, SCF seeks only to hold ANTHC to the commitment enshrined in its governance documents to share information under a common interest agreement.").

[127] *Southcentral Found.*, 983 F.3d at 420; *see also* Dkt. 340 at 1.

[128] *Id.* at 418 (emphasis added).

[129] *Id.* at 420.

[130] *Entitlement*, *Black's Law Dictionary* (11th ed. 2019).

"the right to govern would be a hollow promise absent the information necessary to exercise that right intelligently."[131]

Even so, SCF is clear that it asks the Court to declare not only that it is entitled to information necessary to effectively exercise its governance and participation rights but also that it is entitled to this information "*pursuant to the common interest doctrine*"[132] and that "ANTHC shall enter into a common interest agreement with SCF which shall permit SCF to obtain documents and information ANTHC deems subject to Privilege."[133] The Court cannot provide such sweeping relief.

To begin, the Court disagrees with SCF that ANTHC is required by its current written policies to enter into a common-interest agreement. ANTHC's Disclosure Policy provides that "unless otherwise permitted under this section (5.4.1) or by a majority vote of the ANTHC Board of Directors," a Director may not share attorney-client privileged information with its Designating Entity. The Disclosure Policy permits disclosure where the parties can enter a *valid* common-interest agreement. The policy further provides that ANTHC assesses each "new matter that is subject to a legal protection" when the issue arises. The Court therefore interprets the Disclosure Policy to read that ANTHC will enter a common-interest agreement with a Designating Entity only "if it is at all possible to do so without waiving the legal protection."[134] This is consistent with

---

[131] *Southcentral Found.*, 983 F.3d at 419.

[132] Dkt. 316-1.

[133] *Id.*

[134] Dkt. 340-3 at 3 ("When a new matter that is subject to a legal protection arises, counsel for ANTHC and the Designating Entity will confer and present amendments to the applicable model agreement, if needed, so that the matter may be shared with the Designating Entity if it is at all possible to do so without waiving the legal protection.").

the general rule that parties cannot contract around the waiver of privilege. Here ANTHC asserts that it is not possible to enter a general or matter-specific common-interest agreement with SCF that would ensure in the protection of the investigative reports SCF now seeks.

The Court cannot find the common-interest doctrine categorically applies to all attorney-client privileged information exchanged between ANTHC and SCF. "[A]pplication of the common-interest doctrine requires a case-by-case determination."[135] At the same time, the Court cannot find as a general matter that information shared between the parties always falls outside the scope of the common-interest doctrine. As ANTHC concedes, at times ANTHC and SCF share a common-interest such that the common-interest doctrine would apply so that disclosure of privileged information would not result in a waiver of privilege. This is evidenced by the fact the parties entered a separate joint-defense agreement related to the management of ANMC; ANTHC's Disclosure Policy states that it has created a model common-interest agreement that it can use to memorialize instances where it believes the common-interest doctrine would preserve attorney-client privilege; and ANTHC has repeatedly represented that it would enter a common-interest agreement with SCF if it believed merely entering the agreement would preserve the privilege.

Likewise, the Court cannot simply require the parties to enter a common-interest agreement that would have the effect of preserving attorney-client privileged documents and information, as SCF asks. One apparent misconception by SCF is that by entering a written common-interest agreement, the exchange of any attorney-client information will remain privileged. But the law does not permit parties to contract or negotiate the reach of attorney-client privilege, including the

---

[135] Dkt. 317 at 36; *see Upjohn Co. v. United States*, 449 U.S. 383, 396–97 (1981).

application of the common-interest doctrine.[136] Accordingly, the existence of an agreement alone does not preserve the privilege, and the Court cannot ensure such an agreement would be enforceable.

SCF is not without a remedy. When SCF's Designated Director believes particular privileged information is necessary for SCF to effectively exercise its governance and participation rights, they may seek permission to disclose the information pursuant to ANTHC's policies that the parties agree were passed consistent with Section 325. Where disputes arise regarding the applicability of the common-interest doctrine or where the Board denies a request to waive privilege, SCF may challenge the decision in the courts. Here, SCF does not seek specific relief for a specific denial for purposes of this cause of action. Likewise, where a dispute arises as to whether certain information is necessary to exercise SCF's Section 325 rights, SCF can challenge the Board's decision in the courts. The Court will not delegate exclusive power to SCF's Designated Director to determine with finality whether information is necessary as defined by Section 325 and the Ninth Circuit. Such approach would contradict the intent and purpose of Section 325, which created a Consortium that Congress intended to operate by consensus, resorting only the majority rule where consensus was not possible.

## IV.     CONCLUSION

For the foregoing reasons, Southcentral Foundation's Motion for Summary Judgment at

Docket 316 is **GRANTED in part and DENIED in part as follows**:

1. Defendant Alaska Native Tribal Health Consortium violated Section 325 of the Department of the Interior and Related Agencies Appropriation Act of 1998, Pub. L. No. 105-83, 111

---

[136] *See OXY Res. California LLC v. Superior Ct.*, 115 Cal. App. 4th 874, 892 (2004), *as modified* (Mar. 4, 2004) (explaining that "[a] common interest agreement, such as the Joint Defense Agreement, strengthens the case against waiver, but such an agreement is neither a requirement nor a guarantee").

Stat. 1543 when it denied SCF documents and information that were necessary for SCF to effectively exercise its governance and participation rights in ANTHC. Section 325 entitles SCF to all documents and information that are necessary to exercise these rights. Any ANTHC policy to the contrary violates Section 325 and shall be amended.

2. SCF's entitlement to information under Section 325 includes documents, information, and communications subject to the attorney-client privilege, attorney work product doctrine, and other similar doctrines.

3. For SCF's governance and participation rights to be meaningful, SCF's Designated Director must be able to share documents and information necessary to exercise these rights with SCF. Depending on the circumstance, this may include SCF's Board of Directors, Officers, and legal counsel, subject to their agreement to keep ANTHC documents and information confidential.

In light of the Court's entry of Partial Judgment for Southcentral Foundation at Docket 340 and the resolution of the Reserved Issues by this Order, the case is dismissed with prejudice.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 20th day of July, 2022.

/s/ *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE

33