William D. Temko (*Pro Hac Vice*)
Nicholas D. Fram (*Pro Hac Vice*)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
Fiftieth Floor
Los Angeles, California 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
william.temko@mto.com
nicholas.fram@mto.com

Jahna M. Lindemuth (AK Bar No. 9711068)
CASHION GILMORE & LINDEMUTH
510 L Street, Suite 601
Anchorage, AK 99501
Telephone: (907) 222-7938
jahna@cashiongilmore.com

*Attorneys for Plaintiff Southcentral Foundation*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| Southcentral Foundation,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>Alaska Native Tribal Health Consortium,<br><br>　　　　Defendant. | Case No. 3:17cv-00018-JMK |

**SOUTHCENTRAL FOUNDATION'S REPLY IN SUPPORT OF
ITS MOTION TO ENFORCE JUDGMENT**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ..................................................................................1

II.    ARGUMENT........................................................................................3

    A.    Neither the Order Nor Section 325 Permits the ANTHC Board to Withhold Documents and Information from SCF to which SCF Is Entitled........................................................................................3

        1.    SCF's Section 325 Rights Are Undisputed and Well Defined.............3

        2.    ANTHC Has a Policy That Facially Violates Section 325...................4

        3.    ANTHC Applied Its Policy in a Way That Violates Section 325 ........................................................................................6

        4.    The Last Paragraph of the Order Does Not Save ANTHC..................9

        5.    SCF Is Not Seeking Reconsideration .................................................11

    B.    No Consent: SCF Never Agreed That ANTHC Could Violate Section 325 ....................................................................................13

    C.    ANTHC Cannot Change the Facts .................................................14

    D.    None of ANTHC's Remaining Arguments Has Merit ...................22

        1.    Striking Section 5.4.1.7 Is a Proper Remedy....................................22

        2.    The Court Has the Power to Enforce Its Order .................................23

III.    CONCLUSION....................................................................................24

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**FEDERAL CASES**

*Edward B. Marks Music Corp. v. Charles K. Harris Music Publ'g*,
    255 F.2d 518 (2d Cir. 1958) ............................................................24

*Ins. Servs. Of Beaufort, Inc. v. Aetna Cas. & Sur. Co.*,
    966 F.2d 847 (4th Cir. 1992) ...........................................................24

*Pac. Dawn LLC v. Pritzker*,
    831 F.3d 1166 (9th Cir. 2016) ...........................................................6

*Powell v. McCormack*,
    395 U.S. 486 (1969) ........................................................................24

*Rincon Band of Mission Indians v. Harris*,
    618 F.2d 569 (9th Cir. 1980) ...........................................................24

*Southcentral Found. v. Alaska Native Tribal Health Consortium*,
    615 F. Supp. 3d 961 (D. Alaska 2022) ...............................1, passim

*Southcentral Found. v. Alaska Native Tribal Health Consortium*,
    983 F.3d 411 (9th Cir. 2020) ...................................................3, 9, 12

**FEDERAL STATUTES**

28 U.S.C. § 2202 ...................................................................................23, 24

Public Law No. 105-83 § 325 ...........................................................1, *passim*

# I.    **INTRODUCTION**

Alaska Native Tribal Health Consortium's ("ANTHC") opposition brief fails to rebut the key facts the Court needs to resolve this motion: (1) that ANTHC has an information sharing policy, including Section 5.4.1.7 of its Disclosure Policy, that violates the Order; and (2) that ANTHC invoked that unlawful policy in order to withhold from SCF documents and information to which SCF is entitled under the Order.[1]  ANTHC has violated the Order and the Court should order it to comply.

ANTHC attempts to evade the Order in three ways, none of which has merit.

ANTHC first argues that the Order *permits* its Board to withhold information from SCF by majority vote.  But ANTHC never mentions the fact that the Order held exactly the opposite: that "[n]othing in Section 325 or the Ninth Circuit's opinion would lead the Court to conclude that the Board can limit or curtail a Designating Entity's Section 325 rights by consensus or majority vote, even where the policies appear reasonable and consistent with data governance best practices."[2]  Rather than approving any policies that would permit withholding information to which SCF is entitled, like Section 5.4.1.7, the Court held that "Section 325 entitles SCF to all documents and information that are necessary to exercise" its governance rights in ANTHC, and "[a]ny ANTHC policy to the contrary violates Section 325 and ***shall be amended***."[3]  Nothing in the Order permits ANTHC to maintain a policy

_____

[1] *Southcentral Found. v. Alaska Native Tribal Health Consortium*, 615 F. Supp. 3d 961, 981 (D. Alaska 2022) ("Order").

[2] *Id.* at 977.

[3] *Id.* at 981 (emphasis added).

that violates Section 325, or to use such a policy to withhold necessary governance information.

ANTHC's fallback position is that regardless of the text of the Order, ANTHC can maintain unlawful policies like Section 5.4.1.7 because SCF allegedly agreed back in January 2022 in the Stipulated Partial Judgment that ANTHC's policies complied with Section 325. This is the same argument that ANTHC made at summary judgment and the Court rejected. The Stipulated Partial Judgment made clear that SCF did *not* agree that ANTHC policies around the information that its Designated Director could share comported with Section 325, and the Court concurred.

Unable to justify its unlawful policies and decisions based on the text of the Order or SCF's supposed consent, ANTHC attempts to change the facts: from the claim that it was unclear from the request that SCF's Designated Director made in January 2022 whether the information was to be shared with SCF (the request was clear), to the notion that ANTHC did not drag its feet in responding to that request (it did), to the idea that ANTHC withheld documents and information in Resolution 23-08 only on the basis that they were not necessary for governance (which is false), to the statement that SCF is not asking for specific documents or information in this motion (it is). ANTHC can write as many words as it wants (and it writes over 9,600!), but writing the same things over and over does not make them true. The facts are the facts, and they show that ANTHC violated the Order.

ANTHC's remaining arguments also lack merit. The Court should order ANTHC to comply with the Order.

## II.     ARGUMENT

### A.     Neither the Order Nor Section 325 Permits the ANTHC Board to Withhold Documents and Information from SCF to which SCF Is Entitled

#### 1.     SCF's Section 325 Rights Are Undisputed and Well Defined

It is undisputed that Section 325 endows SCF with governance rights in ANTHC. The Ninth Circuit had "no difficulty concluding" that SCF has "governance and participation rights" in ANTHC "under Section 325."[4]  The governance right belongs to *SCF*, not the person it designates as a Director to the ANTHC Board, who "stands in the shoes of the designating entity" and "act[s] on its behalf."[5]

It is also undisputed that Section 325 "necessarily includes an entitlement to information necessary to effectively exercise those [governance] rights."[6]  As the Ninth Circuit explained, "the right to govern would be a hollow promise absent the information necessary to exercise that right intelligently."[7]

On summary judgment, this Court explained the scope of SCF's Section 325 informational rights, given the critical oversight role it has at ANTHC: "Section 325 entitles SCF to *all* documents and information that are *necessary to exercise* these [governance and participation] rights."[8]  It underscored that "SCF has an *absolute right* to any information that is necessary for SCF to effectively exercise its governance and participation rights,"

---

[4] *Southcentral Found. v. Alaska Native Tribal Health Consortium*, 983 F.3d 411, 417-18 (9th Cir. 2020) ("Ninth Circuit Opinion").

[5] *Id.* at 418.

[6] *Id.* at 420.

[7] *Id.* at 419.

[8] Order at 981 (emphasis added).

even if that information otherwise would not be the kind of information that is ordinarily shared (*e.g.*, because it is sensitive or protected by the attorney-client privilege).[9]  In short, if SCF needs certain documents or information to exercise its governance and participation rights effectively, then ANTHC has *no* discretion to withhold those documents and information, and "[a]ny ANTHC policy to the contrary violates Section 325 and shall be amended."[10]

## 2.    ANTHC Has a Policy That Facially Violates Section 325

ANTHC had a "policy to the contrary" when the Order came down:  its Disclosure Policy, including Section 5.4.1.7.[11]  That Policy, among other things, purports to allow the ANTHC Board to withhold information by designating it as "Highly Sensitive Confidential Information" ("HSCI") and then by voting that the HSCI "may not be shared outside of ANTHC," even with Designating Entities.[12]  Although the Policy nominally applies only in "extraordinary circumstances," that term is not defined and lacks manageable standards.[13] In other words, under the Policy there are *no* limits on the documents and information that the ANTHC Board can designate as HSCI and then vote to withhold.  This is problematic because the ANTHC Board can use the Policy, and has used it, to withhold documents and information that *are* necessary for SCF to exercise its governance and participation rights

_____

[9] *Id.* at 980 (*emphasis added*).

[10] *Id.* at 981.

[11] Despite relying on it so heavily, ANTHC did not submit its Disclosure Policy to this Court. It is attached as Exhibit 2 to the Supplemental Declaration of April Kyle In Support of Southcentral Foundation's Motion to Enforce Judgment ("Suppl. Kyle Decl."), filed herewith.

[12] Suppl. Kyle Decl. Ex. 2, § 5.4.1.7.

[13] *Id.*

effectively. Under Section 325 and the Court's Order, ANTHC has no discretion to withhold documents and information, including HSCI, that are necessary for SCF to exercise its governance and participation rights effectively, but Section 5.4.1.7 purports to grant ANTHC that very discretion to withhold such documents and information by majority vote whenever the Board deems there to be "extraordinary circumstances."

That violates Section 325. And it directly conflicts with the Order's command that any policy that violates Section 325 must be amended.[14] Again, under Section 325 and this Court's Order, ANTHC cannot withhold from SCF (or any other Designating Entity) *any* documents or information that are necessary for it to exercise its governance and participation rights effectively, for *any* reason. The Court was perfectly clear about this in its Order: "[n]othing in Section 325 or the Ninth Circuit's opinion would lead the Court to conclude that the [ANTHC] Board can limit or curtail a Designating Entity's Section 325 rights *by consensus or majority vote*, even where the policies appear reasonable and consistent with data governance best practices."[15]

---

[14] ANTHC argues in its opposition brief that Judge Burgess struck critical language from SCF's proposed order in drafting his Order. ANTHC Opposition to Southcentral Foundation's Motion to Enforce Judgment ("Opp."), ECF No. 372 at 11. But the tracked changes set out in ANTHC's brief show exactly the opposite. *Id.* The Order retained the critical language from SCF's proposed order: "Section 325 entitles SCF to all documents and information that are necessary to exercise these [governance and participation] rights. Any ANTHC policy to the contrary violates Section 325 and shall be amended." *Id.*

[15] Order at 977. ANTHC suggests that the ANTHC Board has to be able to exercise its fiduciary duties in deciding what documents and information a Director may share with her Designating Entity. Opp. at 2, 24-25. *Amici* seem to advance a similar argument in their brief. Notably, however, neither ANTHC nor *Amici* ever address SCF's argument that ANTHC cannot invoke state-law notions of fiduciary duty to suppress SCF's federal Section 325 rights. Mot. at 14-15. As such, ANTHC has waived any arguments it may have on this issue. *Pac. Dawn LLC v. Pritzker*, 831 F.3d 1166, 1178 n. 7 (9th Cir. 2016).

### 3. ANTHC Applied Its Policy in a Way That Violates Section 325

Not only does Section 5.4.1.7 violate the Order on its face, but ANTHC has applied it in ways that also clearly violate the Order.  For example, in Resolution 23-08, ANTHC invoked all sorts of standards, *other* than that the material was not necessary for governance, to withhold documents and information from SCF.  It withheld some material because its disclosure to SCF would be ██████████████████████████████████ ██████."[16]  It withheld other material because it was "privileged"[17]—despite the clear prohibition in the Order on withholding privileged information that is necessary for governance.[18]  This was not a mere oversight by ANTHC.  It knew that the documents and information that SCF sought were indisputably "necessary," indeed critical, to understanding the largest governance challenge ANTHC has ever faced.  ANTHC effectively conceded that the documents and information that SCF requested were necessary for SCF to exercise its governance and participation rights; otherwise, ANTHC would never have agreed ██████████████████████████████████████████████████ ██████.[19]  But ANTHC then decided to withhold certain of the requested information, in violation of the Order.

ANTHC meekly attempts to re-write history, claiming that it was actually applying the necessity standard, even though Resolution 23-08 clearly did not.[20]  Perhaps realizing

---

[16] Declaration of April Kyle in Support of SCF's Motion to Enforce Judgment, ECF No. 358 ¶ 19 & Ex. 11.

[17] *Id.*

[18] Order at 981-82.

[19] Suppl. Kyle Decl. ¶ 6.

[20] Opp. at 34-35

that this revisionist history is impossible to support, ANTHC quickly backs away from this position.  ANTHC concedes, as it must, that it was "open to reconsidering" whether to provide certain withheld information ██████████████████████████████████████████ ██████████████████████[21]  ANTHC also admits that ██████████████████████████ ████████████████████████████████████████████████████████████████████████████ █████████████[22]  These admissions confirm ANTHC's violations, as █████████████████ ████████████████████████  is completely unrelated to whether the information is necessary for SCF to exercise its governance rights.

████████████████████████  from disclosure is a red herring.  ANTHC repeatedly stresses that its Board must be allowed to decide which information is shared with SCF because anything less would "hamstring the ANTHC Board."[23]  But, again, that's not the governance structure established by Congress or the Court's Order.  The false premise underlying all of ANTHC's arguments is that SCF is an outsider and not part of ANTHC's governance structure.  In any event, ANTHC conspicuously fails to mention that the only people at SCF who can receive confidential ANTHC documents and information are "Permitted Recipients"—SCF Officers, Directors, and legal counsel who have signed an ANTHC-initiated Confidentiality Agreement confirming that they will keep ANTHC information confidential and use ANTHC information only for purposes of ANTHC governance.[24]  ANTHC already has assurances that its confidential information will not be

---

[21] Opp. at 17.

[22] Opp. at 35, n. 133.

[23] Opp. at 26.

[24] Suppl. Kyle Decl. ¶ 4.

disclosed, so it cannot hide behind the straw man that disclosure could damage it.[25]

It is evident that many of the other ANTHC Board members continue to reject the fundamental Section 325 governance principles articulated by the Ninth Circuit and Judge Burgess. In fact, ██████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████.[26] ████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

████████████████████████████.[27] ██████████████████████████████████████

██████████████████████████████████████████████████████████████████████.[28]

██████████████████████████████████████.[29] And although *Amici* profess to share SCF's desire to ensure "transparency and accountability" at ANTHC and "access to information necessary to their full participation in the governance of ANTHC,"[30] their Designated Directors have repeatedly ████████████████████████████████████████████████

---

[25] *Amici* make a similar argument in their brief, suggesting that SCF's motion to enforce threatens to "upend the balance that the ANTHC Board and this Court have struck between transparency and confidentiality." Brief of *Amici Curiae*, ECF No. 369-1 at 18. That is a false dichotomy. The Ninth Circuit and this Court underscored the principles of transparency and participation underlying Section 325. Any concerns regarding confidentiality are already addressed by executed Confidentiality Agreements. Suppl. Kyle Decl. ¶ 4. ANTHC cannot use claims of confidentiality or "harm" to justify its repeated violations of the Order.

[26] Suppl. Kyle Decl. ¶ 14.

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] ECF No. 369-1, Brief of *Amici Curiae* at 3.

-8-

███████.[31] ███████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████.[32]

      SCF's Designated Director ████████████████████ recognizes (as did the Ninth Circuit) that as SCF's Designated Director to the ANTHC Board, she stands in SCF's shoes on that Board.[33]  If other ANTHC Directors (and their Designating Entities) choose not to exercise their governance and participation rights under Section 325, that is their prerogative.  But, as Judge Burgess noted, they cannot vote, even by majority vote, to prevent SCF from exercising its Section 325 rights.

      In short, ANTHC refuses to accept the structure that Congress set out: that ANTHC would be a consortium of Designating Entities; that each Designating Entity would select a Director to represent it at consortium Board meetings; and that its Designated Director "stands in the shoes of the designating entity by acting on its behalf."[34]  The Designating Entities are part and parcel of the governance system that Congress enacted.  ANTHC cannot cut out the Designating Entities by majority vote.

### 4. The Last Paragraph of the Order Does Not Save ANTHC

      ANTHC relies almost exclusively on a single paragraph from the Order where the Court explains that it "will not delegate *exclusive* power to SCF's Designated Director to

---

[31] Suppl. Kyle Decl. ¶ 14.

[32] *Id.*

[33] *Id.*

[34] Ninth Circuit Opinion at 418.

-9-

Case 3:17-cv-00018-JMK   Document 385   Filed 08/31/23   Page 12 of 29  *Southcentral Foundation v. ANTHC*
Case No. 3:17-cv-00018-JMK

determine *with finality* whether information is necessary."[35]   ANTHC reads this sentence as approving its Board's ability to decide what information can and cannot be shared, even where the information is necessary for SCF to exercise its governance rights.   There are several problems with ANTHC's interpretation.

*First*, ANTHC ignores that this passage was explaining the procedure that would be available in the unusual instance that there was a disagreement over which privileged information *is necessary* for governance.  If there is a dispute, the Order provides that the parties can go to Court.  This passage did not approve the ANTHC Board's ability to fashion a policy that requires all information requests to go to the full Board for a vote and that would effectively allow ANTHC to routinely withhold information that is necessary for governance in violation of Section 325, as ANTHC interprets Section 5.4.1.7 to allow it to do.

*Second*, ANTHC disregards the importance of the term "exclusive."  The Court did not hold that SCF's Designated Director had *no* power to determine which information she can share.  Rather, adding this term indicates that there might be some unusual instances where there might be a valid disagreement over whether information is necessary for governance. That is not the case here, where the documents and information requested relate to the most fundamental governance issues facing the consortium.

*Third*, ANTHC makes no attempt to harmonize this passage with the statement from earlier in the Order explaining that ANTHC lacks the ability to "limit or curtail a Designating

---

[35] Order at 981.

Entity's Section 325 rights *by consensus or majority vote*."[36] But there is a clear way to do that: the paragraph at the end of the Order merely explains what recourse SCF's Designated Director has on what should be the rare occasion that there is good faith disagreement as to whether information that she receives as a Director is *not* necessary for governance. It does not implicitly approve an ANTHC policy that allows withholding documents and information that SCF's Designated Director is entitled to share with SCF, nor did the Court intend that SCF should be required to file a new lawsuit every time the ANTHC Board violates the Order by withholding documents and information that are clearly necessary for governance.

## 5. SCF Is Not Seeking Reconsideration

Unable to defeat SCF's motion on its merits, ANTHC attempts to recast SCF's motion as a motion for reconsideration. This is another red herring. SCF is not seeking reconsideration, and it has no need to: on the most critical issues implicating its governance rights under Section 325, SCF prevailed at summary judgment. ANTHC knows that, as SCF served ANTHC with a bill of costs that was included in this Court's Judgment which ANTHC then paid.[37] All SCF seeks is for ANTHC to comply with the Order, as explained above.

ANTHC's argument about reconsideration rests not on SCF's brief, but on a misinterpretation of a passage in SCF's proposed Order, where SCF seeks an order allowing

---

[36] Order at 977 (emphasis added).

[37] ECF No. 353-1. It is hard to square the fact that ANTHC paid costs to SCF as the prevailing party with ANTHC's unsupported assertion that the Court "largely rejected SCF's arguments and agreed with ANTHC." Opp. at 9.

-11-

its Designated Director to share with Permitted Recipients information and documents that pertain to issues that come before the ANTHC Board.[38] That is not a new standard. It is a common sense, objective definition of the existing standard outlined by the Ninth Circuit and Judge Burgess. Directors "stand[] in the shoes of the[ir] designating entity" and "act[] on its behalf."[39] They receive documents and information to help them make governance decisions for ANTHC. In order for Designating Entities to exercise their governance and participation rights, they must be able to have the same information that their Directors get, and Directors must be able to share with their Designating Entities in near-real time.[40] Anything less than that prevents the Designating Entity from having the full picture before providing advice to its Designated Director, as it cannot advise on the right course of action if it is unaware of key facts. Congress did not devise a system that requires Designating Entities to exercise their governance rights with one eye closed.[41]

---

[38] Opp. at 23.

[39] Ninth Circuit Opinion at 418.

[40] The ANTHC Policy itself demonstrates that this is not a new standard. The Policy presumes that information and documents provided to the Board as a matter of course are necessary for governance and may be shared. Section 5.3 provides: "Accordingly, Directors may share with Permitted Recipients of their Designating Entity all documents and information they receive as a Director, subject to the limitations set out in section 5.4 below." SCF has provided to ANTHC signed Confidentiality Agreements for its Permitted Recipients who have received confidential ANTHC information. Suppl. Kyle Decl. ¶ 4. Consistent with the duties in those agreements, ██████████████████████████ ██████████████████████████████████. *See* Declaration of Lisa C. Mock, filed herewith. In any event, Section 5.4.1.7 is not properly interpreted to allow the ANTHC Board a second bite at the apple to decide whether something already provided to or discussed with the full Board is actually necessary for a Designating Entity to receive to effectively exercise its governance and participation rights.

[41] ANTHC suggests that SCF is somehow trying to change the "necessity" standard in Judge Burgess' Order to a standard that requires the sharing of governance-related documents and

-12-

### B.    No Consent: SCF Never Agreed That ANTHC Could Violate Section 325

Unable to justify Section 5.4.1.7 or its decisions to withhold information from SCF on the basis of the Order or Section 325, ANTHC recycles an argument that it raised and the Court rejected at summary judgment: that it is allowed to violate the necessity standard because SCF agreed that ANTHC's governance documents comply with Section 325, and, relatedly, that the Court accepted SCF's waiver and blessed the ANTHC Policy. The Court did not accept this argument in 2022, and it should not here either, as it is demonstrably without merit.

In Paragraph 7 of the Stipulated Judgment, SCF agreed that most of the policies in ANTHC's governance documents "conform to Section 325," but *expressly* carved out the three "Reserved Issues" on which it moved for summary judgment,[42] where the parties agreed:

> *Notwithstanding this paragraph or any other statement in this Agreement*, SCF expressly reserves the right to make arguments regarding the Reserved Issues, including that ANTHC's interpretation and application of its current governance documents is not in compliance with Section 325 with regard to the Reserved Issues in the preamble.[43]

---

information. Opp. at 25. But SCF's shorthand terminology is no different than the broad sharing standard articulated by Judge Burgess. Indeed, it is evident that ANTHC is the one that is trying to rewrite Judge Burgess' Order. ANTHC insists that, by majority vote, the ANTHC Board can preclude SCF from receiving documents or information that are indisputably necessary for governance and has filed an improper cross-motion asking this Court to enter a new order blessing the very policies Judge Burgess said may need to be amended. See Southcentral Foundation's Motion to Strike and Opposition to Alaska Native Tribal Health Consortium's Cross-Motion to Enforce, filed concurrently herewith.

[42] ECF No. 313, Ex. 1 ¶ 7 and Ex. A at 8-9.

[43] *Id.* at Ex. 1 ¶ 7 (*emphasis added*).

-13-

Case 3:17-cv-00018-JMK   Document 385   Filed 08/31/23   Page 16 of 29
*Southcentral Foundation v. ANTHC*
Case No. 3:17-cv-00018-JMK

One of the "Reserved Issues" was the scope of "the documents and information that SCF's Designated Director may share with SCF,"[44] because SCF expressly challenged the notion that ANTHC by majority vote could limit information sharing under Section 325. The Court recognized this was at issue at summary judgment, expressly agreeing that SCF had "reserved the right to challenge ANTHC's policies as they relate to . . . the scope of the documents and information Designated Directors may share."[45] The Court concluded that it "does not agree with ANTHC that SCF has reneged on its agreement."[46]

The Court has already decided this issue, and nothing has changed.

### C. **ANTHC Cannot Change the Facts**

As a last resort, ANTHC attempts to rewrite history. None of ANTHC's revisionist narrative stands up to even the mildest scrutiny. Taking ANTHC's alternative facts in chronological order:

*ANTHC did not timely act.* ANTHC argues that somehow it was SCF's actions, and not its own, that prevented it from providing any information in response to SCF's information requests for fifteen months.[47] The reasons that ANTHC's brief cites for not fulfilling the reasonable requests for information that SCF, through its Designated Director, made on January 31, 2022—that SCF's requests came from the wrong person or went to the wrong person—are frivolous.

---

[44] *Id.* at 1.

[45] Order at 977.

[46] Order at 976.

[47] Opp. at 32.

ANTHC suggests that it refused to provide Ms. Kyle, SCF's Designated Director, with the governance-related documents and information she requested because she used the wrong procedure, and directed her requests to ANTHC management or the ANTHC legal team, not to the ANTHC Board.[48]  But that is a false, after-the-fact attempt to justify its wrongful refusal to honor her requests.  Nowhere in the Policy is there a requirement that information or document requests must go directly to the full ANTHC Board in the first instance.[49]



.[50]

.[51]

Moreover, the indisputable record demonstrates that the ANTHC Board Chair was aware of SCF's requests and purported to be working to fulfill them before suddenly stopping.  After SCF made its requests, ANTHC first did not respond for several weeks.[52]  When ANTHC's Board Chair finally did respond, she stated that she *would provide* the

---

[48] *Id.*

[49] Suppl. Kyle Decl. ¶ 16.

[50] Suppl. Kyle Decl. ¶ 15.

[51] *Id.*

[52] ECF No. 341-1 ¶¶ 4-6.

-15-

Case 3:17-cv-00018-JMK   Document 385   Filed 08/31/23   Page 18 of 29   *Southcentral Foundation v. ANTHC*
Case No. 3:17-cv-00018-JMK

requested documents and information "as soon as time allows."[53]  After providing nothing for many more weeks, ANTHC's Chair represented that ANTHC was "actively compiling" responsive documents and information and promised a substantive response "as soon as possible, no later than April 8," 2022.[54]  April 8 came and went without any substantive response, but with yet another promise that the Chair would "get to it as soon as possible."[55]  As is evident from this sequence of events (all of which has been in the public record since May 24, 2022), it is perfectly clear that ANTHC understood SCF's requests for information.  And, of course, not once did ANTHC argue that the information was not necessary for governance.

   *ANTHC management* ██████████████████████████████████████.  ANTHC also insists that it was confused about SCF's requests because SCF did not make them to the ANTHC Board until January 2023.  That is false.  ████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████[56] ████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

---

[53] *Id.* ¶ 6.

[54] *Id.* ¶ 8.

[55] *Id.* ¶ 9.

[56] Suppl. Kyle Decl. ¶ 6.

███████████████████████████████████████████

██████████████████.[57] ██████████████████████

███████████████████████████████████████████

██████████████████████████████.[58] █████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████.

    *ANTHC withheld information using unlawful standards* ██████████████.

ANTHC applied several standards *other* than the necessity standard to justify withholding

documents and information from SCF ████████████████████

████████.[59] ████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████.[60] There is no exception

to Section 325 that justifies withholding governance-related information from SCF on the

grounds that it may be ████████.” Indeed, it is precisely in crisis situations such as this—

███████████████████████████████████—that SCF's

Section 325 rights are most critical. Those with governance oversight responsibilities must

---

[57] *Id.* ¶ 7.

[58] *Id.*

[59] *See supra* Section II(A)(3).

[60] ANTHC Board Resolution 23-08, ¶ 6; Suppl. Kyle Decl. ¶ 11.

have access to the relevant documents and information—even ███████████████████

████████████████—in order to be able to effectively exercise their governance and

participation rights.[61]

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████.[62]████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████.[63]

      In addition to articulating an after-the-fact rationale that differs from the text of

Resolution 23-08, ANTHC's brief makes it clear that the ANTHC Board could not possibly

have determined that 14 of the documents that SCF requested were not necessary for SCF

to exercise its governance rights "*because the Board never saw them.*"[64]  If the ANTHC

Board never saw the documents, how could the Board (a) determine they were HSCI (which

---

[61] Suppl. Kyle Decl. ¶ 13.

[62] *Id.* ¶ 11.

[63] ████████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
██████████████████████████████████ Opp. at 18.  Once again, that
violated the Order.   Good governance under Section 325 requires that the Designating
Entities receive the requisite documents and information to satisfy themselves that ███
███████████████████████████████████████████

[64] Opp. at 18-19.

it never did), or (b) determine they were not necessary for governance? This concession alone dooms ANTHC's contention that the *Board* decided that the information was HSCI and/or not necessary for governance.

And it is an alarming concession. ██████████████████████████

████████████████████████████████████████████████████████████

█ remains an issue of great concern to SCF.[65] SCF wants to exercise its governance rights to ensure that the ANTHC Board ████████████████████████████████

████████████████████████████████████████████████████████████

██████.[66] ███████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████,

does not mean that those documents were not necessary for effective governance. Indeed, it means that those documents are the most critical for SCF to see in order to confirm that the ANTHC Board and management have done their jobs.

*ANTHC did not provide SCF with the "overwhelming majority" of the documents and information requested.* ANTHC repeatedly asserts that it disclosed to SCF the "overwhelming" or "vast" majority of the documents and information requested. That is untrue. Despite the breadth of the governance crisis facing ████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████—ANTHC

---

[65] Suppl. Kyle Decl. ¶ 12.

[66] *Id*. ¶ 6.

provided the SCF Board with a grand total of *two* documents, one of which ANTHC knew SCF already had.[67]  The SCF Board hasn't been provided even a single document relating to ███████████████████████████████.[68]

    *SCF is asking for specific documents*.  ANTHC also makes the unsupportable claim that SCF is not asking for any specific documents in this motion.  That is false.  SCF specifically requests that the "Court should order ANTHC to provide SCF with all documents and information responsive to SCF's outstanding information requests."[69]  SCF could not have been clearer.

    ANTHC also attempts to set an impossible standard.  It argues that in order to compel ANTHC to provide documents, SCF needs to somehow "specify the information and/or documents to which it believes it is entitled."[70]  But SCF cannot possibly do that with any greater specificity when it does not have the documents or information because ANTHC has withheld them.  ANTHC chastises SCF for its "failure to . . . request *in camera* review" of the documents in question,[71] but, again, SCF doesn't have the documents to submit to the Court.

    ANTHC ███████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

---

[67] Suppl. Kyle Decl. ¶ 8.

[68] *Id.* ¶ 9.

[69] Mot. at 19.

[70] Opp. at 31; *see also id.* at 19 ("SCF never describes the 'hundreds of relevant documents' it insists it should receive").

[71] Opp. at 19.

[72]

[73]

[74]

[75]

*SCF does not seek to do away with conflict rules*.  One of the refrains that ANTHC has long overplayed in this litigation is that SCF is attempting to do away with ANTHC's conflict of interest rules.[76]  SCF is attempting to do no such thing.  As ANTHC acknowledges, SCF's Designated Director declares conflicts when they arise.[77]  No part of SCF's motion asks the Court to strike any part of ANTHC's Bylaws or policies on conflicts of interest, and SCF has repeatedly affirmed in this case that its goal is *not* to do away with

---

[72] Opp. at 18.

[73] Suppl. Kyle Decl. ¶ 10.

[74] *Id.*

[75] Although SCF's Designated Director, like all of the other ANTHC Directors, [redacted] ANTHC admonishes SCF for not requesting *in camera* review of the relevant documents.  Opp. at 19.  SCF hereby requests that ANTHC submit [redacted], as well as the other 14 documents provided to SCF's Designated Director, but not SCF, to the Court for *in camera* review.

[76] Opp. at 24.

[77] Opp. at 5.

conflict of interest rules.[78]  That argument is a total red herring.  None of the critical governance matters at issue is a matter as to which SCF has a conflict of interest.[79]  Accordingly, SCF has not requested any information or documents where SCF has a conflict and none of SCF's requests was denied by ANTHC on conflict grounds.[80]  The fact that SCF or SCF's Designated Director may disagree with the manner in which the ANTHC Board or management has handled these critical governance issues does not constitute a conflict of interest.

**D.    None of ANTHC's Remaining Arguments Has Merit**

ANTHC makes two additional arguments, neither of which has merit.

**1.    Striking Section 5.4.1.7 Is a Proper Remedy**

ANTHC argues that even if it violated the Order, the only proper remedy would be disclosure, not striking Section 5.4.1.7.[81]  Certainly the Court should order disclosure of the documents and information denied to SCF.  But the Court also clearly ordered ANTHC to change any policy that violated Section 325: "Section 325 entitles SCF to all documents and information that are necessary to exercise these rights. Any ANTHC policy to the contrary violates Section 325 and shall be amended."  For the reasons noted above, Section 5.4.1.7 violates Section 325, and there is no way to amend it to conform.  Thus, striking it is an appropriate remedy and avoids future lawsuits over this very same issue.[82]

---

[78] Suppl. Kyle Decl. ¶ 17.

[79] *Id*.

[80] *Id*.

[81] Opp. at 36.

[82] SCF does not concede that all other parts of the Policy conform to Section 325 and reserves the right to seek further relief as to other portions that do not comply with Section 325 if

## 2. The Court Has the Power to Enforce Its Order

Although ANTHC concedes early in its brief that this Court has "inherent power to enforce [its] own judgment[]," at the very end of its brief, ANTHC argues that the Court lacks the power to enforce its Order.[83] ANTHC is incorrect. The Declaratory Judgment Act specifically provides that "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."[84] After a Court declares the parties' rights in a declaratory judgment action, such as this one, "[i]f further relief becomes necessary at a later point . . . both the inherent power of the court to give effect to its own judgment . . . and the Declaratory Judgment Act, 28 U.S.C. § 2202, would empower the district court to grant supplemental relief, including injunctive relief."[85]

The Court's authority to issue such "further" relief is broad. "This relief need not have been demanded *or even proved* in the original action for declaratory relief."[86] "The section authorizes further or new relief based on the declaratory judgment, and any additional facts which might be necessary to support such relief can be proved on the hearing

---

ANTHC invokes them in a way to deny SCF's Section 325 rights. The Order required ANTHC to amend *all* of its policies to conform to Section 325.

[83] Opp. at 20.

[84] 28 U.S.C. § 2202.

[85] *Rincon Band of Mission Indians v. Harris*, 618 F.2d 569, 575 (9th Cir. 1980); *see also Powell v. McCormack*, 395 U.S. 486, 499 (1969) ("A declaratory judgment can [] be used as a predicate to further relief, including an injunction.").

[86] *Ins. Servs. Of Beaufort, Inc. v. Aetna Cas. & Sur. Co.*, 966 F.2d 847, 851-52 (4th Cir. 1992) (internal citations and quotation marks omitted); *see also Edward B. Marks Music Corp. v. Charles K. Harris Music Publ'g*, 255 F.2d 518, 522 (2d Cir. 1958).

provided in the section or in an ancillary proceeding if that is necessary."[87]  ANTHC never addresses the Court's ability to fashion further relief, including injunctive relief, pursuant to the Declaratory Judgment Act -- the very relief SCF argued in its opening brief the Court should grant in this case.

## III.    CONCLUSION

For more than two years, the ANTHC Board of Directors has devoted hundreds of hours investigating and responding to the biggest governance crisis ANTHC has ever faced. And for more than two years, SCF's Designated Director attempted unsuccessfully to obtain certain documents and information relating to that governance crisis from ANTHC, both to enable her to exercise her fiduciary duties as a Director of the consortium and to allow her to share relevant documents and information relating to that governance crisis with the Permitted Recipients at SCF so that SCF can provide guidance and input to her and, thereby, effectively exercise its governance and participation rights in ANTHC.

ANTHC is misusing Section 5.4.1.7 to argue that certain information and documents SCF requested present "extraordinary circumstances," and then to deny SCF the information as if SCF were a third party outside of ANTHC's governance structure.  ANTHC has not proposed any additional safeguards that SCF has rejected or refused to follow.[88]

Section 325 provides SCF and other Designating Entities with rights to information. Those cease to be *rights* if SCF needs permission from the gatekeeper to use them.  That is

---

[87] *Id.*

[88] Indeed, the SCF Permitted Recipients who signed Confidentiality Agreements received

███████████████████████████████████████████████████████

███████.  *Id.*

not the system that Congress enacted, nor the system that the Order blessed. But it is the system that will prevail if the Court does not provide SCF with the relief requested. The undisputed record demonstrates that ANTHC maintains a Policy that violates the Order and Section 325—including Section 5.4.1.7—and that ANTHC used that Policy to deny documents and information to which SCF is entitled. The *Amicus* brief—authored by Designating Entities that control ANTHC's Board—makes clear that the ANTHC Board has every intention of continuing to vote to deny SCF its Section 325 rights if the Court allows the current information sharing policies to endure. The Court should order ANTHC to comply with the Order.

DATED: August 31, 2023

MUNGER, TOLLES & OLSON LLP

By: _/s/ William D. Temko_
      WILLIAM D. TEMKO
      CA Bar #98858
      *Appearing pro hac vice*

CASHION GILMORE & LINDEMUTH

By: _/s/ Jahna M. Lindemuth_
      JAHNA M. LINDEMUTH
      AK Bar #9711068

Attorneys for Plaintiff Southcentral Foundation

Southcentral Foundation v. ANTHC
Case No. 3:17-cv-00018-JMK

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 31, 2023, I caused a true and correct redacted copy of the foregoing to be served on the persons below through the ECF system, and I caused a true and correct copy of the foregoing to be served on the persons below via email.

James Torgerson      *jim.torgerson@stoel.com*
Rachel Lee           *rachel.lee@stoel.com*
Connor Smith         *connor.smith@stoel.com*
Geoffrey Strommer    *gstrommer@hobbsstraus.com*


 /s/ *Jahna M. Lindemuth*
_____