James E. Torgerson (Bar No. 8509120)
Whitney A. Brown (Bar No. 1906063)
Connor R. Smith (Bar No. 1905046)
STOEL RIVES LLP
510 L Street, Suite 500
Anchorage, AK  99501
(907) 277-1900
jim.torgerson@stoel.com
whitney.brown@stoel.com
connor.smith@stoel.com

*Attorneys for Defendant Alaska Native Tribal Health Consortium*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SOUTHCENTRAL FOUNDATION,<br><br>Plaintiff,<br><br>v.<br><br>ALASKA NATIVE TRIBAL HEALTH CONSORTIUM,<br><br>Defendant. | Case No.:  3:17-cv-00018-JMK<br><br><br>**PUBLIC VERSION** |

## DECLARATION OF TROY A. EID IN SUPPPORT OF ANTHC'S MOTION TO ESTABLISH PROCESS FOR REVIEW

I, Troy A. Eid, declare as follows:

1. I am over the age of eighteen and have personal knowledge of the statements contained in this declaration.

2. This declaration is made in support of ANTHC's Motion to Establish Process for Review, filed contemporaneously herewith.

*Southcentral Foundation v. ANTHC*
Case No. 3:17-cv-00018-JMK                 1

3. I am a Principal Shareholder at the law firm of Greenberg Traurig, LLP (the world's 7th largest law firm with 54 offices) where I represent clients in criminal and civil investigations and enforcement actions and am a member of the firm's Special Investigations Practice Group. I also co-chair the firm's Native American Law Practice Group.

4. I previously served as the 40th United States Attorney for the District of Colorado, appointed by President George W. Bush; as the Chair of the Indian Law and Order Commission under President Barack Obama; and as Chief Legal Counsel to Colorado Governor Bill Owens. In the latter position, I served on the commission that reviewed the mass shootings in 1999 at Columbine High School in Jefferson County, Colorado, which involved reviewing thousands of pages of documentary materials and other evidence concerning the attack before issuing its final report. I also am the former Chair of the Colorado state Board of Ethics, where I oversaw the investigation of public officials accused of wrongdoing in state and local government. In private law practice, my investigative work has primarily focused on directing and counseling internal investigations involving leading corporations and universities, as well as Native American tribal governments and tribally owned and operated business entities where legal and ethical misconduct is suspected to have taken place.

5. I have personally directed more than 25 investigations over the course of my career, starting in 1993 when a privately held corporation retained me to investigate

suspected theft of computer source code by a U.S. shell company that turned out to have been established and maintained by the armed forces of the People's Republic of China. Each of these investigations required collecting and reviewing documents, interviewing witnesses, and synthesizing the findings into a report or presentation.

6. I also have extensive professional experience in providing legal and governance advice, counsel and leadership in a consortium setting. From 1994 to 1999, I served as the Chief Operating Officer & General Counsel of the National Information Infrastructure Testbed ("NIIT"). In that capacity, I reported to a 12-member Board of Directors that included chief executive officers and other senior executives from IBM, Hewlett-Packard Corporation, Harvard University, the NASA-Jet Propulsion Laboratory, and more than 50 other companies, universities and research institutions. NIIT provided a technology testing forum in which these entities could develop Internet interoperability between and among competing software systems – what is called "middleware" today – within a specific federal statutory exclusion that permitted these companies to collaborate on technology development without violating the Sherman Anti-Trust Act and other federal laws. Given the extreme sensitivity of my responsibilities with NIIT, I gained direct personal experience in presenting complex findings to the NIIT Board of Directors, which meet quarterly in the United States, Europe and Asia. This included not just reports on technology and its application, but investigations into foreign governments attempting to hack our NIIT research projects.

*Southcentral Foundation v. ANTHC*
Case No. 3:17-cv-00018-JMK     3

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK 99501
*Main (907) 277-1900 Fax (907) 277-1920*

7. Deciding which documents and other materials to review, which witnesses and experts to interview, and what specific questions to ask to gain insight into a particular matter are critical components of an effective investigation. The same is true regarding deciding what information to include, and not include, in an investigation report. All of these decisions require the exercise of knowledge, experience, expertise and training, including the ability to summarize a sometimes massive amount of information in a cogent and accurate manner.

8. When tasked with directing an investigation, I understand that the client—whether it be a private enterprise, a public agency or institution, or a non-profit organization—expects me to exercise this expertise. Boards of directors and other governing bodies hire investigators for their demonstrated expertise. They also hire investigators because board members lack the time, and typically the expertise, to comb through and analyze the often-voluminous records and witness and expert interviews that are required to establish the facts, *i.e.*, to ascertain what actually happened.

9. I have conducted many investigations for boards of directors, and have always been expected to use my expertise in determining how to conduct the investigation, including what materials to review and which witnesses and experts to interview, and in determining what information to report to the board, and what format that report should take.

*Southcentral Foundation v. ANTHC*
Case No. 3:17-cv-00018-JMK          4

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK 99501
*Main (907) 277-1900 Fax (907) 277-1920*

10. This particular investigation, for which I was retained by the ANTHC Board of Directors, was no exception.

11. In March 2021, the ANTHC Board tasked me with independently investigating ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ At the same time the ANTHC Board retained a separate independent investigator, Ms. Amy Menard, to investigate ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

12. As part of my investigation, I reviewed approximately 500 documents, including contracts, policies and procedures, personnel records, letters, text messages, and emails.

13. Although I lacked the power to subpoena witnesses for interviews, I conducted voluntary interviews with 32 separate witnesses, each of which lasted between approximately 30 minutes and 2.5 hours, and not including several instances where I interviewed the subject on more than one occasion.

14. My scope of work included investigating statements made in eight of the fifteen documents that I understand this Court intends to review *in camera*: ANTHC006, ANTHC008, ANTHC009, ANTHC010, ANTHC014, ANTHC015, ANTHC016, and ANTHC017.

15. In the course of investigating the statements made in these documents, I conducted follow-up interviews with the author of document ANTHC006; the author of

*Southcentral Foundation v. ANTHC*
Case No. 3:17-cv-00018-JMK         5

ANTHC008; the author of ANTHC010; the author of ANTHC015; and the author of ANTHC017.

16. I also interviewed SCF's Designated Director on ANTHC's Board, April Kyle, at her office. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ I carefully considered her insights and ideas in the course of my investigative work. In addition to interviewing Director Kyle, I separately interviewed all other ANTHC Directors then serving on the Board, as well as several former Board members and staff.

17. I presented the results of my investigation to the ANTHC Board of Directors on June 11, 2021. My presentation lasted more than five hours. I understood that all of the Directors were present for that meeting, including Director Kyle.

18. In presenting the findings of a given investigation, including that for which the ANTHC Board retained me, I rarely if ever present source documents as part of a final presentation or report to a board of directors. There are several reasons for this. When a client hires me as an independent investigator, it expects me to provide a succinct report of my findings and recommendations within the time that has been allotted for a given presentation. As with other boards, the ANTHC Board retained me to distill key findings and recommendations based on the available source material, including documentary information and witness interviews, to create a timeline of what happened, whether

*Southcentral Foundation v. ANTHC*
Case No. 3:17-cv-00018-JMK          6

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900 Fax (907) 277-1920

misconduct occurred and if so by whom and according to which standard (i.e, applicable law, board policies and procedures, and so on), and what might be done to prevent or mitigate future such risks to the organization. I would not be doing my job if I simply compiled and catalogued source material and passed it along, without such distillation, to the board that retained me.

19. I did not believe that it was productive or necessary for the ANTHC Board to inspect the eight documents which I reviewed that SCF now seeks, any more than it needed to see the hundreds of other primary source documents I reviewed, or to listen to the witness interviews I conducted or peruse my notes about those interviews. Such scatter-gun disclosure of primary source materials was not at all helpful, in my experience, for the ANTHC Board to understand my presentation, including the findings and recommendations I made.

20. Some of the eight documents were not relevant to the matters I was tasked with investigating. To the extent they contained relevant information, I had incorporated it in my presentation to the Board.

21. There were also risks, in my judgment, to releasing individual documents such as the eight at issue here, which might well have caused the Board to focus on them to the exclusion or diminishment of the considerable other information that I had analyzed during the course of my investigative work. The documents contained sensitive information, including about individuals, and to my knowledge had not been obtained

*Southcentral Foundation v. ANTHC*
Case No. 3:17-cv-00018-JMK         7

through any judicially sanctioned discovery process. There are always risks inherent in conveying written materials containing sensitive information to a sizeable group of people—including reputational risks and the risks of further disclosure to the persons being investigated as well as the organization itself. In my experience, such risks are often magnified in a circumstance such as this where I as an investigator lacked subpoena power and therefore could not compel witness testimony so as to help ensure its veracity. Instead, as often happens in such internal investigations, I was depending on voluntary witness cooperation by members of a Board that had retained me to investigate that very same Board and those very same directors.

22. The risk of inadvertent or even intentional disclosure of sensitive information by the ANTHC Board, or one or more of its directors, was also a factor in the presentation of my investigative findings to the ANTHC Board, which I did verbally using PowerPoint slides that were not provided as hard copies or in electronic format to any of the directors. I was keenly aware, based on my own prior career experience leading a national industry research consortium—the National Information Infrastructure Testbed, as described above, for more than five years—that ANTHC is a consortium consisting of stand-alone health care organizations, each of which maintains and enforces its own individual policies, procedures and fiduciary requirements, including but not limited to the treatment of sensitive and/or confidential information. In such a setting, preserving confidentiality is

*Southcentral Foundation v. ANTHC*
Case No. 3:17-cv-00018-JMK   8

especially important—never more so than when everyone's core mission is to provide health care services.

23. As ANTHC's Board requested, my presentation also included ███████████████████████

24. ████████████████████████████████████████
████████████████████████████████████████
███████████████████████████

25. I presented the results of my investigation to the SCF Board of Directors on March 10, 2023. My presentation to SCF's Board lasted more than two and a half hours.

26. ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
███████████████████████████

27. ████████████████████████████████████████
████████████████████████████████████████
███████████████████

28. Like the presentation I made to ANTHC's Board of Directors, the presentation I made to SCF's Board of Directors thoroughly addressed my findings and recommendations, including those based on the eight documents now at issue (among many others). For that reason, in my professional judgment, it was not necessary to the

*Southcentral Foundation v. ANTHC*
Case No. 3:17-cv-00018-JMK        9

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900 Fax (907) 277-1920

completeness or usefulness of my report, or appropriate given the nature and content of the documents, for me to provide SCF's Board with any of the eight documents now at issue, any more than it was necessary or appropriate for me to provide SCF's Board the many other documents I reviewed.

29. I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED on 24th day of January 2024.

_____
Troy A. Eid
Principal Shareholder
Greenberg Traurig, LLP

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900 Fax (907) 277-1920

# CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2024, I filed a true and correct copy of the foregoing document with the Clerk of the Court for the United States District Court – District of Alaska by using the CM/ECF system. Participants in this Case No. 3:17-cv-00018-TMB who are registered CM/ECF users, and who are listed below, will be served by the CM/ECF system.

Jahna M. Lindemuth
Cashion Gilmore & Lindemuth
510 L Street, Suite 601
Anchorage, AK 99501
jahna@cashiongilmore.com

William D. Temko
Munger, Tolles & Olson LLP
350 S Grand Ave., 50th Floor
Los Angeles, CA 90071
William.Temko@mto.com

Nicholas Daniel Fram
Munger, Tolles & Olson LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Nicholas.Fram@mto.com

Geoffrey Strommer
Hobbs, Straus, Dean & Walker, LLP
215 SW Washington, Suite 200
Portland, OR 97204
gstrommer@hobbsstraus.com

/s/ James E. Torgerson
James E. Torgerson

*Southcentral Foundation v. ANTHC*
Case No. 3:17-cv-00018-JMK         11